# Exhibit 1

ACCELERANT

# ACCELERANT SPECIALTY INSURANCE COMPANY
## (A Stock Company)

## Professional Liability Policy

**DECLARATIONS**

**NOTICE: YOUR POLICY CONTAINS CLAIMS-MADE LIABILITY COVERAGE. CLAIMS-MADE COVERAGE APPLIES ONLY TO CLAIMS THAT ARE FIRST MADE AND REPORTED DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED.**

**THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES MAY BE REDUCED AND MAY BE EXHAUSTED BY CLAIMS EXPENSES. FURTHERMORE, CLAIMS EXPENSES WILL BE APPLIED AGAINST THE RETENTION.**

**PLEASE READ YOUR POLICY CAREFULLY AND CONSULT YOUR INSURANCE ADVISOR ABOUT ANY QUESTIONS YOU MIGHT HAVE.**

**Policy No.:** S0004PL00191000 **Renewal of:**

1. **Name Insured:** Second Nature Brands, Inc
   **Address:** 333 FAYETTEVILLE ST
   RALEIGH, NC 27601

2. **Policy Period:** **Inception Date:** 05/02/2023 **Expiration Date:** 07/01/2024
   Inception date shown shall be at 12:01 A.M. (Standard Time) to Expiration date shown above at 12:01 A.M. (Standard Time) at the address of the Named Insured.

3. **Limits of Liability**

| | | | | |
|---|---|---|---|---|
| **A.** | **Professional Liability (PL)** | $1,000,000 | **Each Claim** | |
| | | $1,000,000 | **Aggregate** | |
| **B.** | **Contingent Bodily Injury/Property Damage** | $50,000 | **Aggregate** | **Shared with PL** |
| **C.** | **Copyright Infringement** | $25,000 | **Aggregate** | **Shared with PL** |
| **D.** | **Crisis Management Event** | $50,000 | **Aggregate** | **Separate Limit** |
| **E.** | **Disciplinary and Licensing Proceedings Defense** | $25,000 | **Aggregate** | **Separate Limit** |
| **F.** | **Subpoena Assistance** | $25,000 | **Aggregate** | **Separate Limit** |
| **G.** | **Third Party Discrimination** | $50,000 | **Aggregate** | **Shared with PL** |

4. **Retention:** $10,000 **Per Claim** / N/A **Aggregate**

5. **Retroactive Date:** 05/02/2023

**6. Policy Premium:**
**Policy Fee:**
**Total:**

[redacted]

**7. Option Extended Reporting Period:**

| | |
|---|---|
| **One (1) Year:** | 100% |
| **Two (2) Years:** | 150% |
| **Three (3) Years:** | 185% |

**8. Send Notification of Claims or Circumstances to:**

Premium Claims Management, LLC
2020B N Tustin Ave
Santa Ana, CA 92705
claims@premierclaimsllc.com
Tel: 888-683-2266
Tel: 866-885-4047

**9. Professional Service(s):**

Residents' concierge services

**IN WITNESS WHEREOF, the Insurer indicated above has caused this Policy to be signed by its Chief Underwriting Officer, but this Policy shall not be effective unless also signed by the Insurer's duly authorized representative.**



**Chief Underwriting Officer**

## POLICY FORMS DECLARATIONS

| Form Number | Form Date | Form Description |
|---|---|---|
| S PL 50001 | 01/23 | Professional Liability Insurance |
| IL P 001 | 01/04 | OFAC Notice |
| S PL 50044 | 09/20 | Service of Suits |
| S PL 50052 | 01/21 | Claims Notice Address Endorsement |
| S PL 50059 | 01/21 | Nuclear Incident Exclusion (Broad Form) Endorsement |
| S PL 50081 | 02/21 | Personal Concierge Services Endorsement |
| S PL 50104 | 04/21 | General Liability Requirement Endorsement (Limited) |
| S PL 50051 | 01/21 | Claims Expenses Within the Limits Endorsement |
| S PL 50047 | 01/21 | Additional Exclusion Endorsement |

ACCELERANT

# ACCELERANT SPECIALTY INSURANCE COMPANY
# (A Stock Company)

## «PolicyName»

In consideration of the premium charged, and in reliance on the statements made and information provided to **us**, **we** will pay covered amounts as defined in this policy, provided **you** properly notify **us** of claims and meet **your** obligations to **us** in accordance with the terms of this policy.

### I. Who are the parties to this policy

**A.** The Insurer identified on the Declarations as issuing this policy. When used in this policy, the terms **us**, **we** and **our** refers to the Insurer identified on the Declarations as issuing this policy, and

**B.** An **Insured**. When used in this policy, the terms **you** and **your**, also refers to an **insured.**

### II. The Insuring Agreement - Our promise to you

**We** will pay up to the **per claim limit** for **damages** and **claim expenses** in excess of the **retention** for covered **claims** against **you** alleging a negligent act, error, or omission in **your professional services** performed on or after the **retroactive date** provided the **claim** is first made against **you** during the **policy period** and is reported to **us** in accordance with Section **V. Your** obligations.

### III. Coverage Enhancements

**We** will also make the following payments:

**A. Contingent Bodily Injury/Property Damage**

**We** will pay **damages** and **claim expenses** up to the limit stated in **3.B** of the Declarations for any **claim** against **you** for **bodily injury** or **property damage** provided:

1. The **claim** is first made against **you** during the **policy period**,
2. It directly results from **your professional services** performed on or after the **retroactive date,**
3. It is reported to **us** in accordance with Section V. **Your** obligations, and
4. Any **property damage** is not to goods that are in **your** care, custody, or control.

**You** must pay the **retention** stated in the Declarations in connection with any payment **we** make under this subsection **A**. This limit will be part of and not in addition to the limit of liability stated in **3.A.** of the Declarations.

**B. Copyright Infringement**

**We** will pay **damages** and **claim expenses** up to the limit stated in **3.C** of the Declarations for any **infringement claim** against **you,** provided the **claim** is first made against **you** during the **policy period**, it directly results from **your professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section **V. Your** obligations.

