# Exhibit 2

LRD
LAVIN RINDNER DUFFIELD LLC

Marc E. Rindner
912.266.8302
mrindner@lrd.law

Andrew G. Lipton
912.266.8306
alipton@lrd.law

**VIA EMAIL AND CERTIFIED MAIL, RETURN RECEIPT**

July 8, 2024

Kimberly Godsey, Esq.
VP of Legal Compliance
333 Fayetteville Street, Suite 1470
Raleigh, NC 27601
E: legal@secondnature.com

Re: Insured: Second Nature Brands, Inc.
Policy No.: S0004PL00191000
Matter: *Elizabeth Best, et al. v. Second Nature Brands, Inc. et al.,* Case No. 1:24-cv-01799 (D.D.C.)
Claim No.: 28-023880

Dear Ms. Godsey:

We represent Accelerant Specialty Insurance Company ("Accelerant"), which issued Professional Liability Insurance Policy No. S0004PL00191000 to Second Nature Brands, Inc. ("Second Nature Brands") for the **policy period** of May 2, 2023 to July 1, 2024 (the "Policy") (terms in bold are defined in the Policy). In this capacity, we write to follow up on your prior communication with Tim de Koekkoek of Premier Claims Management LLC – which serves as the third-party administrator for Accelerant here – and to provide you with our client's assessment of the availability of coverage for the referenced matter (the "*Best* action"). Regrettably, we must advise you that Accelerant has determined that the Policy does not provide any coverage for the **claim**. The bases for this conclusion are set forth below.

## I. Background

The *Best* action initially was filed in the Superior Court for the District of Columbia on April 29, 2024, and then removed to the United States District Court for the District of Columbia on June 21, 2024. The case is brought as a putative class action by Elizabeth Best, Jenna Bucklew, Rachel Irias and Cassandra Stephan and names as defendants Second Nature Brands and Second Nature Insurance Services LLC ("SNIS") (together, "Second Nature"), along with one individual and several other entities.

According to the complaint, Second Nature set up a "fraudulent scheme," creating a program for landlords and property managers that allows them to charge tenants mandatory fees in addition to monthly rent. Second Nature allegedly designed the program to provide an "ancillary revenue opportunity" to the landlords and property managers, enabling them to effectively push the costs of maintaining their properties to the tenants. The complaint alleges that the program involves a "resident benefits package," for which tenants are required to pay mandatory fees to cover insurance, HVAC filters and access to an online portal to pay rent. The complaint further alleges that the package does not actually benefit or provide any value to the residents, noting among other things, that the insurance covered the landlords

and property managers and that HVAC are the responsibility of the landlord under District of Columbia law (and, in any event, were never provided to plaintiffs).

As to the insurance, in particular, plaintiffs allege that they leased the property located at 1934 1st Street, NW, Washington, DC, which burned down on August 28, 2023. They allegedly had been enrolled in the resident benefits package offered by Second Nature, for which they were charged $45.95 per month. Plaintiffs allege that after the fire, they submitted an insurance claim and learned for the first time that the insurance provided through the benefits package "was not actually renter's insurance as had been represented to them," but rather a landlord/property management protection policy that included $10,000 of coverage for personal property. Plaintiffs contend that because defendants had represented to them that the resident benefits package included renter's insurance, they did not obtain a separate renter's insurance policy to cover their personal belongings.

The complaint asserts a cause of action against all defendants for violation of D.C. Code § 42-350211a, which prohibits a housing provider from imposing unapproved mandatory service fees. As to Second Nature, plaintiffs contend that Second Nature is directly liable under the statute and vicariously liable for enabling, aiding and abetting the landlords and property managers in violating the statute. The complaint also asserts a cause of action against all defendants for unlawful trade practices under the District of Columbia Consumer Protection Procedures Act ("DCCPA").

For relief, plaintiffs seek on behalf of themselves and other similarly situated residential tenants unspecified compensatory damages, statutory damages, trebled damages, punitive damages and fees and costs, as well as certain injunctive relief.

## II. Coverage Discussion

### A. Absent an allegation of negligent conduct, coverage is not triggered.

As set forth in the Policy's sole insuring agreement, coverage is limited to **damages** and **claims expenses** on account of a **claim** against an **insured** – that is, Second Nature – "alleging a negligent act, error or omission" in the performance of **professional services** on or after the **retroactive date**.[1] *See* Policy, Section II.

The Policy defines **claim** to include a written assertion of liability or a written demand for compensation. *See* Policy, Section X.E. **Professional services** means "residents' concierge services" provided by an **insured** to a third party for a fee or other consideration. *See* Policy, Declarations, Item 9, and Section X.

