# Exhibit 5

LRD
LAVIN RINDNER DUFFIELD LLC

Marc E. Rindner
912.266.8302
mrindner@lrd.law

Andrew G. Lipton
912.266.8306
alipton@lrd.law

**VIA EMAIL**

September 25, 2024

R. Steven DeGeorge
Robinson, Bradshaw & Hinson, P.A.
101 N. Tyron Street – Suite 1900
Charlotte, NC 28246
E: sdegeorge@robinsonbradshaw.com

| | | |
|---|---|---|
| Re: | Insurer: | Accelerant Specialty Insurance Company ("Accelerant") |
| | Insured: | Second Nature Brands, Inc. ("Second Nature") |
| | Policy No.: | S0004PL00191000 (the "Policy") |
| | Matter: | *Elizabeth Best, et al. v. Second Nature Brands, Inc. et al.,* Case No. 1:24-cv-01799 (D.D.C.) (the "*Best* action") |
| | Claim No.: | 28-023880 |

Dear Steve:

We write in response to your letter dated August 30, 2024, in which Second Nature disputes Accelerant's determination set forth in our July 8, 2024 letter that the Policy does not afford any coverage for the *Best* action. Accelerant initially evaluated coverage based on the allegations asserted in plaintiffs' complaint filed on April 29, 2024. Plaintiffs filed a first amended complaint on September 13, 2024 (the "FAC"). In considering the arguments made and the points raised in your letter, Accelerant also has considered the allegations asserted in the FAC, which largely mirror those asserted in plaintiffs' prior pleading. Overall, Accelerant has determined that its initial conclusion was and remains correct: the Policy does not afford any coverage to Second Nature for the *Best* action.

**A. In the absence of any allegation of a "negligent act, error or omission," the *Best* action does not trigger coverage.**

Under the Policy's sole insuring agreement, coverage is limited to a **claim** against an **insured** "alleging a negligent act, error or omission" in the performance of **professional services**. *See* Policy, Section II. Here, however, there are no allegations in the *Best* action of any negligent conduct by Second Nature – the word "negligent" (or any derivation of it) does not even appear in the pleadings. Rather, all the alleged wrongdoing asserted in the FAC is of knowing and intentional misconduct.

Plaintiffs' claims for relief in the *Best* action rest entirely on allegations of a "fraudulent scheme . . . set up by . . . Second Nature" to enable "landlords and property managers to bilk residential tenants . . . out of money." In this regard, the FAC details how Second Nature allegedly "conspire[ed]" with and "aid[ed] and abet[ed]" the other defendants to "charge a mandatory fee in violation of D.C. Code § 42-3502.11a" and otherwise engage in "consumer fraud." As the Supreme Court of North Carolina has recognized, "actionable fraud by its very nature involves intentional wrongdoing." *See Newton v. Standard Fire Ins. Co.*, 229 S.E.2d 297, 302 (N.C. 1976) (citing *Davis v. Highway Commission*, 156 S.E.2d 685, 688 (N.C. 1967)

("[f]raud is malfeasance, a positive act resulting from a willful intent to deceive")). Moreover, "[p]hrases such as 'mislead and conceal,' 'scheme or device' and 'intentionally and willfully' are the paradigm of intentional conduct and the antithesis of negligent actions." *See Conn. Indem. Co. v. DER Travel Service, Inc.*, 328 F.3d 347, 351 (7th Cir. 2003); *see also Aaron v. Securities and Exchange Commission*, 446 U.S. 680, 696 ("the terms 'device,' 'scheme,' and artifice all connote knowing or intentional practices").

In your August 30 letter, Second Nature does not dispute the fact that there is not even a hint of negligent conduct alleged in the *Best* action. Instead, focusing only on the first cause of action, Second Nature argues that coverage is triggered nonetheless because a showing of intentional conduct is not necessary to establish a violation of D.C. Code § 42-3502.11a. In other words, according to Second Nature, coverage is triggered because "the alleged predicate acts underlying the alleged violation of [the statute] *may* consist, partially or entirely, of negligent acts or omissions." (Emphasis added.) This argument misses the mark.

North Carolina courts follow the "comparison test" to determine if coverage is triggered, and therefore the duty to defend. *See St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235, 239 (4th Cir. 1990). Whether coverage is triggered is determined by:

> the facts as alleged in the pleading of the lawsuit against the insured; if the pleadings allege any facts which disclose a possibility that the insured's potential liability is covered under the policy, then the insurer has a duty to defend. If, however, the facts alleged in the pleadings are not even arguably covered by the policy, then no duty to defend exists.

