# EXHIBIT A

LLOYD'S

One Lime Street London EC3M 7HA

This Declaration Page is attached to and forms part of Certificate provisions (Form SLC-3 USA NMA 2868)

| Previous No. | Authority Ref. No. | Certificate No. |
|---|---|---|
| **SUABA3619-2201** | B1230FC01548A23 | **SUABA3619-2302** |

1. Name and address of the Insured:.

**PURPLE TULIP INSURANCE SERVICES COMPANY LLC**
**333 FAYETTEVILLE STREET SUITE 600**
**RALEIGH, NC 27601**

2. Effective from April 08, 2023 to July 01, 2024
both days at 12:01 a.m. standard time.

3. Insurance is effective with certain **UNDERWRITERS AT LLOYD'S, LONDON.**

| 4. Amount | Coverage | Rate | Premium |
|---|---|---|---|
| $1,000,000 / $1,000,000 (See Policy for any applicable sub-limits) | Insurance Agents & Brokers Professional Liability | | $3,082.00 |
| | | POLICY FEE | $75.00 |
| | | GROSS TOTAL | $3,157.00 |

5. Forms attached hereto and special conditions:

FB SEC B , NMA2918 , MAN 1 , MAN 2 , LSW 1001 , NMA 1168 , CON 1 , INS AMEND SRC TBL , LMA 3100 , MAN 3 , L94
NMA 1477

6. Service of Suit may be made upon:

Mendes and Mount, LLP 750 Seventh Avenue, New York, NY 10119

7. In the event of a claim, please notify the following:

Scott Conway Thompson Heath & Bond Limited 107 Leadenhall Street, London, EC3A 4AF

E-Mail: SConway@thbgroup.com

Johnson & Johnson Inc Managers, trading as Stateside Underwriting Agency
335 Commerce Drive, Suite A
Crystal Lake, Illinois 60014

Claims@StatesideUnderwriting.com

Dated

April 12, 2023

Stateside Underwriting Agency, A Division of Johnson & Johnson Inc.

By________________________
Correspondent

The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty or solvency fund.

The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty or solvency fund.

Surplus Lines Licensee: Kieran Dempsey

# DECLARATIONS

Attaching to and forming part of

INSURANCE BROKERS AND AGENTS
PROFESSIONAL LIABILITY COVERAGE

This Insurance is effected with certain
Underwriters at Lloyd's, London (not incorporated).

**THIS IS A CLAIMS-MADE PROFESSIONAL LIABILITY INSURANCE CERTIFICATE. PLEASE READ CAREFULLY.**

| | | | |
|---|---|---|---|
| PREVIOUS NO: | SUABA3619-2201 | | |
| AUTHORITY REF. NO: | B1230FC01548A23 | | |
| CERTIFICATE NO: | SUABA3619-2302 | | |
| Item 1 NAMED INSURED: | PURPLE TULIP INSURANCE SERVICES COMPANY LLC | | |
| ADDRESS: | 333 FAYETTEVILLE STREET SUITE 600<br>RALEIGH, NC 27601 | | |
| Item 2 PERIOD OF INSURANCE: | FROM: | April 8, 2023 | |
| | TO: | July 1, 2024 | |
| | 12:01 AM STANDARD TIME AT THE ADDRESS SHOWN IN ITEM 1 ABOVE | | |
| Item 3 LIMIT OF LIABILITY: | $1,000,000<br>$1,000,000 | each Claim<br>annual aggregate | |
| Item 4 DEDUCTIBLE: | $2,500 | Damages and Claims Expenses - each Claim | |
| Item 5 GROSS PREMIUM | $3,082.00 | | |
| | Due Date: | 45 days after inception | |
| Item 6 RETROACTIVE DATE: | April 8, 2022 | | |

Item 7 NOTICE OF CLAIM TO: Scott Conway
Thompson Heath & Bond Limited
107 Leadenhall Street, London, EC3A 4AF
Email: SConway@thbgroup.com

Item 8 NOTICE OF ELECTION: Stateside Underwriting Agency
A Division of Johnson & Johnson, Inc.
335 Commerce Drive
Crystal Lake, Illinois 60014

Item 9 SERVICE OF SUIT NOMINEE: Mendes and Mount, LLP
750 Seventh Avenue,
New York, 10119

Item 10 FORMS AND ENDORSEMENTS ATTACHED HERETO:

FB SEC B 2023 SECURITY ENDORSEMENT SIDE B
NMA2918 War and Terrorism Exclusion
MAN 1 Cancellation due to Premium Payment Default
MAN 2 Choice of Law Clause
LSW 1001 Several Liability Notice
NMA 1168 Small Additional or Return Premiums Clause
CON 1 Conformity Clause
INS AMEND SRC TBL INS AMEND SRC TBL
LMA 3100 Sanction Limitation and Exclusion Clause
MAN 3 Bilateral Extended Reporting
L94 NMA 1477 RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
Application Dated:
No Claims Declaration Dated:

## INSURANCE BROKERS AND AGENTS

## PROFESSIONAL LIABILITY COVERAGE

**NOTICE:** This is a Claims made and reported form. Except to such extent as may otherwise be provided herein, the coverage afforded under this insurance certificate is limited to liability for only those Claims that are first made against the Insured while the insurance is in force and reported to the Underwriters while the Insurance is in force. Damages and Claims Expenses shall be applied against the deductible. Please review the coverage afforded under this insurance certificate carefully and discuss the coverage hereunder with your insurance agent or broker.

The Underwriters agree with the Named Insured, set forth in Item 1 of the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the application which is made a part of this insurance certificate (hereinafter referred to as the "certificate" or "insurance") and subject to the Limit of Liability, exclusions, conditions and other terms of this insurance:

**1. INSURING AGREEMENTS**

1.1. Professional Services Coverage

To pay on behalf of the Insured, Damages and Claims Expenses which the Insured shall become legally obligated to pay because of

a) any Claim or Claims first made against any Insured during the Period of Insurance or Extended Reporting Period,

b) reported to the Underwriters during the Period of Insurance or within 30 days after the expiration the Period of Insurance or reported to the Underwriters during the Extended Reporting Period in accordance with Clause 11 , and

c) arising out of any Personal Injury or negligent act, error or omission by an Insured in the rendering or failure to render Professional Services.

except as excluded or limited by the terms, conditions and exclusions of this certificate.

1.2 Legal Fees and Expenses

Payments made under this Clause 1.2 are not subject to the deductible.

1.2.1 Disciplinary Proceeding Reimbursement.

Underwriters will reimburse the Insured, upon written request, for legal fees and expenses up to $25,000 in the aggregate, which is in addition to the Limit of Liability, for the Period of Insurance, incurred by the Insured with the prior written consent of the Underwriters, in responding to a disciplinary, regulatory or administrative action brought directly against the Insured during the Period of Insurance, provided that the regulatory or administrative action:

a) arises out of the rendering of or failure to render Professional Services; and

b) is reported promptly in writing to the Underwriters during the Period of Insurance.

