# EXHIBIT C

ROBINSON
BRADSHAW

August 30, 2024

SDeGeorge@robinsonbradshaw.com
704.377.8380 : Direct Phone

**(By Email)**

Carolyn Ferber, Esq.
Assistant Vice President, DWF Claims
DWF Claims (USA) LLC
740 Waukegan Road, Suite 340
Deerfield, IL 60015
Email: carolyn.ferber@dwfclaims.com

Re: Second Nature Insurance Services, LLC/Policy No. SUABA3619-2302/DWF Ref. UAE0157

Dear Ms. Ferber:

Our firm represents Second Nature Insurance Services, LLC f/k/a Purple Tulip Insurance Services Company, LLC ("Second Nature Insurance").[1] I write in response to your letter dated July 25, 2024. Therein, you stated the position of Certain Subscribing Underwriters at Lloyd's ("Insurers") regarding obligations under the referenced policy (the "Policy") for the lawsuit captioned *Best, et al. v. Second Nature Brands, Inc., et al.*, United States District Court, District of Columbia, Case No. 1:2024-cv-01799 (the "Lawsuit"). Second Nature Insurance disagrees with Insurers' position, particularly the denial of their duty to defend. Second Nature Insurance respectfully requests that Insurers reconsider and acknowledge their duty to defend the Lawsuit, even if the acknowledgement is subject to a reservation of rights.

Before turning to the grounds on which Insurers rely, we note for context the principle under New York law[2] that an insurer's duty to defend is triggered where "any" claim against the insured merely "*arguably*" or "possibly" arises from acts or omissions that fall within a policy's coverage. *Ironshore Specialty Ins. Co. v. Color Techniques, Inc.*, 2024 WL 3634860 at *4 (S.D.N.Y. Aug. 1, 2024) (citation omitted); *Travelers Indem. Co. of Connecticut v. Selective Fire and Casualty Ins. Co.*, 664 F.Supp.3d 427, (S.D.N.Y. 2023) (emphasis in original, citation omitted). An insurer cannot avoid its duty to defend unless "it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify

---

[1] Insurers contend that Second Nature Brands, LLC, Second Nature Insurance's parent company, is not an insured under the Policy. Second Nature Insurance reserves it right to dispute this contention in the future. The insured status of Second Nature Brands is immaterial for present purposes.

[2] The Policy includes a New York choice of law provision for the "interpretation" of the Policy. For present purposes, Second Nature Insurance addresses Insurers' duty to defend under New York law, but reserve its right to seek application of North Carolina law which would otherwise govern. The legal principles cited in this letter are substantially similar under New York and North Carolina law.

its insured under any policy provision." *Boro Park Land Co. v. Princeton Excess Surplus Lines Ins. Co.,* 140 A.D.3d 909, 910, 32 N.Y.S.3d 651, 653 (2016) (citation omitted).

Insurers deny any obligation because § 1.1 of the Policy provides that it covers claims and damages "arising out of any . . . negligent act, error or omission by an Insured . . . " Insurers posit that this language somehow precludes coverage because "[t]he Complaint does not allege negligence and instead alleges violations of statutes." The premise of this proposition is that negligence and a statutory violation are mutually exclusive. This premise is false both generally, and as applied to the Lawsuit.

Count I in the Complaint alleges that Second Nature Insurance, both directly and indirectly though the alleged acts and omissions of the other defendants, violated D.C. Code § 42-3502.11a.[3] This Code provision prohibits imposition of a mandatory fee for a service or facility without first obtaining approval pursuant to one of two other Code provision, §§ 42-3502.11 or 42-3502.15. Section 42-3502.11 allows the Rent Administrator to allow increased rent in proportion to an increase in the value of services or facilities. Section 42-3502.15 allows the Rent Administrator to approve a rent increase where the housing provider files with the Rent Administrator certain documents and information showing that a specified percentage of the tenants agreed to the proposed increase. Intentional conduct is not necessary to violate § 42-3502.11a, § 42-3502.11 or § 42-3502.15.

The alleged predicate acts and omissions underlying Second Nature Insurance's alleged failure to comply with § 42-3502.11a include assorted misrepresentations, failures to fulfill prescribed regulatory requirements, and failures to provide tenants certain information and documents. Because intentional wrongdoing is unnecessary, the alleged predicate acts underlying the alleged violation of § 42-3502.11a may consist, partially or entirely, of negligent acts or omissions. Indeed, "negligence" means an "inadvertent" act or omission "in the discharge of a legal duty." *Negligence, Black's Law Dictionary*, (11th ed. 2019). "Negligence" encompasses a spectrum of conduct ranging from simple negligence under the reasonable person paradigm to "gross negligence" and "recklessness." Notable here is the principle that an alleged "negligent misrepresentation" is independently actionable under both District of Columbia and New York law. *E.g., Falconi-Sachs v. LPF Senate Square, LLC,* 142 A.3d 550, 555 (D.C. App. 2016); *Tavor v. Troia,* 2024 WL 360571 at *4 (E.D.N.Y Jan. 31, 2024). Insurers selected the term "negligent" and chose not to include it in the terms defined in the Policy, so it must be construed broadly to maximize coverage.[4] Therefore, the plaintiffs may prevail on Count I based on, in the words of the Policy, "a negligent act, error, or omission." This, standing alone, triggers Insurers' duty to defend.

[3] This letter focuses on Count I of the Complaint, because a duty to defend any claim obligates Insurers to defend all claims. *E.g., Ironshore,* 2024 WL 3634860 at *4. We believe Count II likewise triggers Insurers' duty to defend. We will explain the duty to defend Count II, if you wish, but that should not delay acknowledgement of the duty to defend Count I and, therefore, the entire Lawsuit.

[4] Any ambiguity regarding the meaning of "negligent" as applied to Insurers' duty to defend the Lawsuit must be resolved "in favor of [Second Nature Insurance] and against [Insurers]." *Boro Park*, 140 A.D.3d at 910-11, 32N.Y.S.3d at 653 (citation omitted).

Even if all of Second Nature Insurance's alleged conduct falls outside Insurers' indemnity obligation for "negligent" acts, errors or omissions (which it does not), the Policy still requires Insurers to pay Second Nature Insurance's "Claims Expenses."[5] Section 4.1 of the Policy addresses allegations of "any criminal, dishonest, fraudulent or malicious act, error or omission of any Insured . . . " Where a claim is based on or arises from such alleged conduct, § 4.1 requires Insurers to pay "Claims Expenses incurred in defending any such Claim . . . " This independently defeats Insurers' denial of their duty to defend.

Based on the foregoing, Second Nature Insurance respectfully requests that Insurers acknowledge their duty to defend the Lawsuit. Upon acknowledgement, Second Nature Insurance will provide invoices for past Claims Expenses, and cooperate with Insurers in transitioning billings for future Claims Expenses in accordance with Insurers' instructions. If Insurers reserve their right to deny an indemnity obligation under the Policy, we will consider whether the reservation creates a conflict entitling Second Nature Insurance to independent counsel to be paid by Insurers.

This letter identifies reasons why Insurers have the duty to defend the Lawsuit. It is not intended as an exhaustive statement of Second Nature Insurance's rights under the Policy. Second Nature Insurance reserves all such rights.

We look forward to your prompt and favorable reply.

Sincerely,

ROBINSON, BRADSHAW & HINSON, P.A.

R. Steven DeGeorge

[5] The Policy defines "Claims Expenses" broadly to include attorneys' fees and "all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, suit or proceeding arising in connection therewith . . . "