**You** must pay the **retention** stated in the Declarations in connection with any payment **we** make under this subsection **B.** This limit will be part of and not in addition to the limit of liability stated in **3.A.** of the Declarations.

**C. Crisis Management**

**We** will pay up to up to the limit stated in **3.D** of the Declarations, in the aggregate, for the reasonable and necessary fees, costs, and expenses b incur with **our** prior written consent for a public relations firm to assist **you** in responding to a **crisis management event**, provided the **crisis management event** occurs during the **policy period** and it is reported to **us** in accordance with Section V. **Your** obligations.

No retention will apply to amounts **we** pay under this Section **C**. and such amounts will be in addition to, and not part of, the Aggregate Limit.

**D. Disciplinary and Licensing Proceedings**

**We** will pay up to the limit stated in **3.E** of the Declarations for the reasonable and necessary fees, costs, and expenses incurred with **our** prior consent in the investigation, defense, or appeal of any state, federal, or other licensing board inquiry or proceeding concerning **your** eligibility or license to engage in **your professional services**, provided **you** first receive notice of such inquiry or proceeding during the **policy period**, it relates to **your professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section V. **Your** obligations.

No **retention** will apply to amounts **we** pay under this subsection **D**, and such amounts will be in addition to, and not part of, the Aggregate Limit.

**E. Pre-Claims Assistance Coverage**

**We** will pay reasonable and necessary fees, costs, and expenses we incur to investigate or monitor a potential claim that is reasonable likely to result in covered **damages**, provided **you** first become aware of such potential claim during the **policy period**, it relates to **your** performance of **professional services** on or after the **retroactive date**, and it is reported to **us** in accordance with Section **V. Your** obligations.

**Our** obligation to make any payments under this Section will cease when a **claim** is made against **you** arising out of the same circumstances as the potential **claim we** investigated or monitored.

No retention will apply to amounts **we** pay under this Section until such potential **claim** becomes an actual **claim**, at which point the **retention** will apply. Any payments **we** make under this Section will be a part of, and not in addition to, Aggregate Limit.

**F. Supplemental Payments**

**We** will pay reasonable expenses, including loss of wages and a $250 travel per diem, incurred by **you** if **we** require **you** to attend depositions, arbitration proceedings, or trials in connection with the defense of a covered **claim**, but **we** will not pay more than an aggregate of $10,000 per **claim** for such expenses, regardless of the number of **insured**s.

No **retention** will apply to amounts **we** pay under this subsection **F**, and such amounts will be in addition to, and not part of, the Aggregate Limit.

**G. Subpoena Assistance**

**We** will pay up to the limit stated in **3.F** of the Declarations for the reasonable and necessary fees, costs, and expenses incurred with **our** prior consent to respond to a subpoena arising from the performance of **your professional services**, provided **you** first receive notice of such subpoena during the **policy period**, it relates to **your professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section V. **Your** obligations.

No **retention** will apply to amounts **we** pay under this subsection **G**, and such amounts will be in addition to, and not part of, the Aggregate Limit.

**H. Third party discrimination**

**We** will pay **damages** and **claim expenses** up to the limit stated in **3.G** of the Declarations for any **claim** against **you** for **third party discrimination**, provided the **claim** is first made against **you** during the **policy period**, it directly results from **your professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section V. Your obligations.

**You** must pay the **retention** stated in the Declarations in connection with any payment **we** make under this subsection **H.** This limit will be part of and not in addition to the limit of liability stated in **3.A.** of the Declarations.

**I. Contingent personal injury and advertising liability**

**We** will pay **damages** and **claim expenses** for any **claim** against **you** arising from an alleged negligent act, error, or omission resulting in **personal and advertising injury,** provided the **claim** is first made against **you** during the **policy period**, it directly results from **your professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section V. Your obligations.

## IV. Defense and Settlement – Our obligations to you

**A. Defense**

**We** have the right and duty to defend any covered **claim**, even if such **claim** is groundless, false, or fraudulent.

**We** have the right to select and appoint counsel to defend **you** against a covered **claim**. **You** may request in writing that **we** appoint defense counsel of **your** own choice, but whether to grant or deny such a request will be at **our** sole discretion.

**B. Settlement**

**We** have the right to solicit and negotiate settlement of any **claim** but will not enter into a settlement without **your** consent, which **you** agree not to withhold unreasonably. If **you** withhold consent to a settlement recommended by **us** and acceptable to the party who made the **claim**, the most **we** will pay is the sum of:

**1.** the amount of **our** recommended settlement,

**2.** **claim expenses** incurred up to the date of **our** recommendation,

**3.** 50% of all **claim expenses** incurred after **our** recommendation, and

**4.** 50% of all **damages** in excess of the settlement amount recommended by **us**.

**V. Your obligations**

**A. Notifying us of claims and coverage enhancements**

**You** must give written notice to **us** of any **claim**, or any other matter covered under Section III. Coverage enhancements, as soon as possible, but in any event, no later than 60 days after the end of the policy period.

All such notifications must be in writing and include a copy of the **claim** or other covered matter and must be submitted to **us** via the designated email address or mailing address identified in Item 6 of the Declarations.

**B. Notifying us of potential claims**

**You** have the option of notifying **us** of potential claims that may lead to a covered **claim** against **you**. In order to do so, **you** must give **us** written notice as soon as possible and within the **policy period**. To the greatest extent possible, the notice must identify the details of the potential claim, including identifying:

**1.** The potential claimant(s),

**2.** The likely basis for liability,

**3.** The likely demand for relief, and

**4.** Any additional information about the potential **claim we** may reasonably request.

The benefit to **you** of notifying **us** of a potential **claim** is that if an actual **claim** arises from the same circumstances as the properly notified potential **claim**, then **we** will treat that **claim** as if it had first been made against **you** on the date **you** properly notified **us** of it as a potential **claim**, even if that **claim** is first made against **you** after the **policy period** has expired.

All potential **claim** notifications must be in writing and submitted to **us** via the designated email address or mailing address identified in Item 6 of the Declarations.

**C. Retention**

**1.** Our obligation to pay damages and claim expenses under this policy is in excess of the retention, which you must pay in connection with each covered claim.