The *Best* action, along with its complaint asserting that Second Nature is liable for monetary damages, is a **claim**. Moreover, to the extent that the allegations against Second Nature in putting together, marketing

[1] Second Nature Brands, as the **named insured** identified in Item 1 of the Declarations, is an **insured**. *See* Policy, Section X.L. Accelerant understands that SNIS is a wholly-owned subsidiary of Second Nature Brands. As such, SNIS is a **subsidiary**, and therefore, an **insured** as well. *See* Policy, Section X.L. and X. None of the other named defendants in the *Best* action is an **insured** or otherwise covered under the Policy.

and administrating the resident benefits package at issue is a concierge service for residents provided to a third party for a fee, the allegations concern **professional services**.[2]

Nonetheless, coverage is not triggered because the *Best* action does not allege or seek relief on account of any negligent act, error or omission by Second Nature. Rather, the *Best* action involves only allegations against Second Nature of intentional and fraudulent conduct. As noted above, plaintiffs contend that Second Nature devised a "fraudulent scheme" to provide landlords and property managers with the ability to charge impermissible and unlawful ancillary fees to their tenants. Moreover, the complaint alleges that Second Nature "conspired" with the other defendants to defraud tenants and "operated as part of a joint venture with one another for the common purpose of bilking District of Columbia residents out of money." These allegations are outside the scope of the insuring agreement, and therefore the Policy does not respond to the **claim**.

### B. Coverage is barred by Exclusion 1.

In addition, coverage for the *Best* action is barred by Exclusion 1. This provision provides that there is no coverage available under the Policy for any **claim**

> [b]ased upon or arising out of any actual or alleged . . . false, deceptive or unfair trade practices, . . . or . . . deceptive or misleading advertising.

*See* Policy, Section VI.B.1.

Here, the complaint alleges that Second Nature crafted the resident benefits package for the purpose of allowing landlords and property managers to defraud their tenants and charge them impermissible fees for illusory benefits. In support of their cause of action for violation of the DCCPA, plaintiffs further allege that Second Nature deceived them by misrepresenting the benefits and the value supposedly provided by the package, including falsely representing the nature of the insurance provided. Such allegations fall squarely within the purview of Exclusion 1.

### C. Other terms and conditions may apply to bar or limit coverage.

The absence of any allegations of negligence against Second Nature and the applicability of Exclusion 1 are each separately and independently fully dispositive of coverage under the Policy the *Best* action. However, please be advised that other terms and conditions in the Policy may apply as well to bar or limit coverage for the **claim**. Without intending to be exhaustive or exclusive, Accelerant takes this opportunity to briefly identify certain of these provisions on which it expressly reserves rights.

- **Excluded Costs and Damages.** Under the Policy, there is no coverage for any **claim** to the extent it seeks or includes, among other things: fines and penalties; return or restitution of charges for goods or services provided or rendered; liquidated or multiple damages; restitution or disgorgement of unjust enrichment or profits to which an **insured** is not legally entitled; and the

[2] To be sure, however, the complaint also includes allegations of conduct concerning services that do not constitute **professional services** within the meaning of the Policy, including "selling insurance without a license."

costs of complying with injunctive relief. *See* Policy, Section VI.B.9. In this regard, Accelerant points out that the complaint seeks relief that may fall within this exclusion, including treble damages.

- **Failure to Maintain Insurance.** The Policy excludes from coverage any **claim** based upon or arising out of any actual or alleged failure to procure or maintain adequate insurance. *See* Policy, Section VI.B.12. Because the complaint alleges that the insurance procured through Second Nature was inadequate, this exclusion may apply to bar coverage for the *Best* action.

- **Prior Acts.** Exclusion 23 bars coverage for any **claim** based upon or arising out of any actual or alleged conduct that was committed prior to the **retroactive date**. *See* Policy, Section VI.B.23.a. As set forth in Item 5 of the Declarations, the **retroactive date** is May 2, 2023. While the complaint does not specifically point to any wrongdoing the pre-dates May 2, 2023, the allegations do suggest that some of the acts complained of likely occurred before that date. In this regard, the particular lease at issue here commenced on June 1, 2023 – presumably, Second Nature's alleged wrongdoing in connection with developing and marketing the purported fraudulent scheme involving the resident benefits package occurred at least a month earlier than the start of that lease.

**III. Conclusion**

Accelerant has determined that the Policy does not afford any coverage here, and therefore that it has no defense-related or indemnity obligations to Second Nature or any other party in connection with the *Best* action. This conclusion is based on the information provided to Accelerant so far. Should you believe that there is other information that Accelerant should consider and that may warrant reconsideration of its coverage position, Accelerant invites you to provide that information to us. Also, at any point, should you have any questions or wish to discuss the matter further, please do not hesitate to reach out.

In the interim, and pending further information and developments in the litigation, Accelerant continues to reserve all of its rights under the Policy, at law and in equity. These rights include but are not limited to the right to rely on other terms, conditions and limitations in the Policy that may be implicated.

Sincerely,

Marc E. Rindner
Andrew G. Lipton

cc: Tim de Koekkoek (tdekoekkoek@premierclaimsllc.com)
Rob MacKethan (mackethan@secondnature.com)