*Wm. C. Vick Const. Co. v. Penn. Nat. Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 578 (E.D.N.C. 1999) (citations omitted); *see Vigilant*, 919 F.2d at 239 (under North Carolina's 'comparison test' . . . the pleadings are read side-by-side with the policy to determine whether the event as alleged are covered or excluded"); *see also Am. Reliable Ins. Co. v. Five Bros. Mortgage Co. and Securing, Inc.*, 306 F. Supp. 3d 820, 824 (W.D.N.C. 2018) ("[i]n North Carolina, the pleadings control the duty to defend") (citing *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986) (the duty to defend requires that "pleadings state facts demonstrating that the alleged injury is covered by the policy")). It is the facts *as alleged* that matter, and not what *may have been* or *could be alleged*. *See Hartford Cas. Ins. Co. v. Gelshenen*, 387 F. Supp. 3d 634, 638 (W.D.N.C. 2019) ("The court's analysis of the facts are limited to those alleged in the underlying pleading, not any and every version of the facts."); *see also Kenney Properties, Inc. v. Phila. Indem. Ins. Co.*, 665 F. Supp. 3d 752, 761 (E.D.N.C. 2022) ("[i]n addressing the duty to defend, the question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy; the question is assuming the facts as alleged to be true, whether the insurance policy covers the injury") (citing cases); *Five Bros.*, 306 F. Supp. 3d at 824 ("the duty to defend relies on the factual allegations of the complaint"). To suggest otherwise, and not rely on the actual pleading but rather some hypothetical version of it, is entirely inconsistent with the application of the "comparison test."

Applying that test here, because there are no allegations of negligence on the part of Second Nature, including in the currently operative FAC, coverage is not triggered and no duty to defend exists.[1]

**B. Exclusion 15 does not operate to create coverage that does not otherwise exist under the Policy's insuring agreement.**

In your letter, Second Nature asserts Exclusion 15 requires Accelerant to pay **claims expenses** until there is a final adjudication establishing the fraudulent conduct alleged in the *Best* action. This argument ignores the well-settled principle that the examination of coverage begins with the insuring agreement and if coverage cannot be found there, it will not be found elsewhere in the policy. *See Five Bros.*, 306 F. Supp. 3d at 824-26 (discussing that the insured first must "bring[] itself within language of the policy," and recognizing that where the insured has failed to do so, it is "unnecessary" to address other provisions in the policy, including whether an exclusion applies). And, consistent with this principle, courts across the country have held that "an exception to an exclusion does not grant or extend coverage" that does not otherwise exist in the insuring agreement. *See Travelers Indem. Co. of Am. v. Miller Bldg. Corp.*, 142 F. App'x. 147, 150 (4th Cir. 2005) (applying Virginia law); *Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 112 (5th Cir. 2008) (holding that under Texas law, an exclusion cannot be the basis to create coverage that does not otherwise exist in the policy); *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 627 (9th Cir. 1996) (applying California law) ("If coverage does not exist under the insuring agreement, the inquiry is at an end. There is no need to look to the exclusions because they cannot expand the basic coverage granted in the insuring agreement."); *Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.*, 2012 WL 13070116, *8 (S.D.N.Y. Oct. 26, 2012) (recognizing that under New York law, "[i]t is well settled that 'an exclusion from insurance coverage cannot create coverage' . . . [and that] [a]n exception to an exclusion is not the equivalent to an affirmative grant of coverage"); *Exec. Risk Indem. Inc. v. Chartered Benefit Servs., Inc.*, 2004 WL 1838433, *8 (N.D. Ill. July 28, 2005) ("It is axiomatic that exclusions can only decrease coverage, they cannot increase it.") (citing *Cont'l Cas. Co. v. Pittsburgh Corning Corp.*, 917 F.2d 297, 300 (7th Cir. 1990)); *Another Planet Entertainment, LLC v. Vigilant Ins. Co.*, 548 P.2d 303, 327 (Cal. 2024) ("If a grant of coverage cannot reasonably be read to include a matter, . . . the language of [an] exclusion cannot create coverage where none exists.").