After the Underwriters have paid $25,000 under this Clause 1.2.1, the Underwriters shall not be obligated to pay any further legal fees and expenses as described in this Clause 1.2.1.

1.2.2 Subpoena Expense Reimbursement

Underwriters will reimburse the Insured, upon written request, for legal fees and expenses up to $25,000 in the aggregate, which is in addition to the Limit of Liability, for the Period of Insurance, incurred by the Insured with the prior written consent of the Underwriters, in responding to subpoenas first received by the Insured during the Period

of Insurance that seek documents or testimony regarding the rendering or failing to render Professional Service, provided that the subpoena:

a) arises out of the rendering of or failure to render Professional Services; and

b) is reported promptly in writing to the Underwriters during the Period of Insurance.

After the Underwriters have paid $25,000 under this Clause 1.2.2, the Underwriters shall not be obligated to pay any further legal fees and expenses as described in this Clause 1.2.2.

1.2.3 Defendant's Reimbursement

Underwriters will reimburse the Insured, upon written request from the Named Insured, for actual loss of earnings up to $250 a day because of time off from work attending trials, depositions, or other court appearances. After the Underwriters have paid $10,000 under this Clause 1.2.3, the Underwriters shall not be obligated to pay any further loss of earnings as described in this Clause 1.2.3.

1.3. Defense and Settlement (Included in the Limit of Liability)

1.3.1. The Underwriters shall have the right and duty to defend, subject to the Limit of Liability, any Claim against the Insured seeking payment under the terms of this insurance, even if any of the allegations of the Claim are groundless, false or fraudulent.

1.3.2. The Underwriters shall have the right to make any investigation they deem necessary, including, without limitation, any investigation with respect to the application and statements made in the application and with respect to coverage.

1.3.3 The Underwriters will not settle any Claim without the written consent of the Named Insured. The consent of the Named Insured shall be binding upon all Insureds. If the Named Insured is a corporation, the written consent of an Insured who was formerly but is no longer a member of the corporation will not be required, provided that a duly authorized principal of the corporation gives his/her written consent on behalf of the corporation. The Named Insured shall not unreasonably withhold consent from the Underwriters.

1.3.4. If the Named Insured shall refuse to consent to any settlement or compromise recommended by the Underwriters and acceptable to the claimant and elects to contest the Claim, the Underwriters' liability for any Damages, Supplementary Payments and/or Claims Expenses shall not exceed the amount for which the Claim could have been settled, less the remaining Deductible, plus the Claims Expenses incurred up to the time of such refusal, or the applicable Limit of Liability, whichever is less, and shall have the right to withdraw from the further defense thereof by tendering control of said defense to the Named Insured.

1.3.5. It is further provided that the Underwriters shall not be obligated to pay any Damages or Claims Expenses or to undertake or continue defense of any suit or proceeding after the applicable limit of Underwriters' liability has been exhausted by payment of Damages or Claims Expenses or after deposit of the applicable certificate limit in a court of competent jurisdiction, and that upon such payment, the Underwriters shall have the right to withdraw from the further defense thereof by tendering control of said defense to the Insured.

1.4 Provided always that such Damages, Supplementary Payments, Legal Fees or Expenses described in 1.1 through 1.3 above:

1.4.1 have arisen out of an act, error or omission which took place, or is alleged to have taken place, on or after the retroactive date set forth in Item 6 of the Declarations;

1.4.2 are not based upon or arisen out of any act, error, or omission that took place prior to the effective date of this insurance, if any Insured on the effective date knew or could have

reasonably foreseen that such acts, errors or omissions might be expected to be the basis of a Claim;

1.4.3 have not been incurred with respect to any Claim or circumstance which might lead to a Claim in respect of which any Insured has given notice to the insurer of any other insurance in force prior to the effective date of this certificate.

**2. PERSONS INSURED**

Each of the following is an Insured under this insurance to the extent set forth below:

2.1. if the Named Insured designated in Item 1 of the Declarations is an individual, the person so designated and their spouse but only with respect to Professional Services provided by the person so designated;

2.2. if the Named Insured designated in Item 1 of the Declarations is a partnership, the partnership so designated, any Predecessor Firm thereof and the spouses of the partners but only with respect to Professional Services provided by the partnership;

2.3. if the Named Insured designated in Item 1 of the Declarations is a firm or association, the firm or association so designated, any Predecessor Firm and any partners, directors, officers or any other employee of the firm or association or Predecessor Firm, but solely with respect to Professional Services rendered on behalf of the Named Insured designated in Item 1 of the Declarations;

2.4. any person who previously qualified as an Insured under 2.3 above prior to the termination of the required relationship with the Named Insured, but solely with respect to Professional Services rendered on behalf of the Named Insured designated in Item 1 of the Declarations.

2.5. any person acting as an independent contractor, but only while providing Professional Services on behalf of the Named Insured;

2.6. the estate, heirs, executors, administrators, assigns and legal representatives of any Insured in the event of such Insured's death, incapacity, insolvency or bankruptcy, but only to the extent that such Insured would otherwise be provided coverage under this insurance.

**3. TERRITORY**

This insurance applies to acts, errors or omissions which take place anywhere in the world provided the Claim is first made against the Insured within the Untied States of America, its territories or possessions or Canada during the Period of Insurance or Extended Reporting Period purchased in accordance with Clause 9.

**4. EXCLUSIONS**

The coverage under this insurance does not apply to Damages, Supplementary Payments or Legal Fees & Expenses incurred with respect:

4.1. to any Claim based upon or arising out of any criminal, dishonest, fraudulent or malicious act, error or omission of any Insured, committed with actual, criminal, dishonest, fraudulent or malicious purpose or intent. However, notwithstanding the foregoing, this exclusion applies only to insureds who had knowledge of such act, error or omission and, further, where the exclusion applies, the insurance afforded by this certificate shall apply to Claims Expenses incurred in defending any such Claim or circumstance which might lead to a Claim, but shall not apply to any Damages which the Insured might become legally obligated to pay;

4.2. to any Claim by one Insured under this insurance against another Insured under this insurance or made by or against or in connection with any business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in the Declarations, which is owned by any Insured or in which any Insured is a trustee, partner, officer, director or employee;

4.3. to any Claim based upon or arising out of

bodily injury, mental anguish or sickness, disease or death of any person, or

injury to or destruction of any tangible property, including the loss of use thereof;

Provided that this exclusion shall not apply to any Claim, Supplementary Payment or Legal Fees & Expenses that arises from any act, error or omission of the Insured in rendering or failing to render Professional Services in connection with such perils or events.

4.4. to any Claim based upon or arising out of the insolvency or bankruptcy of:

any Insured or

any other entity including, but not limited to, the failure, inability, or unwillingness to pay Claims, losses, or benefits due to the insolvency, liquidation or bankruptcy of any such other entity.