**2.** We will reduce your **retention** by fifty percent (50%) or $25,000, whichever is less, for any **claim** that is resolved at arbitration or mediation prior to the initiation of a lawsuit.

## VI. Exclusions – What is not covered by this policy

**A.** Applicable to all coverage provided under this **policy**.

**B. We** will have no obligation to pay any sums under this policy, including any damages or claim expenses, for any claim:

**1. Antitrust and deceptive trade practices**

Based upon or arising out of any actual or alleged:

**a.** False, deceptive, or unfair trade practices,

**b.** Unfair competition, impairment of competition, restraint of trade, or antitrust violations,

**c.** Violation of the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman Act, all including as may be amended, or any similar federal, state, or local statutes, rules, or regulations in or outside the U.S., or

**d.** deceptive or misleading advertising.

**2. Bodily injury and property damage**

Based upon or arising out of any actual or alleged **bodily injury** or **property damage.** However, this exclusion will not apply to **bodily injury** or **property damage** directly resulting from **your professional services** and covered under Section **III.A.**

**3. Breach of contract, warranty, or guarantee**

Based upon or arising out of:

**a.** Any actual or alleged breach of any contract or agreement, or any liability of others that **you** assume under any contract or agreement,

**b.** Any warranty, guaranty, or promise made by an **insured** as to the future value of investments, businesses or real property investments, or the failure of any investments to perform as expected or desired; or

**c.** Any actual or alleged breach of express warranties or guarantees, except any warranty or guarantee to perform **your professional services** consistent with applicable industry standards or with reasonable skill or care.

Provided, however, this exclusion will not apply to any liability **you** would have in the absence of the contract, warranty, or guarantee.

**5. Communicable Disease**

Based upon or arising out of any actual or alleged the actual or alleged transmission of a communicable disease.

This exclusion applies even if the **claims** against any **insured** allege negligence or other wrongdoing in the: a. Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease; b. Testing for a communicable disease; c. Failure to prevent the spread of the disease; or d. Failure to report the disease to authorities.

**6. Cyber-Liability**

Based upon or arising out of any actual or alleged:

**a.** Unauthorized acquisition, access, use, or disclosure of, improper collection or **retention** of, or failure to protect any non-public personally identifiable information or confidential corporate information that is in **your** care, custody, or control,

**b.** Violation of any privacy law or consumer data protection law protecting against the use, collection, or disclosure of any information about a person or any confidential corporate information, or

**c.** Act by a third party that influences or psychologically manipulates **you** to perform an action, break security procedures, divulge personal or confidential information, or perform a fraudulent act for the purpose of information gathering, fraudulent or unauthorized electronic funds transfer, system or network access or the theft of personal or confidential information.

**7. Criminal proceedings**

Brought in the form of a criminal proceeding, including but not limited to a criminal investigation, grand jury proceeding, or criminal action.

**8. Employment related liability**

Based upon or arising out of any actual or alleged:

**a.** obligation under any workers' compensation, unemployment compensation, employers' liability, fair labor standards, labor relations, wage and hour, or disability benefit law, including any similar provisions of any federal, state, or local statutory or common law,

**b.** the indemnification or contribution with another employer for bodily injury, sickness, disease, death, or emotional distress to any of **your** employee arising out of his or her employment by **you**.

**c.** liability or breach of any duty or obligation owed by **you** as an employer or prospective employer, or

**d.** harassment, wrongful termination, retaliation, or discrimination, including but not limited to adverse or disparate impact, committed by **you** as an employer or prospective employer.

**9. Excluded costs and damages**

To the extent it seeks or includes:

**a.** fines, penalties, taxes, or sanctions against **you**,

**b.** overhead costs, general business expenses, salaries, or wages incurred by **you**,

**c.** the return, reduction, or restitution of fees, commissions, profits, or charges for goods provided or services rendered,

**d.** liquidated or multiple **damages**,

**e.** restitution, disgorgement of profits, any advantage to which **you** were not legally entitled, or unjust enrichment, or

**f.** the cost of complying with injunctive relief.

**10. Excluded professional services**

Based upon or arising out of any actual or alleged:

**a.** performance of or failure to perform services as an architect, engineer, accountant, lawyer, registered investment advisor, or securities broker/dealer, or

**b.** Medical malpractice or breach of any duties owed as a healthcare provider, including but not limited to the rendering of or failure to render medical services, treatment, diagnosis, or advice.

**11. Excluded statutory violations**

Based upon or arising out of any actual or alleged violation of the following laws:

**a.** the Securities Act of 1933,

**b.** the Securities Exchange Act of 1934,

**c.** any state blue sky or securities laws,

**d.** the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., or

**e.** the Employee Retirement Income Security Act of 1974,

all including as may be amended, or any similar provisions of any foreign, federal, state, or local statutory or common law and any rules or regulations promulgated under such laws.

**12. Failure to maintain insurance or bonds**

Based upon or arising out of any actual or alleged failure to procure or maintain adequate insurance or bonds.

**13. Improper billing and use of client funds**

Based upon or arising out of any actual or alleged:

**a.** Inaccurate, improper, or fraudulent billings or invoices, including but not limited to a qui tam action or any action under the False Claims Act, as may be amended, or any similar provisions of any foreign, federal, state, or local statutory or common law, or

**b.** **Your** improper use of any client funds, monies, assets, or property, or the inability or failure to pay, collect, or safeguard funds

Provided, however, this exclusion will not apply to a **claim** resulting from **your** performance of billing services for others if such services are a part of **your** **professional services**.

**14. Insured vs. insured**

Brought by or on behalf of one **insured** or **affiliate** against another **insured** or **affiliate**. However, this exclusion will not apply to a **claim** by an **additional insured** against another **insured** based upon or arising out of any other **insured**'s performance of **professional services** for the **additional insured**.

**15. Intentional acts**

Based upon or arising out of any actual or alleged fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or intentional acts or omissions, except that:

**a.** **We** will pay **claim expenses** until there is a final adjudication establishing such conduct, and

**b.** This exclusion will not apply to otherwise covered intentional acts or omissions resulting in **personal and advertising injury**.