As discussed above and in our July 8 letter, the Policy's insuring agreement requires a negligent act, error or omission to trigger coverage. In the absence of any allegation of such conduct, there is no coverage in the first place for the *Best* action. Exclusion 15 cannot change this, and therefore the defense component of that exclusion is not implicated.

---

[1] While not dispositive, it bears mentioning that the notion that plaintiffs *may* allege negligence in connection with Second Nature's purported violation of D.C. Code § 42-3502.11a is belied by the fact that in amending their pleadings, plaintiffs point to as "as further evidence of [Second Nature's] knowing violation of law" that after the lawsuit was filed, Second Nature "purg[ed] evidence [of] and . . . camouflage[d] the 'residents benefits package'" on their website.

**C. Exclusion 1 precludes coverage for the entirety of the *Best* action.**

Notwithstanding the caveats in footnote 1 of your letter, by focusing solely on the first cause of action, Second Nature appears to concede the applicability of Exclusion 1 to the second cause of action – that is, the cause of action for unfair trade practices in violation of the District of Columbia Consumer Protection Procedures Act (the "DCCPPA"). To be sure, however, the exclusion applies to the entirety of the **claim**.

Exclusion 1 provides that there is no coverage available under the Policy for any **claim**:

> [b]ased upon or arising out of any actual or alleged . . . false, deceptive or unfair trade practices, . . . or deceptive or misleading advertising.

*See* Policy, Section VI.B.1. The language of the exclusion is clear and unambiguous, and therefore must be enforced as written. *See Fed. Ins. Co. v. Southern Lithoplate, Inc.*, 7 F. Supp. 3d 579, 584 (E.D.N.C. 2014); *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield LLC*, 692. S.E.2d 605, 610 (N.C. 2010); *see also Westfield Ins. Co. v. Nautilus Ins. Co.*, 154 F. Supp. 3d 259, 265 (M.D.N.C. 2016) ("Although the duty to defend is broad, it is not limitless; rather, its scope is measured by the insurance contract between the parties."). Moreover, "[i]n determining whether there is a duty to defend, a court focuses on the facts pled and not on how the litigants characterize the claims." *See Kenney Properties*, 665 F. Supp. 3d at 761 (citing *Holz-Her U.S., Inc. v. U.S. Fid. & Guar. Co.*, 539 S.E.2d 348, 350 (N.C. App. 2000)).

Here, while the first cause of action may be characterized by plaintiffs as a claim for a violation of the D.C. Code § 42-3502.11a, which prohibits a housing provider from imposing on a tenant certain mandatory fees, it rests on allegations of conduct that constitute "false, deceptive or unfair trade practices" and "deceptive or misleading advertising." As noted above, and as articulated in the section in the FAC titled "Facts Common to All Counts," plaintiffs allege that Second Nature developed and implemented a fraudulent scheme that enabled landlords and property managers to bilk residential tenants out of money. The FAC further alleges that this scheme was effectuated by, among other things, falsely representing to the tenants the purported benefits of the "resident benefits package," and giving the tenants no choice but to accept the package. Plaintiffs contend that defendants' actions in this regard, including those of Second Nature, while constituting fraud, also amount to the unlawful imposition of a mandatory fee.

Because Second Nature's purported violation – directly or as co-conspirator or aider and abettor – of D.C. Code § 42-3502.11a is based upon or arises out of conduct that constitutes false, deceptive or unfair trade practices or false or misleading advertising, Exclusion 1 applies to bar coverage. And to be sure, the same is true as to the allegations supporting plaintiffs' cause of action for unfair trade practices under the DCCPPA. In other words, the exclusion bars coverage for the **claim** as a whole – that is, the *Best* action.

* * * *

Accelerant remains of the view that the Policy does not afford any coverage here, and therefore that it has no defense or indemnity obligations to Second Nature or any other party in connection with the *Best* action. This conclusion is based on the information provided to Accelerant so far. Should you believe that

there is other information that Accelerant should consider and that may warrant further reconsideration of its coverage position, Accelerant invites you to provide that information to us.

In the interim, and pending additional information and developments in the litigation, Accelerant continues to reserve all of its rights under the Policy, at law and in equity. These rights include but are not limited to those set forth in our July 8 letter, as well as the right to rely on other terms, conditions and limitations in the Policy that may be implicated.

Sincerely,



Marc E. Rindner
Andrew G. Lipton

cc: Tim de Koekkoek (tdekoekkoek@premierclaimsllc.com)
Charlita Joseph (charlita.joseph@marshmma.com)