4.5. to any Claim based upon or arising out of the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto;

4.6. to any employment practice claims, including any actual or alleged refusal to employ, wrongful hiring, termination of employment or employment practice, improper evaluation or promotion, humiliation, harassment, misconduct or discrimination of any kind by an insured, based on factors including, but not limited to, race, color, creed, national origin, physical or other disability, marital status, age, gender or sexual orientation. This includes creation of a work environment that is intimidating, hostile or offensive;

4.7. to any Claim based upon or arising out of any act, error or omission involving any security or any activities or transactions subject or claimed to be subject to the Securities Act of 1933, The Securities Exchange Act of 1934, The Public Utility Holding Company Act of 1935, The Trust Indenture Act of 1939, The Investment Company Act of 1940 or the Investment Advisors Act of 1940 or any purchase, sale or offering of any security to or from the public which is subject to any State Blue Sky or Securities Law;

4.8. to any Claim based upon or arising out of the notarization of a signature or acknowledgement of a signature without the physical appearance of the signatory before the Insured;

4.9 to any Claim based upon or arising out of any proceeding brought against any insured by any Insurance Department, Insurance Commissioner or other state insurance regulatory body or official, the falsification, alleged or otherwise, of any offer of an insurance contract or where coverage was placed by the Insured or others with an insurer who is not authorized or approved to transact insurance within the applicable state.

4.10 to any Claim or any other damage, loss, cost or expense, including, but not limited to damages, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, which, actually or allegedly, is based upon, relates to, arises out of, or is caused directly or indirectly, in whole or in part, by:

4.10.1 any Fungus(i), Mold(s), mildew or yeast, or

4.10.2 any Spore(s) or toxins created or produced by or emanating from such Fungus(i), Mold(s), mildew or yeast, or

4.10.3 any substance, vapor, gas, or other emission or organic or inorganic body or substance

produced by or arising out of any Fungus(i), Mold(s), mildew or yeast, or

4.10.4 any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any Fungus(i), Mold(s), mildew, yeast, or Spore(s) or toxins emanating therefrom, or

4.10.5 asbestos, or any material containing asbestos in whatever form or quantity

regardless of any other cause or event, that contributed concurrently or in any sequence to that Claim, damage, loss, cost or expense.

Provided that this exclusion shall not apply to any Claim, Supplementary Payment or Legal Fees & Expenses that arises from any act, error or omission of the Insured in rendering or failing to render Professional Services in connection with such perils or events.

4.11 to, or any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from, ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel. This exclusion 4.11 shall apply solely In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone,

## 5. DEFINITIONS

Wherever used in this certificate:

5.1. "Claim" means a demand received by any Insured for money or services alleging an act, error or omission in the provision of Professional Services, including the service of suit or institution of arbitration proceedings against the Insured or any other alternative dispute resolution proceeding against any Insured in which damages are claimed and to which the Insured submits with the Underwriters' consent.

5.2. "Claims Expenses" means:

5. 2.1. fees charged by an attorney(s) designated by the Underwriters; and

5.2.2. all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, suit or proceeding arising in connection therewith, if incurred by the Underwriters, or by the Insured with the written consent of the Underwriters.

5.2.3. Claims Expenses does not include any salary, overhead or other charges by the Insured for any time spent in cooperating in the defense and investigation of any Claim or circumstance which might lead to a Claim notified under this insurance, unless explicitly provided for under Clause 1.3., Supplementary Payments.

5.3. "Damages" means:

5.3.1 a monetary judgment, award or settlement;

5.3.2 the cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. Underwriters do not have to furnish such bonds;

5.3.3 costs taxed against the Insured;

5.3.4 pre-judgment interest awarded against the Insured on that part of the judgment paid by Underwriters. If Underwriters make an offer to pay the applicable limit of insurance, they will not pay any pre-judgment interest based on that period of time after the offer;

5.3.5 interest on the full amount of the judgment that accrues after the entry of judgment and before Underwriters have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Liability.

"Damages" does not mean:

5.3.6 punitive or exemplary damages or any damages which are a multiple of compensatory damages, except were insurable by law;

5.3.7 fines, sanctions or penalties, except were insurable by law;

5.3.8 the return of or reimbursement for fees, brokerage commissions, contingent commissions or any other compensation, costs or expenses charged by any Insured.

5.4. "Extended Reporting Period," if applicable, means the period of time after the end of the Period of Insurance for reporting Claims arising out of acts, errors or omissions which take place prior to the end of the Period of Insurance and are otherwise covered by this insurance.

5.5. "Period of Insurance" means the period of time between the inception date shown in the Declarations and the effective date of termination, expiration or cancellation of this insurance and specifically excludes any Extended Reporting Period hereunder.

5.6. "Personal Injury" means any matter arising from:

5.6.1 Defamation, libel, slander, product disparagement, trade libel, prima facie tort, infliction of emotional distress, outrage, outrageous conduct, or other tort related to disparagement or harm to the reputation or character of any person or organization;

5.6.2 Invasion of or interference with the right to privacy or publicity, including but not limited to false light, public disclosure of private facts, intrusion and invasion;

5.7. "Predecessor Firm" means any insurance agent, broker, agency or brokerage firm, association or partnership engaged in the business of selling insurance to whose financial assets and liabilities the Named Insured is the majority successor in interest and which is listed on the Named Insured's application for this insurance as a predecessor firm.

5.8. "Professional Services" means those services provided for others in the Insured's business as an insurance agent, insurance broker, insurance consultant, insurance instructor, insurance premium financer, insurance risk manager consultant or advisor, insurance benefits consultant, program administrator, general agent or board member of a non-profit insurance professional association or in the provision of premium finance, notary public, claims handling or loss control services, regardless if performed via an electronic method.

"Professional Services" does not mean:

5.8.1 any Insured's services as an underwriter, managing general agent, reinsurance underwriter or claims adjuster;

5.8.2 any Insured's activities as a trustee, partner, officer, director or employee of any employee trust, charitable organization, corporation, company or business other than the Named Insured.

5.9. "Regulatory Action" means a proceeding commenced by a governmental body charged with licensing the Insured to render Professional Services that is based on an act, error or omission committed after the retroactive date involving the rendering or failing to render Professional Services.

**6. LIMIT OF LIABILITY**

6.1 The Limit of Liability stated in item 3 of the Declarations applies to Damages and Claims

Expenses as described in Clause 1.1.

6.2 After the applicable limit of Underwriters' liability stated in item 3 of the Declarations has been exhausted, whether by Damages and/or Claims Expenses, Underwriters shall not be obligated to pay any Damages or Claims Expenses or to undertake or continue defense of any suit or proceeding.

6.3 Any Limit of Liability stated in the Declarations as applicable to "each Claim" is the limit of the Underwriters' liability for all Damages and/or Claims Expenses arising out of the same, related or continuing Professional Services without regard to the number of Insureds, Claims or claimants.

6.4 Any Limit of Liability stated in the Declarations as applicable to "annual aggregate" is the total limit of the Underwriters' liability for all Damages and/or Claims Expenses arising out of all Claims or circumstances which might lead to a Claim that are covered under the terms and conditions of this certificate.