This exclusion will apply to the **named insured** or **subsidiary** only if the conduct was committed or allegedly committed by any:

**a.** Partner, director, officer, or member of the board (or equivalent position) of the **named insured** or **subsidiary**, or

**b.** **Employee** of the **named insured** or **subsidiary** if any partner, director, officer, member of the board (or equivalent position) of the **named insured** or **subsidiary** knew or had reason to know of such conduct by the **employee**.

This exclusion will apply separately to each **insured** and will not apply to any **insured** who did not commit, participate in, acquiesce to, or ratify such conduct committed by another **insured**.

**16. Management liability**

Based upon or arising out of the performance of or failure to perform **professional services** for a corporation, partnership, limited liability company, limited partnership, or other entity of which any **insured** or any **employee** of an **insured** is a partner, director, officer, member, board member, trustee, or equivalent position.

**17. Manufacture of goods or products**

Based upon or arising out of any goods or products manufactured, sold, handled, or distributed by **you**.

**18. Misappropriation of funds**

Based upon or arising out of the actual or alleged theft, misappropriation, commingling, or conversion of any funds, monies, assets, or property.

**19. Motor vehicle, aircraft, or watercraft**

Based upon or arising out of the ownership, maintenance, operation, use, loading of any motor vehicle, aircraft or watercraft owned or operated by or loaned to **you**.

**20. Patent or Trade Secrets**

Based upon or arising out of any actual or alleged infringement of any patent or the theft of any trade secret.

**21. Other excluded activities**

Based upon or arising out of the actual or alleged:

**a.** Compilation of audited financial statements, or

**b.** Performance or failure to perform:

- **i.** Forensic accounting services, or
- **ii.** Services as an enrolled agent, or
- **iii.** Audit attestation services.

**c.** Performance or failure to perform investment advisory services, including but not limited to:

- **i.** The selection of any investment manager, investment advisory, custodial or similar firm,
- **ii.** The promise or guarantee of the future performance of value of investments, or rate of return or interest,
- **iii.** The fluctuation in the value of any security,
- **iv.** Any failure of investments to perform as expected or desired, or
- **v.** Acting as an investment advisor as defined in Section 202 (11) of the Investment Advisors Act of 1940,
- **vi.** The exercise of any authority or discretionary control by **you** with respect to any client's funds or accounts, including any monies or property of employee benefit or pension plans.

**d.** The performance of any services in connection with mergers and/or acquisitions,

**e.** Price discounts, prizes, awards, money or valuable consideration given in excess of a total contracted or expected amount, or

**f.** Forgery or counterfeiting.

**22. Pollution or environmental**

Based upon or arising out of any actual, alleged, or threatened discharge, dispersal, release, or escape of **pollutants**, including any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **pollutants**.

**23. Prior acts, notice, or knowledge**

Based upon or arising out of any actual or alleged breach of duty or negligent act, error, or omission that:

**a.** Was committed prior to the **retroactive date**,

**b.** Was the subject of any notice given under any other policy of which this policy is a renewal or replacement,

**c.** Was the subject of, or is related to, any **claim**, written demand, arbitration, administrative or regulatory proceeding or investigation, or licensing proceeding that was filed or commenced against **you** and of which **you** had notice prior to the **policy period**, or

**d.** **You** had knowledge of prior to the **policy period**, and there was a reasonable basis to believe that the act, error, or omission could result in a **claim**.

However, if this policy is a renewal or replacement of a previous policy that **we** issued, provided materially identical coverage, and is part of an unbroken chain of successive policies issued by **us**, then the **policy period** referred to in paragraphs **c.** and **d.**, above, will be the **policy period** of the first such policy **we** issued.

**24. Prior or pending litigation**

Based upon or arising out of any litigation pending as of or prior to the effective date of this policy. However, if this policy is a renewal or replacement of a previous policy that **we** issued, provided materially identical coverage, and is part of an unbroken chain of successive policies issued by **us**, then the effective date referred to above, will be the effective date of the first such policy **we** issued.

**25. Subsidiary outside control of named insured**

**a.** Based upon or arising out of **professional services** performed by or on behalf of a past or present **subsidiary** while the **named insured** does not have majority ownership or management control of it, or

**b.** Made against a **subsidiary** or anyone acting on its behalf while the **named insured** does not have majority ownership or management control of it.

**26. Unsolicited telemarketing**

Based upon or arising out of any actual or alleged violation of any federal, state, local, or foreign statutes, ordinances, or regulations relating to unsolicited telemarketing, solicitations, emails, faxes, text messages, or any other communications of any type or nature, including but not limited to the Telephone Consumer Protection Act, CAN-SPAM Act, or any "anti-spam" or "do-not-call" statutes, ordinances, or regulations.

## VII. Your obligations to us

### A. Named insured responsibilities

It will be the responsibility of the **named insured** (or, if there is more than one **named insured**, the first one listed on the Declarations) to act on behalf of all **insured**s with respect to the following:

**1.** Timely giving and receiving notice of cancellation or non-renewal,

**2.** Timely payment of premium,

**3.** Receipt of return premiums,

**4.** Timely acceptance of changes to this policy, and

**5.** Timely payment of **retentions**.

### B. Your duty to cooperate

**You** must cooperate with **us** in the defense, investigation, and settlement of any claim, potential claim, breach, event, occurrence, or other matter notified to **us**, including but not limited to:

**1.** Notifying **us** immediately if **you** receive any settlement demands or offers, and sending **us** copies of any demands, notices, summonses, or legal papers,

**2.** Submitting to examination and interrogation under oath by **our** representative and giving **us** a signed statement of **your** answers,

**3.** Attending hearings, depositions, and trials as **we** request,

**4.** Assisting in securing and giving evidence and obtaining the attendance of witnesses,

**5.** Providing written statements to **our** representative and meeting with such representative for the purpose of investigation and/or defense,

**6.** Providing all documents and information **we** may reasonably request, including authorizing **us** to obtain records, and

**7.** Pursuing **your** right of recovery from others.

### C. Your obligation not to incur any expense or admit liability

**You** must not make any payment, incur any expense, admit any liability, or assume any obligation without **our** prior consent. If **you** do so, it will be at **your** own cost and expense.