6.5 Legal Fees and Expenses as described in clause 1.2 are payable by the Underwriters in addition to the Limits of Liability stated in 6.1 through 6.4 above.

6.6 The Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability of the Underwriters for the Period of Insurance.

6.7 For the purpose of this clause, "exhaustion" or "exhausted" shall mean the depletion of limits to zero due to the payment of (including deposit of the applicable limit in a court of competent jurisdiction), liability to pay or promise to pay Damages and/or Claims Expenses, as applicable.

**7. DEDUCTIBLE**

The deductible amount stated in Item 4 of the Declarations shall be satisfied by payments by the Named Insured of Damages and Claims Expenses resulting from all Claims first made during the Period of Insurance and the Extended Reporting Period, and the Underwriters shall be liable only for the amounts in excess of such Deductible.

The deductible amount shall be payable by the Named Insured within thirty days of invoice by Underwriters and the Insured shall make direct payments within the deductible to appropriate other parties designated by the Underwriters. Should the Named Insured fail to make any deductible payments within thirty days of invoice by Underwriters, Underwriters may, upon a further thirty days written notice to the Named Insured, withdraw from the defense of any Claim against an Insured under the certificate and shall have no further obligation to defend or indemnify any Insured for any Claim.

The Insured's Deductible shall be reduced by 50% for any Claim that proceeds and is resolved at mediation prior to the initiation of a lawsuit, but only to the extent that the parties have submitted the Claim to mediation pursuant to the original contract or services agreement between the claimant and the Insured.

**8. INNOCENT INSURED**

8.1. Whenever coverage under this insurance would be excluded, suspended or lost:

8.1.1. because of any exclusion relating to criminal, dishonest, fraudulent or malicious acts, errors or omissions by any Insured, and with respect to which any other Insured did not personally participate or personally acquiesce in or remain passive after having personal knowledge thereof, or

8.1.2. because of noncompliance with any condition relating to the giving of notice to the Underwriters with respect to which any other Insured shall be in default solely because of the failure to give such notice or concealment of such failure by one or more Insureds responsible for the loss or damage otherwise insured hereunder.

The Underwriters agree that such insurance as would otherwise be afforded under this certificate shall cover and be paid with respect to those Insureds who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal

knowledge of: (a) one or more of the acts, errors or omissions described in any such exclusion; or (b) such failure to give notice, provided that if the condition be one with which such Insured can comply, after receiving knowledge thereof, the Insured entitled to the benefit of this Clause shall comply with such condition promptly after obtaining knowledge of the failure of any other Insured to comply therewith. Provided always that such Claim fall within the provisions of the Insuring Agreement with respect to the requirement that the Claim be made within the certificate Period and notice of such claim to Underwriters occur within the Certificate Period (or within 30 days after expiration of the certificate Period) or within the Extended Reporting Period, if applicable.

8.2. With respect to this provision, the Underwriters' obligation to pay in such event shall be in excess of the Deductible and in excess of the full extent of any assets of any Insured to whom the exclusion applies. In no event shall the Underwriters' obligation to pay exceed the Limit of Liability stated in Item 3 of the Declarations.

**9. EXTENDED REPORTING ENDORSEMENT**

9.1. In the event of cancellation or non-renewal of this insurance by the Underwriters, the Named Insured designated in Item 1 of the Declarations shall have the right to have issued an endorsement providing an Extended Reporting Period for 12 months in respect of Claims first made against any Insured and reported to the Underwriters during the Extended Reporting Period, subject to the conditions set forth in the definition of Extended Reporting Period herein. In order for the Named Insured to invoke the Extended Reporting Period option, the payment of the additional premium for the Extended Reporting Period must be paid to the Underwriters within 30 days of the non-renewal or cancellation.

The premium for the Extended Reporting Period shall be:

100% for twelve (12) months;

of the full (and not proportionally or otherwise in part) premium set forth in Item 5 of the Declarations (or the annual equivalent thereof if the Period of Insurance for this insurance was not one year).

9.2. The Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability of Underwriters for the Period of Insurance.

9.3 Coverage for Claims under this Extended Reported Period shall be limited to claims arising out of acts, errors or omissions, occurring

after the Retroactive Date shown in Item 6 of the Declarations and

before the expiration of the original Certificate Period as shown in Item 2 of the Declarations

9.3. The right to the Extended Reporting Period shall not be available to the Named Insured where cancellation or non-renewal by the Underwriters is due to non-payment of premium or failure of an Insured to pay such amounts within the amount of the applicable deductible.

9.4. All notices and premium payments with respect to the Extended Reporting option shall be directed to the Underwriters through the entity named in Item 8 of the Declarations.

9.5. At the commencement of the Extended Reporting Period the entire premium shall be deemed earned, and in the event that the Named Insured terminates the Extended Reporting Period for any reason prior to its natural expiration, the Underwriters will not be liable to return any premium paid for the Extended Reporting Period. The Extended Reporting Period cannot be cancelled by the Underwriters.

9.6. If this insurance is succeeded by claims-made insurance coverage on which the retroactive date is the same as, or earlier than, that shown in the Declarations of this insurance, the Insured shall have no right to the Extended Reporting Period.

**10. OTHER INSURANCE**

This insurance shall apply in excess of any other valid and collectible insurance available to any Insured, unless such other insurance is written only as specific excess insurance over the Limit of Liability of this certificate.

**11. NOTICE OF CLAIM, OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM**

11.1. If any Claim is made against an Insured, the Insured shall immediately forward to the Underwriters through persons named in Item 7 of the Declarations every demand, notice, summons or other process received by it or its representative.

11.2. If during the Period of Insurance an Insured first becomes aware of an act, error or omission that could reasonably be the basis for a Claim, the Insured must give immediate written notice to the Underwriters through persons named in Item 7 of the Declarations during the Period of Insurance of:

11.2.1. the specific act, error or omission; and

11.2.2. the injury or damage which may result or has resulted from the act, error or omission; and

11.2.3. the circumstance by which the Insured first became aware of the act, error or omission.

Any subsequent Claim made against the Insured which is the subject of the written notice shall be deemed to have been made at the time written notice was first received by the Underwriters.

11.3. A Claim shall be considered to be reported to the Underwriters when notice is first received by the Underwriters through persons named in Item 7 of the Declarations of the Claim.

11.4. All Claims arising out of the same, continuing or related Professional Services shall be considered a single Claim and deemed to have been made at the time notice of the first of the related Claims is received by the Underwriters and shall be subject to one Limit of Liability.

11.5. In the event of non-renewal of this insurance by the Underwriters, the Insured shall have thirty (30) days from the expiration date of the Period of Insurance to notify Underwriters of Claims made against the Insured during the Period of Insurance which arise out of any act, error or omission which took place prior to the termination date of the Period of Insurance and are otherwise covered by this insurance.

11.6. If any Insured shall make any Claim under this certificate knowing such claim to be false or fraudulent, as regards amount or otherwise, this certificate shall become null and void, and all coverage hereunder shall be forfeited.