### D. Your representations

**You** warrant that all representations made and all materials submitted by **you** or on **your** behalf in connection with the **application** for this policy are true, accurate, and not misleading, and agree they were relied on by **us** and were material to **our** decision to issue this policy to **you**.

Further, if such **application** was another insurance carrier's application, you further agree and understand that **we** relied upon all statements, warranties and other information and documents contained in or submitted with such other application as if they were submitted directly to **us** using **our** own application form.

If **we** learn any of the representations or materials were untrue, inaccurate, or misleading in any material respect, **we** are entitled to treat this policy as if it had never existed.

**VIII. Other provisions affecting coverage**

**A. Payment of claims expenses without reduction of the limit of liability**

1. **We** will pay **claims expenses** in excess of the applicable **retention** and up to an aggregate amount equal to the **each claim limit** stated in **3.A** of the Declaration without reduction of the applicable **each claim limit**. The total amount of such **claims expense** payments by **us** will capped at the amount of the **each claim limit**, and is not on a per **claim** basis.

2. Once **we** have paid the **each claim limit** set forth in **3.A** of the Declarations in aggregate **claims expenses** arising from or relating to any and all matters, all further payments by the **Insurer** of **claims expenses** will reduce the applicable **each claim limit** and **aggregate limit**.

**B. Limits of liability**

1. Except as otherwise stated in Section **VII.A**, **our** maximum liability for the sum of all **damages** and all **claims expenses** because of all **claims,** (including all **claims** alleging **related claims**) first made and reported during the **policy period** will never exceed the amount stated in **3.A** of the Declarations.

2. All **your claims** arising out of the same **wrongful act** and all **your related claims** will be deemed to be one **claim**, and such **claim** will be deemed to be first made on the date the earliest of such **claims** is first made, regardless of whether such date is before or during the **policy period**. All **damages** and all **claims expenses** resulting from a single **claim** will be deemed a single **damage** and **claims expense** and shall be allocable to the policy in effect on the date the **claim** is first made, regardless of whether such date is before or during the Policy Period.

3. Except as otherwise stated in section **VII.A**, any payment of **damages** and/or **claims expenses** by **us** will reduce the limit of liability stated in **3.A** of the Declarations.

4. **We** are entitled to pay **damages** and **claims expenses** as they become due and payable by the **Insureds**, without consideration of other future payment obligations.

5. Once the **aggregate limit of liability** has been exhausted by payments of any **damages** (regardless of whether the payment by **us** of **claims expenses** under section **VII.A.** has

exhausted, reached or exceeded the **each claims limit** set forth in **3.A** of the Declarations), **our** obligation under this **policy** will be completely fulfilled and extinguished.

**C. Related claims**

All **related claims**, regardless of when made, will be treated as one claim, and all subsequent **related claims** will be deemed to have been made against **you** on the date the first such claim was made. If, by operation of this provision, the claim is deemed to have been made during any period when **we** insured **you**, it will be subject to only one **retention** and one Each Claim Limit regardless of the number of claimants, **insureds**, or claims involved.

**D. Alteration and assignment**

No change in, modification of, or assignment of interest under this policy will be effective unless made by written endorsement to this policy signed by **our** authorized representative.

**E. Bankruptcy or insolvency**

**Your** bankruptcy or insolvency will not relieve **us** of any of **our** obligations under this policy.

**F. Cancellation**

**1.** This policy may be canceled by the **named insured** by giving written notice, which must include the date the cancellation will be effective, to **us** at the address stated in the Declarations.

**2.** This policy may be canceled by **us** by mailing to the **named insured** by registered, certified, or other first class-mail, at the **named insured**'s address stated in Item 1 of the Declarations, written notice which must include the date the cancellation will be effective. The effective date of the cancellation will be no less than 60 days after the date of the notice of cancellation, or 10 days if the cancellation is due to nonpayment of premium.

**3.** The mailing of the notice will be sufficient proof of notice, and this policy will terminate at the date and hour specified in the notice.

**4.** If this policy is canceled by the **named insured**, **we** will retain the customary short rate proportion of the premium.

**5.** If this policy is canceled by **us**, **we** will return a pro rata proportion of the premium.

**6.** Payment or tender of any unearned premium by **us** will not be a condition precedent to the cancellation, but such payment will be made as soon as possible.

**G. Change in control**

If, during the **policy period**, the **named insured** consolidates with, merges into, or sells all or substantially all of its assets to any other person or entity, or any other person or entity acquires ownership or control of the **named insured**, then the **named insured** will provide

**us** written notice no later than 30 days after the effective date of such change in control, together with any other information **we** may require.

**We** will not cancel this policy solely because of a change in control. Rather, this policy will cover only **claims** arising from **professional services** performed prior to the change in control, unless **you** and **we** agree in writing otherwise, after the effective date of any change in control.

**H. Coverage territory**

This policy will apply to **your professional services** performed anywhere in the world, provided that any litigation, legal action, arbitration, mediation or other proceeding is brought within the United States, its territories or possessions, or Canada.

**I. Estates, heirs, legal representatives, spouses, and domestic partners**

In the event of an **employee's** death or disability, this policy will also apply to claims brought against the **employee's**:

1. Heirs, executors, administrators, trustees in bankruptcy, assignees, and legal representatives, or
2. Lawful spouse or lawful domestic partner,

but only:

1. For a covered claim arising from the scope of the **employee's** work for **you**, or
2. In connection with their ownership interest in property which the claimant seeks as recovery in a covered claim arising from the scope of the **employee's** work for **you**.

**J. False or fraudulent claims**

If any **insured** commits fraud in connection with any **claim** or potential **claim**, whether regarding the amount or otherwise, this insurance will become void as to that **insured** from the date the fraud is committed.

**K. Other insurance**

Any payment due under this policy is specifically excess of and will not contribute with any other valid and collectible insurance unless such other insurance is written specifically as excess insurance over this policy.