**12. ASSISTANCE AND COOPERATION OF THE INSURED**

Each Insured shall cooperate with the Underwriters in all investigations, including investigations regarding the application and coverage under this certificate and, upon the Underwriters' request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization other than an employee of any Insured who may be liable to the Insured because of acts, errors or omissions with respect to which insurance is afforded under this certificate; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. An Insured shall not, except at his own cost, admit liability, make any payment, assume any obligation, incur any expense, enter into any settlement, stipulate to any judgment or award or otherwise dispose of any Claim without the consent of the Underwriters.

**13. ACTION AGAINST THE UNDERWRITERS**

No action shall lie against the Underwriters unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment or award against the Insured after actual trial or arbitration or by written agreement of the Insured, the claimant and the Underwriters.

Any person or organization or the legal representative thereof who has secured such judgment, award or

written agreement shall thereafter be entitled to make a Claim under this certificate to the extent of the insurance afforded by this certificate. No person or organization shall have any right under this insurance to join the Underwriters as a party to an action or other proceeding against the Insured to determine the Insured's liability, nor shall the Underwriters be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Underwriters of their obligations hereunder.

**14. SUBROGATION**

In the event of any payment under this insurance, the Underwriters shall be subrogated to all the Insured's rights of recovery therefor against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the payment of Damages by the Underwriters to prejudice such rights.

**15. CHANGES**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this insurance or estop the Underwriters from asserting any right under the terms of this insurance; nor shall the terms of this insurance be waived or changed, except by endorsement issued to form a part of this insurance, signed by the Underwriters.

**16. MERGERS AND ACQUISITIONS**

The Named Insured shall be required to give written notice to the Underwriters prior to the completion of a merger or acquisition by or of the Named Insured, and the Underwriters expressly reserve the right to demand a premium adjustment if this insurance is to remain in force subsequent to any merger or acquisition following which the Named Insured is not the surviving entity.

If the Named Insured forms or acquires any organization related to its insurance agency operations and over which the Named Insured maintains ownership or majority interest then, provided there is no other similar insurance available to that organization, the Underwriters shall provide coverage automatically hereunder until the thirtieth day after such formation or acquisition or until the end of the Period of Insurance whichever is earlier. No coverage is provided hereunder for acts, errors or omissions committed by or on behalf of such organization before the date of formation or acquisition of the organization. The Underwriters expressly reserve the right to demand a premium adjustment if this insurance is to remain in force subsequent to such thirty day period.

**17. ASSIGNMENT**

The interest hereunder of any Insured is not assignable. If the Insured shall die or be adjudged incompetent, such insurance shall cover the Insured's legal representative as the Insured as would be permitted by this certificate.

**18. CANCELLATION**

18.1. This certificate of insurance may be cancelled by the Named Insured by surrender thereof to the Underwriters or by mailing to the Underwriters written notice stating when thereafter the cancellation shall be effective. This insurance may be cancelled by the Underwriters by mailing to the Named Insured at the address shown in the Declarations written notice stating when not less than 60 days thereafter such cancellation shall be effective. However, if the Underwriters cancel this insurance because the Insured has failed to pay a premium when due this insurance may be cancelled by the Underwriters by mailing a written notice of cancellation to the Named Insured at the address shown in the Declarations stating when not less than 10 days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the Period of Insurance. Delivery (where permitted by law) of such written notice either by the Named Insured or by the Underwriters shall be equivalent to mailing.

18.2 If the Named Insured cancels this insurance, earned premium shall be computed in accordance with

the short rate cancellation table and procedure below. If the Underwriters cancel this insurance, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**SHORT RATE CANCELLATION TABLE**

Notwithstanding anything to the contrary contained herein and in consideration of the premium for which this Insurance is written it is agreed that in the event of cancellation thereof by the Assured the Earned Premium shall be computed as follows:-

A. For insurances written for one year:-

| Days Insurance in Force | | Percent of One Year Premium | Days Insurance in Force | | Per cent. of One Year Premium |
|---|---|---|---|---|---|
| 1-73 | | 30 | 206 – 209 | | 66 |
| 74 – 76 | | 31 | 210 – 214 | (7 months) | 67 |
| 77 – 80 | | 32 | 215 – 218 | | 68 |
| 81 – 83 | | 33 | 219 – 223 | | 69 |
| 84 – 87 | | 34 | 224 – 228 | | 70 |
| 88 – 91 | (3 months) | 35 | 229 – 232 | | 71 |
| 92 – 94 | | 36 | 233 – 237 | | 72 |
| 95 – 98 | | 37 | 238 – 241 | | 73 |
| 99 – 102 | | 38 | 242 – 246 | (8 months) | 74 |
| 103 – 105 | | 39 | 247 – 250 | | 75 |
| 106 – 109 | | 40 | 251 – 255 | | 76 |
| 110 – 113 | | 41 | 256 – 260 | | 77 |
| 114 – 116 | | 42 | 261 – 264 | | 78 |
| 117 – 120 | | 43 | 265 – 269 | | 79 |
| 121 – 124 | (4 months) | 44 | 270 – 273 | (9 months) | 80 |
| 125 – 127 | | 45 | 274 – 278 | | 81 |
| 128 – 131 | | 46 | 279 – 282 | | 82 |
| 132 – 135 | | 47 | 283 – 287 | | 83 |
| 136 – 138 | | 48 | 288 – 291 | | 84 |
| 139 – 142 | | 49 | 292 – 296 | | 85 |
| 143 – 146 | | 50 | 297 –301 | | 86 |
| 147 – 149 | | 51 | 302 –305 | (10 months) | 87 |
| 150 – 153 | | 52 | 306 –310 | | 88 |
| 154 – 156 | | 53 | 311 –314 | | 89 |
| 157 – 160 | | 54 | 315 –319 | | 90 |
| 161 – 164 | | 55 | 320 –323 | | 91 |
| 165 – 167 | | 56 | 324 –328 | | 92 |
| 168 – 171 | | 57 | 329 –332 | | 93 |
| 172 – 175 | | 58 | 333 –337 | (11 months) | 94 |
| 176 – 178 | | 59 | 338 –342 | | 95 |
| 179 – 182 | (6 months) | 60 | 343 –346 | | 96 |
| 183 – 187 | | 61 | 347 –351 | | 97 |
| 188 – 191 | | 62 | 352 –355 | | 98 |
| 192 – 196 | | 63 | 356 –360 | | 99 |
| 197 – 200 | | 64 | 360 –365 | (12 months) | 100 |
| 201 – 205 | | 65 | | | |

B. For Insurances written for more or less than one year:-

1. If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

2. If insurance has been in force for more than 12 months:

   (a) Determine full annual premium as for an insurance written for a term of one year.

   (b) Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata Earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

   (c) Add premium produced in accordance with items (a) and (b) to obtain Earned Premium during full period insurance has been in force.