**L. Subrogation**

1. In the event of any payment by **us** under this policy, **we** will be subrogated to all of **your** rights of recovery to that payment.
2. **You** will do everything necessary to secure and preserve **our** subrogation rights, including but not limited to the execution of any documents necessary to allow **us** to bring suit in **your** name.
3. **You** will do nothing to prejudice **our** subrogation rights without **our** prior written consent.

4. Any recovery first will be paid to **you** up to the amount of any **retention you** have paid, and then to **us** up to the amount of any covered amounts **we** have paid.

**M. Titles**

Titles of sections of and endorsements to this policy are inserted solely for convenience of reference and will not be deemed to limit, expand, or otherwise affect the provisions to which they relate.

## IX. Extended reporting periods

**A. Automatic extension period**

If a wrongful act is committed by the **you** prior to the effective date of cancellation or non-renewal, and a **claim** is made against **you** within 60 days of the cancellation or non-renewal date, **you** have 60 days from the cancellation or non-renewal date to give **us** written notification of the **claim**. If **you** have obtained another professional liability or errors and omissions policy or any other valid insurance is in force, this automatic extension period is not applicable. Further, this automatic extension period does not apply to any cancellation resulting from non-payment of premium or non-compliance with the terms and conditions of this policy.

**B. Optional extension period**

1. If **we** or the **named insured** cancel or non-renew this policy, then the **named insured** will have the right to purchase an optional extension period for the duration and at the percentage of the expiring premium stated in Item 5 of the Declarations. The optional extension period, if purchased, will start on the effective date of cancellation or non-renewal. However, the right to purchase an optional extension period will not apply if:
   a. this policy is canceled by **us** for nonpayment of premium, or
   b. the total premium for this policy has not been fully paid.
2. The optional extension period will apply only to claims that:
   a. are first made against **you** and reported to **us** during the optional extension period, and
   b. arise from **your professional services** performed, or a breach, offense, or occurrence that takes place, on or after the **retroactive date** but prior to the effective date of cancellation or non-renewal of this policy.
3. The additional premium will be fully earned at the inception of the optional extension period.
4. Notice of election and full payment of the additional premium for the optional extension period must be received by **us** within 30 days after the effective date of cancellation or non- renewal, otherwise any right to purchase the optional extension period will lapse.

The limits of liability applicable during any purchased optional extension period will be the remaining available Aggregate Limit. There will be no separate or additional limit of liability available for any purchased optional extension period.

## X. Definitions

**A.** **Additional insured** means any person or organization **you** have agreed in a written contract or agreement to add as an **additional insured** to a policy providing the type of coverage afforded by this Coverage Part, provided the contract or agreement:

1. Is currently in effect or becomes effective during the **policy period**, and
2. Was executed before the **professional services** out of which the **claim** arises were performed.

**B.** **Affiliate** means any person or entity related to any **insured** through common ownership, control, or management. **Affiliate** does not include a **subsidiary**.

**C.** **Application** means the signed **application** for the policy and any attachments and materials submitted with that **application**. If this policy is a renewal or replacement of a previous policy issued by **us**, **application** also includes all previous signed **applications**, attachments, and materials. **Application** also includes another insurance carrier's application submitted by or on behalf of you and accepted by **us**.

**D.** **Bodily injury** means physical injury, sickness, disease, or death sustained by a person, and any resulting humiliation, mental injury, mental anguish, emotional distress, suffering, or shock.

**E.** **Claim** means any written assertion of liability or any written demand for financial compensation or non- monetary relief.

**F.** **Claim expenses** means the following sums incurred in excess of the **retention** and with **our** prior written consent:

1. all reasonable and necessary fees, costs, and expenses (including the fees of attorneys and experts) incurred in the investigation, defense, or appeal of a **claim**, and
2. premiums on appeal bonds, attachment bonds, or similar bond, but **we** will have no obligation to apply for or furnish any such bonds.

**G.** **Crisis management event** means the public announcement of the following events which, in **your** good faith opinion, had or is reasonably likely to have an adverse impact on **your** reputation:

1. An actual or alleged negligent act, error, or omission in the performance of **your professional services** on or after the **retroactive date**,
2. The death, incapacity, or criminal indictment of any partner, director, officer, or board member (or equivalent position) of the **named insured**, or
3. An **employee** was the victim of a violent crime while on the **named insured's** premises.

**H. Damages** means the following amounts incurred in excess of the **retention**:

1. a monetary judgment or monetary award that **you** are legally obligated to pay (including pre- or post-judgment interest and awards of **claim**ant's attorney fees), or

2. a monetary settlement negotiated by **us** with **your** consent.

Damages includes punitive **damages** to the full extent they are insurable under the law of any applicable jurisdiction that most favors coverage.

**I. Employee** means any past, present, or future:

1. persons employed by the **named insured** or **subsidiary** as a permanent, part-time, seasonal, leased, or temporary **employees**, or any volunteers, or

2. partners, principal, shareholder, directors, officers, member or board members (or equivalent position) of the **named insured** or **subsidiary**,

but only while in the course of their performance of **professional services** on behalf of or at the direction of such **named insured** or **subsidiary**.

**J. Independent contractor** means any persons or entities contracted by the **named insured** or **subsidiary** to perform the same **professional services** as the **named insured** or **subsidiary**, but only while in the course of their performance of **professional services** on behalf of or at the direction of the **named insured** or **subsidiary.**

**K. Infringement Claim** means any **claim** alleging or arising out of any actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title or slogan.

**L. Insured** mean:

1. The **named insured,**

2. A **subsidiary**,

3. **Employees,**

4. An **Independent contractor**,

5. A **joint venture**, and

6. An **additional insured**. **You** should note that coverage is available for **additional insureds** solely for their liability arising out of **your** negligence or of those acting on **your** behalf and not for any liability arising out of the sole negligence of the **additional insured**. Further, once the **claim** ceases to be made or maintained against **you** then coverage provided to the **additional insured** shall cease to apply.