Furthermore and notwithstanding the foregoing, Underwriters shall retain the total premium for this Insurance, such total premium to be deemed earned upon inception of the certificate if any Claim or any circumstance that could reasonably be the basis for a Claim is reported to Underwriters under this Insurance on or before such date of cancellation.

**19. SINGULAR FORM OF A WORD**

Whenever the singular form of a word is used herein, the same shall include the plural when required by context.

**20. ENTIRE CONTRACT**

By acceptance of this certificate the Insured agrees that the statements in the Declarations and application are its agreements and representations, that this insurance is issued in reliance upon the truth of such representations and that this certificate embodies all agreements existing between the Insured and the Underwriters relating to this insurance.

**21. NUCLEAR INCIDENT EXCLUSION CLAUSE - LIABILITY – DIRECT**

The insurance provided by this certificate does not apply:

21.1. To injury, sickness, disease, death or destruction

21.1.1. with respect to which an Insured under this Certificate of insurance is also an Insured under a nuclear energy liability insurance issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or would be an Insured under any such insurance but for its termination upon exhaustion of its limits of liability; or

21.1.2. resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this insurance not been issued would be, entitled to indemnity from the United States of America, or any agency thereof under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

21.2. To expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

21.3. To injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

21.3.1. the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

21.3.2. the nuclear material is contained in spent fuel or waste at any time possessed, handled,

used, processed, stored, transported or disposed of by or on behalf of an Insured, or

21.3.3. the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to injury to or destruction of property at such nuclear facility.

21.4. As used in this clause: "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (1) or (2) thereof; "nuclear facility" means

21.4.1. any nuclear reactor;

21.4.2. any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste;

21.4.3. any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

21.4.4. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the insurance to which it is attached.

**22. SERVICE OF SUIT**

22.1. It is agreed that in the event of the failure of the Underwriters to pay any amount claimed to be due under this insurance, the Underwriters, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. This clause does not constitute and should not be understood to constitute an agreement by Underwriters that an action is properly maintained in a specific forum, nor may it be construed as a waiver of the Underwriters' rights to commence an action in a court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted the laws of the United States or of any State of the United States, all of which rights the Underwriters expressly reserve. It is further agreed that service of process in such suit may be made upon persons named in Item 9 of the Declarations and that in any suit instituted against any one of them upon this certificate, the Underwriters will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

22.2. The persons named in Item 9 of the Declarations are authorized and directed to accept service of process on behalf of the Underwriters in any such suit and/or upon the request of the Named Insured to give written undertaking to the Named Insured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereon

hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this certificate of insurance, and hereby designate the persons named in Item 9 of the Declarations as the persons to whom the said officer is authorized to mail such process or a true copy thereof.

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1. war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2. any act of terrorism.

   For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

**ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED**

## CANCELLATION DUE TO PREMIUM PAYMENT DEFAULT

It is warranted that the premium due to the Underwriters under this Certificate is paid within 45 day from inception. Non-receipt by Stateside Underwriting Agency by midnight [local standard time at the mailing address shown in item 1 of the declarations] on the premium due date shall render this insurance Certificate void with effect from inception.

MAN 1 (25-06-2010)

**ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED**

## CHOICE OF LAW CLAUSE

In consideration of the premium charged for this insurance, it is hereby understood and agreed by both the Insured and the Underwriters that any dispute concerning the interpretation of this insurance shall be governed by the laws of New York.

MAN 2 (06-10)

**ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED**

## SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

LSW 1001 (Insurance)

## SMALL ADDITIONAL OR RETURN PREMIUMS CLAUSE (U.S.A.)

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this Insurance is written, it is understood and agreed that whenever an additional or return premium of $2 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

NMA 1168

**ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED**

## CONFORMITY CLAUSE

Wherever the term "Policy" is used in this wording or endorsement, such term shall be deemed to mean "certificate".

CON 1

**Sanction Limitation and Exclusion Clause**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100
15 September 2010

**BILATERAL EXTENDED REPORTING ENDORSEMENT**

In consideration of the premium charged for this Certificate, it is hereby understood and agreed that paragraph 9.1 of CONDITION 9 is replaced with the following:

9.1. In the event of cancellation or non-renewal of this insurance by the Named Insured designated in Item 1 of the Declarations or by the Underwriters, the Named Insured shall have the right, upon payment in full and not proportionally or otherwise in part of an additional premium to be determined by the Underwriters at the time of such cancellation or non-renewal, to have issued an endorsement providing an Extended Reporting Period for 12, 24 or, 36 months, as elected by the Insured, in respect of Claims first made against any Insured and reported to the Underwriters during the Extended Reporting Period, subject to the conditions set forth in the definition of Extended Reporting Period herein. In order for the Named Insured to invoke the Extended Reporting Period option, the payment of the additional premium for the Extended Reporting Period must be paid to the Underwriters within 30 days of the non-renewal or cancellation.

The premium for the Extended Reporting Period shall be:

100% for twelve (12) months;
150% for twenty-four (24) months;
175% for thirty-six (36) months;

of the full (and not proportionally or otherwise in part) premium set forth in Item 5 of the Declarations (or the annual equivalent thereof if the Period of Insurance for this insurance was not one year).

MAN 3 (06-10)

**ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED**

**SECURITY ENDORSEMENT (B)**

To be attached to and form part of Policy Number: **SUABA3619-2302**

In Favor of: **PURPLE TULIP INSURANCE SERVICES COMPANY LLC**

It is hereby understood and agreed that the **SECURITY** for this policy is as follows:

| | | |
|---|---|---|
| 37.50% | 4893 | AES* |

* Aegis Syndicate Consortium 4893 is made up of Lloyd's Syndicates:

| | |
|---|---|
| AES 1225 | (70.00%), |
| AFB 5623 | (15.00%), |
| FDY 435 | ( 2.50%) |
| KLN 510 | ( 2.00%) |
| TMK 1880 | ( 0.50%) |
| LRE 3010 | ( 5.33%) |
| MMX 2010 | ( 2.67%) |
| VER 2689 | ( 2.00%) |

| | | |
|---|---|---|
| 37.50% | 609 | AUW |
| 10.00% | 727 | SAM |
| 5.00% | 2121 | ARG |
| 10.00% | 2791 | MAP |

The effective date of this endorsement is April 8, 2023.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

SECURITY ENDORSEMENT 2023/B

L1 SEC B

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)**

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64

L94 NMA1477

## STATESIDE UNDERWRITING AGENCY

## INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY APPLICATION - NEW BUSINESS

The insurance coverage for which you are applying is written on a claims-made policy form. Subject to policy provisions, this insurance will apply only to liability for claims that are first made against the insured while the policy is in force.