**M. Joint venture** means a business enterprise in which the **named insured** or **subsidiary** participates pursuant to a written agreement, but only for:

1. **Professional services** performed by the **named insured** or **subsidiary**, and

2. The same percentage of covered **damages** and **claim expenses** as the percentage of the **named insured**'s or **subsidiary's** participation in the **joint venture.**

**N. Named insured** means the individual, corporation, partnership, limited liability company, limited partnership, or other entity identified in Item 1 of the Declarations.

**O. Personal and advertising injury** means injury, other than **bodily injury** or **property damage**, arising out of one or more of the following offenses:

1. false arrest, detention, or imprisonment,
2. malicious prosecution,
3. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of premises,
4. slander, libel, or defamation, or disparagement of goods, products, or services, whether in connection with **your professional services** or **your** advertising of it, or
5. oral or written publication of material, whether in connection with **your professional services** or **your** advertising of it, that violates a person's right of privacy.

**P. Policy period** means the period of time identified in Item 2 of the Declarations, and any optional extension period, if purchased.

**Q. Pollutants** means any solid, liquid, gaseous, biological, radiological, or thermal irritant or contaminant, including smoke, vapor, asbestos, silica, dust, nanoparticles, fibers, soot, fumes, acids, alkalis, chemicals, nuclear materials, germs, and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

**R. Potential claim** means any acts, errors, or omissions of an **insured** or other circumstances reasonably likely to lead to a **claim** covered under this policy.

**S. Professional services** means the services scheduled in Item **9.** of the Declarations that are provided by **you** to a third party for a fee or other consideration, including such services that are performed electronically using the Internet or a network of two or more computers.

**Professional services** also includes:

1. The provision of **technology services** performed in conjunction with any other **professional services**,
2. Services as a member of a formal accreditation, ethics, peer review, standards, or licensing board, if performed with the knowledge and consent of the **Named Insured.**

**T. Property damage** means physical damage to or destruction of any tangible property, including the resulting loss of use of that property.

**U. Related claims** means all claims that are based upon, arise out of, or allege:

1. a common fact, circumstance, situation, event, service, transaction, cause, or origin,
2. a series of related facts, circumstances, situations, events, services, transactions, sources, causes, or origins,

3. a continuous or repeated act, error, or omission in the performance of **your professional services**, or

4. the same breach, occurrence, or offense.

The determination of whether a claim is related to another claim or claims will not be affected by the number of claimants or **insured**s involved, causes of action asserted, or duties involved.

**V. Retention** means the amount or time identified as such in the Declarations.

**W. Retroactive date** means the date identified as such in the Declarations.

**X. Subsidiary** means any entity or entities of which the **named insured** has majority ownership before or during the **policy period.**

**Y. Technology services** means:

1. Electronic media operations,
2. Data processing,
3. The design or formulation of electronic data processing programs or systems,
4. Consulting and training in the use of software,
5. The ordering and installation of software,
6. The performance of feasibility studies and recommendations regarding computer technology objectives and needs of others, or
7. Electronic activities performed for others in the ordinary course of the **Insured's** business.

**Z. Third party discrimination** means any non-physical harassment of or unlawful discrimination against a person or entity other than an **insured** or an **employee** of an **insured**, including any resulting violation of civil rights, but only if such harassment or discrimination directly results from **your** performance of **professional services**.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treas- ury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004 

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

**SERVICE OF SUITS ENDORSEMENT**

The Company appoints the Commissioner of Insurance as its true and lawful attorney for acceptance of service of all legal process issued in this state in any action, suit or proceeding arising out of this contract of insurance.

The Company authorizes the Commissioner to forward such process to:

Accelerant Specialty Insurance Company
400 Northbridge Road
Suite 800
Sandy Springs, GA 30350
Attn: Legal Counsel

The above-named is authorized to accept service of process on behalf of the Company in any legal proceeding.

# CLAIM NOTICE

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

In the event of a claim to which this policy may apply, please give immediate notice to:

Premier Claims Management, LLC.
2020 North Tustin Avenue
Santa Ana, CA 92705

Tel: 888-683-2266
Fax: 866-885-4047
Email: claims@premierclaimsllc.com
www.premierclaimsllc.com

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## NUCLEAR INCIDENT EXCLUSION (BROAD FORM) ENDORSEMENT

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

**We** will have no obligation to pay any sums under this policy, including any **damages**, **claim expenses**, or other covered amounts, for any **claim**, **event**, or **occurrence**:

**A.** For injury, sickness, disease, death, or destruction:

   **1.** For which **you** are also insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for exhaustion of its limit of liability, or

   **2.** Resulting from the hazardous properties of nuclear material and with respect to which:

      **a.** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, as amended, or

      **b.** **You** are, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, for expenses incurred with respect to bodily injury, sickness, disease, or death resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

**C.** Under any liability coverage, for injury, sickness, disease, death, or destruction resulting from the hazardous properties of nuclear material, if:

   **1.** The nuclear material is at any nuclear facility owned or operated by **you** or on **your** behalf, or has been discharged or dispersed from such a facility,

   **2.** The **nuclear material** is contained in **spent fuel** or **waste** which is or was at any time possessed, handled, used, processed, stored, transported, or disposed of by **you** or on **your** behalf, or

   **3.** The injury, sickness, disease, death, or destruction arises out of the furnishing by **you** of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to injury to or destruction of property at such **nuclear facility**.

**D.** As used in this endorsement:

   **1.** **Hazardous properties** includes radioactive, toxic, or explosive properties,

   **2.** **Nuclear material** means source material, special nuclear material, or byproduct material,

3. **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material,

4. **Source material, special nuclear material**, and **byproduct material** have the meanings given them in the Atomic Energy Act of 1954, as amended,

5. **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor,

6. **Waste** means any waste material:

   a. Containing **byproduct material**, and

   b. Resulting from the operation by any person or organization of any **nuclear facility** included in paragraph 1 or 2 of the definition of **nuclear facility**,

7. **Nuclear facility** means:

   a. any any nuclear reactor;

   b. any any equipment or device designed or used for:

      i. separating the isotopes of uranium or plutonium;

      ii. processing or utilizing spent fuel; or

      iii. handling, processing, or packaging waste;

   c. Any equipment or device used for the processing, fabricating, or alloying of **special nuclear material**, if at any time the total amount of such material in **your** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235, or

   d. Any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of waste.