1. Agency's Legal Entity Name: (proposed primary name insured including the D/B/A if applicable):

Purple Tulip Insurance Services Company, LLC

Agency is a: Sole Proprietorship: _____ Partnership: _____ Corporation: _____ LLC: X Other: _____

2. Name of designated agency E&O contact: Mac Falck

Phone: 919-368-5337 Fax: _____ Email: mac@secondna Website: secondnature.com

3. Date Agency Established: 1/19/22 (MM/DD/YY) Year Current Owner Assumed Management: _____ (MM/DD/YY)
**** Resumes for all owners must be provided if agency was established or owner assumed management within the past 3 years.****

4. Physical Address (Primary Location): 333 Fayetteville Street

City: Raleigh State: NC County: Wake Zip: 27601

5. Mailing Address (if different from above): 2100 Lake Dam Road

City: Raleigh State: NC County: Wake Zip: 27627

6. Additional Locations? YES / (NO) (If **YES**, attach address of each location)

If **YES**, are all locations owned and under direct control of the applicant? YES / NO (If **NO**, attach explanation)

7. Is agency owned or controlled by or associated with any other business or entity? (YES) NO (If **YES**, attach explanation including the entity's name, percentage of ownership interest, and relationship to the applicant)

8. Within the last five years, have there been: (If **YES**, to any question below attach a detailed explanation)

a. Changes in name (YES) / NO
b. Changes in agency ownership YES / (NO)
c. Mergers with/or purchases of other agencies YES / (NO)
d. Agency cluster arrangements YES / (NO)

9. Select desired Limits of Liability, Deductible, Desired Effective Date and Retro Date (Selections may be subject to underwriting approval)

| LIMITS OF LIABILITY (Per Claim/Aggregate) | | | | | DEDUCTIBLE (Per Claim) | | | |
|---|---|---|---|---|---|---|---|---|
| | $500,000 / $1,000,000 | | $2,000,000 / $3,000,000 | | | $2,500 | | $25,000 |
| | $1,000,000/ $1,000,000 | | $2,000,000 / $3,000,000 | | X | $5,000 | | $50,000 |
| X | $1,000,000/ $2,000,000 | | $3,000,000 / $3,000,000 | | | $7,500 | | Other _____ |
| | $1,000,000/ $3,000,000 | | $4,000,000 / $4,000,000 | | | $10,000 | | |
| | $2,000,000/ $2,000,000 | | $5,000,000 / $5,000,000 | | | | | |

Desired Effective Date: 2/28/22 (MM/DD/YY) Current Retro/Prior Acts Date: _____ (MM/DD/YY)
(If "Full Prior Acts" or "None", enter first date of continuous E&O coverage)

10. Premium Volume/ Commissions / Broker Fees: (New agency - estimate next 12 mos.)

| | LAST 12 MONTHS | NEXT 12 MONTHS |
|---|---|---|
| **TOTAL P&C GROSS PREMIUMS WRITTEN ANNUALLY** | 782,719 | 2,200,000 |
| Total gross annual P&C Commissions & Broker Fees (Pers./Comm. lines) | 295,365 | 800,000 |
| Total gross annual Life Commissions & Brokers Fees | | |
| Total gross annual Accident & Health Commission & Broker Fees | | |
| **GRAND TOTAL GROSS ANNUAL COMMISSIONS & BROKER FEES** | | |

11. Number of personnel: (Each individual should be counted only once)

| | # of Full-Time | # of Part-Time |
|---|---|---|
| Licensed Owners, Officers, Shareholders, Members and Partners | 1 | |
| Licensed Producers / Sales Staff | | |
| Licensed Independent Contractors | | |
| Other Licensed Staff | | |
| Non-Licensed Staff | | |
| Total | 1 | |

12. List the names of Licensed Owners, Officers, and Shareholders, Members and Partners and years of insurance experience.

| Individuals Name | Relationship to Agency | Insurance Designations if any | % of Ownership if any | Yrs of Insurance Experience |
|---|---|---|---|---|
| Kevin Barry | Officer | | | 1 |
| | | | | |
| | | | | |
| | | | | |

13. Percentage of business placed:

| | | |
|---|---|---|
| As Retail (Business Sold Directly to Insureds) | 100 | % |
| As Wholesale (Business Sold to Other Agents) | | % (Supplemental App. must be completed) |
| As MGU/PA (Business for which you have underwriting, binding, but **NO** claims authority) | | % (Supplemental App. must be completed) |
| As MGA (Business for which you have underwriting, binding and claims authority) | | % (Supplemental App. must be completed) |
| **TOTAL MUST EQUAL 100 %** | 100 | % |

14. Type and PERCENTAGE of Insurance Placed (Prior 12 months)

PERSONAL LINES

| | |
|---|---|
| Auto-Standard | |
| Auto-Non Standard | |
| Homeowners-Property | 100% |
| Substandard Fire | |
| Other (Specify):________ | |
| TOTALPERSONAL LINES % | |

LIFE, HEALTH AND ACCIDENT

| | |
|---|---|
| Life | |
| Accident & Health | |
| Other (Specify): ________ | |
| TOTAL LIFE, HEALTH AND ACCIDENT % | |

COMMERCIAL LINES

| | |
|---|---|
| Fire | |
| Package Policies | |
| Medical Malpractice | |
| Professional Liability | |
| Workers Compensation | |
| Commercial Auto | |
| General / Excess Liability | |
| EPLI | |
| Long Haul Trucking | |
| Crop Insurance | |
| Bonds | |
| Marine | |
| Aviation | |
| Other (Specify) ________ | |
| TOTAL COMMERCIAL LINES % | |

**GRAND TOTAL OF BUSINESS PLACED (MUST EQUAL 100%)** ________

% of Total Business that is Direct Billed ________

15. List of top 5 Insurance Carriers and the Percent of Business Placed with each: If the total equals less than 85% of your agency's total premiums written, please answer by attachment to this application.

| Name of Insurance Carrier | % of Business | Agency YES | Contract? NO | Admitted YES | Carrier? NO | AM Best Rating | # Years Represented |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

16. Does the agency place business with carriers that are rated less than B+ by A.M. Best: YES / NO (circled: NO) If **YES,** what percentage ____%

17. In the past 5 years has the agency:

a. Placed coverage for risks involved in petroleum exploration and extraction, mineral exploration and mining, hazardous waste operations with significant pollution exposures? YES / (NO)

b. Specialized in any programs or classes of business? YES (NO)

c. In the past five years, has the applicant firm placed coverage or had involvement with self-insured / Captives or Risk Retention Groups (RRG), Risk Purchasing Groups (RPG), Multiple Employer Trusts (MET) or Multiple Employer Welfare Arrangements (MEWA)? YES / (NO)

If **YES**, the applicant must include the name of the program(s); the name of the insurer(s); the extent of the coverage provided by the Insurer(s); the name and address of the administrator; any administrative duties performed by the applicant; and appropriate financial information, if applicable. You must also provide a copy of the promotional literature .