   **Nuclear facility** includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations.

   With respect to injury to or destruction of property, “injury" or "destruction" includes all forms of radioactive contamination of property.

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

# PERSONAL CONCIERGE/ASSISTANT AMENDATORY ENDORSEMENT

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Professional Services Liability Policy is amended as follows:

The following exclusions are added to the end of Section **VI. Exclusions – What is not covered by this policy:**

**A.** The following exclusions are added to Section **VI. Exclusions – What is not covered by this policy:**

**a. Transportation of persons, animals, or goods**

Based upon or arising out of any actual or alleged the:

**1.** Transportation of any person, animal, or good, or

**2.** Operation of any livery service.

**b. Restricted activities**

Based upon or arising out of **your** performance of or failure to perform **pprofessional sservices** in connection with the following industries, fields, or activities:

**1.** Adult daycare services,

**2.** Chauffeuring,

**3.** Childcare or nanny services,

**4.** Cleaning or janitorial services,

**5.** Financial or investment advice,

**6.** Healthcare or related services,

**7.** Home health aide/caregiver services,

**8.** The moving or relocation of a client's personal or business property,

**9.** Pet sitting or pet care,

**10.** Private security services, or

**11.** Social work.

**c. Misuse of confidential information**

Based upon or arising out of the intentional misuse of confidential or proprietary information.

**d. Sexual Abuse and Molestation**

Based upon or arising out of or attributable to **Sexual abuse and molestation**, including:

1. any allegation that an insured negligently, recklessly, or intentionally employed, investigated, supervised, or retained any person who allegedly or committed such acts, or

2. any alleged practice, policy or custom, including any violation of a civil right, that gave rise to, caused, or resulted in such **sexual abuse and molestation**.

**e. Notarization without physical appearance**

Based upon or arising out of any actual or alleged notarization, certification, or acknowledgment of a signature without the physical appearance of the person making the signature at the time of such notarization, certification, or acknowledgment.

**B.** Section **X. Definitions** is amended as follows:

**1.** The definition of **Professional services** is amended with the addition of the following:

**Professional services** also includes the provision of **auxiliary business services** performed in conjunction with the any other **professional services**.

**2.** The following definition is added:

**a. Auxiliary business services** mean:

**1.** Services provided by **you** as a notary public,

**2.** Bookkeeping and payroll services, or

**3.** Business tax return preparation services,

to a third party for a fee or other consideration.

**b. Sexual Abuse and Molestation** means any actual, attempted, or alleged criminal sexual conduct of a person by another person, or persons acting in concert, which causes physical and/or mental injuries, including sexual molestation, sexual assault, sexual exploitation, or sexual injury.

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## GENERAL LIABILITY REQUIREMENT ENDORSEMENT

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

Section **V. Your obligations**, is amended with the addition of the following:

**General Liability Requirement**

As a condition precedent to coverage under this policy, **you** must maintain General Liability insurance coverage, including Products Completed Operations coverage, with limits of liability of not less than the limit stated in **3.B** of the Declarations, on a continuous basis, during the **policy period.** Failure to maintain such General Liability insurance coverage will result in the voiding of all coverage under Section **III. Coverage Enhancements**, sub-section **A. Contingent Bodily Injury/Property Damage.**

**We** will have no obligation to pay any sums under this policy, including any **damages** or **claim expenses,** for any **claim** or occurrence covered by the General Liability insurance required by this Endorsement, or for any **claim** or occurrence that would be covered but for **your** failure to maintain such required General Liability insurance.

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## CLAIMS EXPENSES WITHIN THE LIMIT ENDORSEMENT

In consideration of the premium charged, it is hereby agreed that Section **VIII. Other provisions affecting coverage** is amended as follows:

**A.** Subsection **A. Payment of claims expenses without reduction of the limit of liability** is deleted in its entirety.

**B.** Subsection **B. Limits of liability** is amended as follows:

   **1.** Subsection **1.** Is deleted and replaced with the following:

      **1.** **Our** maximum liability for the sum of all **damages** and all **claims expenses** because of all **claims,** (including all **claims** alleging **related claims**) first made and reported during the **policy period** will never exceed the amount stated in **3.A** of the Declarations.

   **2.** Subsection **3.** Is deleted and replaced with the following:

      **3.** Any payment of **damages** and/or **claims expenses** by **us** will reduce the limit of liability stated in **3.A** of the Declarations.

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## ADDITIONAL EXCLUSION ENDORSEMENT

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Professional Services Liability Policy is amended as follows:

Section **VI. Exclusions – What is not covered by this policy** is amended with the addition of the following:

1. Based upon or arising out of the performance of or failure to perform services as an insurance agent or broker.

2. Based upon or arising out of the offer, sale or management of any HVAC system maintenance services, including, but not limited to, air or water filter systems.

3. Based upon, arising out of, or in any way involving:
a. The design, manufacture, fabrication, sale, maintenance of installation of any goods, products, machinery, or equipment which are sold, supplied, or distributed by an Insured or others under license from an Insured, or
b. Any recall of goods, products or systems designed or tested by an Insured, or any request, demand, investigation, or order to recall goods, products or systems designed or tested by an Insured.

4. Based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the over-redemption of coupons, awards or prizes from advertisements, promotions, games, sweepstakes, contests, rewards programs or games of chance.

5. Based upon, arising out of, or in any way involving any claim based upon or arising out of any actual or alleged performance of or failure to perform property management services. For the purpose of this exclusion, property management services means:
a. development and implementation of management plans and budgets,
b. oversight of physical maintenance of property,
c. solicitation, evaluation, and securing of tenants, management of tenant relations, collection of rent, and processing evictions,
d. development, implementation, and management of loss control and risk management plans for real property,
e. development, procurement, implementation, and management of contracts and subcontracts necessary to the daily functioning of real property,
f. personnel administration and record keeping,
g. leasing services in connection with the property you are managing, or
Property management services do not include the management or implementation of renovations or construction or reconstruction projects.