18. Does the agency perform any of the following activities? If **YES**, attach resume, promotional material and sample contract. Coverage may not be available and/or excluded.

| ACTIVITY | YES | NO | ANNUAL REVENUE |
|---|---|---|---|
| Financial Products (Mutual Funds, Annuities, Pensions, etc.) | | X | $ |
| Reinsurance Intermediary | | X | $ |
| Third Party Administrator | | X | $ |
| Investment Security Advisor | | X | $ |
| Pre-paid Legal | | X | $ |
| Human Resources | | X | $ |
| Actuarial Services | | X | $ |
| Tax Advisor/Preparer | | X | $ |
| Risk Management / Loss Control | | X | $ |
| Premium Finance for Operations | | X | $ |
| Mortgage Service Facility | | X | $ |
| Real Estate | | X | $ |
| Motor Vehicle Title Services | | X | $ |
| Professional Employer Organization (PEO) Marketing | | X | $ |
| Other (Specify): | | X | $ |

19. Office Procedures

| | YES | NO |
|---|---|---|
| a. Does the agency utilize a computerized production and accounting system? If YES, Is there a back-up procedure for computerized production and accounting systems? Yes/ No | X | |
| b. Do you maintain a separate premium trust account? | X | |
| c. Is the agency on-line with any carrier? Name of carrier: ____ Annual Volume with Carrier: ____ | | X |
| d. Is incoming mail date stamped? | | X |
| e. Does the agency have a written office procedure manual? | | N/A |
| f. Are copies of binders mailed to the insured and/or the company within specified guidelines? | X | |
| g. Is there a procedure for documenting files and telephone conversations? | | X |
| h. Is a policy expiration list maintained? | | X |
| i. Are all applications, policies and endorsements checked for accuracy? | | N/A |
| j. Are files marked to ensure certificate holders are notified of cancellation and material changes? | | N/A |
| k. Does the agency have a diary/suspense system to track business? | | X |
| l. Does the agency have procedures in place to ensure proper disclosure of exclusions including but not limited to Mold/Fungus and War/Terrorism? | | N/A |
| m. Does the agency have procedures in place to ensure written documentation of policy limitations including but not limited to; wind deductibles, hurricane deductibles, and earthquake deductibles? | | N/A |
| n. Does the agency have procedures to ensure written confirmation of coverages requested, declined and accepted by the insured (i.e.: Checklists)? | X | |
| o. Has any of the agency staff attended an approved E&O seminar within the last 12 months or plan to attend within the next 30 days? If YES, Date of Seminar: ____ Percentage of staff Attended: ____ | | X |
| p. Does any of the agency staff hold industry-recognized and approved insurance designations, incl. CPCU, CIC, CISR CPCPSR and ACSR? If YES, Percentage of staff that have designations :____ Designations: ____ | | X |
| q. Is the agency a member of an Insurance Professional Association? If YES, which one(s) ____ | | X |
| r. Has the agency had an Errors and Omissions Audit? If YES, were all recommendations implemented? YES/ NO Date of Audit: ____ | | X |

| | YES | NO |
|---|---|---|
| 20. Has your agency ever experienced a lapse in E&O coverage or been cancelled due to non-payment of premium? If the answer is YES, attached a detailed explanation. | | X |
| 21. Has any past or present owner, officer, partner, employee, member or solicitor been the subject of complaints filed and/or disciplinary action by any insurance regulatory authority? If **YES**, attach a detailed explanation. | | X |
| 22. Has any policy or application for similar insurance on the applicant agency's behalf or any of its owners, officers, partners, members, employees or solicitors, or on behalf of any predecessor in business ever been declined, cancelled, or renewal refused. If **YES**, attach a detailed explanation. | | X |
| 23. Have any claims been made against the applicant or any of its past or present owners, shareholders, partners, members, owners, employees or solicitors or to the knowledge of the applicant agency on behalf of its predecessors in business, within the last 5 years? If **YES**, attach Supplemental Claim Form and loss runs. | | X |
| 24. Does any prospective insured person or entity have knowledge of any known acts, proceedings, events or developments, which may reasonably be expected to give rise to a claim against the applicant agency, past owners, officers, partners, employees or solicitors, or its predecessor(s) in business? If **YES,** attach Supplemental Claim Form and loss runs. | | X |

25. If **YES to 23 or 24,** have they been reported to your Professional Liability Insurance Carrier? (Circle One) **YES** **NO** (circled) **N/A**

**IT IS AGREED WITH RESPECT TO QUESTIONS 23 AND 24 THAT ANY CLAIM ARISING THEREFROM (WHETHER OR NOT DISCLOSED HEREIN), IS EXCLUDED FROM THE PROPOSED COVERAGE**

26. Please provide the following information on the agency's five years of professional liability coverage for the past 5 years. Attach a copy of the expiring Declarations Page. If no coverage is currently in place check here NONE: _____

| Company | Policy Period | Retroactive / Prior Acts Date | Limit of Liability | Deductible | Annual Premium |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

PRODUCER COMPENSATION DISCLOSURE: The applicant acknowledges by its signature below and hereby warrants that it will appropriately disclose any potential conflicts of interest based upon contingent or other commission arrangements to its clients and will secure the clients' agreement to such arrangement in writing prior to binding coverage. The applicant further agrees to be bound by the provisions related to producer compensation disclosure that have or may be enacted by the state(s) in which the applicant conducts operations. The applicant acknowledges that failure to abide by the aforementioned producer compensation disclosure requirements may affect coverage under this policy, if ultimately issued.

NOTICE TO APPLICANT - PLEASE READ CAREFULLY BEFORE SIGNING

THE APPLICANT AND AGENCY AND ALL PROPOSED INSUREDS ACCEPT NOTICE THAT ANY POLICY ISSUED WILL APPLY ON A "CLAIMS-MADE" BASIS. The undersigned is authorized by and acting on behalf of the Applicant and represents that all statements and particulars herein are true, complete and accurate and that there has been no suppression or misstatements of fact and agrees that this application shall be the basis of coverage. THE APPLICANT AND ALL PROPOSED INSUREDS ACCEPT NOTICE THAT THEY ARE REQUIRED TO PROVIDE WRITTEN NOTIFICATION TO THE COMPANY OF ANY CHANGES TO THIS APPLICATION THAT MAY HAPPEN BETWEEN THE SIGNATURE DATE BELOW AND ANY PROPOSED EFFECTIVE DATE.

THE APPLICATION MUST BE SIGNED BY AN ACTIVE OWNER, PARTNER, OFFICER OR MEMBER OF THE APPLICANT.

| [signature] | McFerrin Falck | CFO | 3/13/23 |
|---|---|---|---|
| Signature | Printed Name of Signer | Title | Date |

SIGNING THIS FORM OR TENDERING PREMIUM WITH THIS APPLICATION DOES NOT BIND THE APPLICANT OR THE COMPANY TO COMPLETE THE INSURANCE.

Application must be signed and dated to be considered for quotation. A properly completed, original signed and dated application will allow for prompt issuance of coverage, should quotation be offered and accepted.

| | | | |
|---|---|---|---|
| Producer's Signature | Printed Name of Producer | Producer License No. | Date |

## CANCELLATION TABLE ENDORSEMENT

It is understood and agreed that Item 18.2.A of the policy replaces Item 7 of the Insurance Jacket Certificate Provision SLC-3.

INS AMEND SRC TBL

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**