**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ACCELERANT SPECIALTY INSURANCE COMPANY,

Plaintiff,

v.

SECOND NATURE BRANDS, INC.; and SECOND NATURE INSURANCE SERVICES, LLC;

Defendants.

Case No.: 1:24-cv-03558-JMC

**ACCELERANT SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Plaintiff Accelerant Specialty Insurance Company ("Accelerant"), by and through its counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), moves the Court for summary judgment on the basis that defendants Second Nature Brands, Inc. ("Second Nature Brands") and Second Nature Insurance Services, LLC ("SNIS" and, together with Second Nature Brands, "Second Nature") are not entitled to insurance coverage for a claim against Second Nature alleging it created a fraudulent scheme allowing landlords and property managers to charge tenants mandatory fees in addition to monthly rent. Accelerant seeks summary judgment on Counts I and II of its Complaint, Dkt. No. 1, which, respectively, seek declaratory judgments that coverage is not available because the underlying claim does not trigger the insuring agreement and because Exclusion B.1 precludes coverage entirely. As Second Nature asserted a Counterclaim for breach of contract that essentially mirrors Accelerant's Complaint, this motion also seeks summary judgment that Second Nature is not entitled to relief for its Counterclaim against Accelerant, because the policy does not afford coverage here.

Accelerant respectfully requests a hearing on this motion.

**INTRODUCTION**

This is an insurance coverage dispute in which Accelerant seeks a declaration that no coverage is available for Defendants SNIS and Second Nature Brands under Professional Liability Policy No. S0004PL00191000 (the "Policy") for the class action complaint filed against Defendants in *Best, et al. v. Second Nature Brands, Inc. et al.*, Case No. 1:24-cv-01799 (D.D.C.) (the "*Best* Action"). In the *Best* Action, a putative class action filed by Elisabeth Best, Jenna Bucklew, Rachal Irias, and Cassandra Stephan (the "Underlying Plaintiffs"), the Underlying Plaintiffs allege that Second Nature set up a "fraudulent scheme" by creating a program for landlords and property managers that allows them to charge tenants mandatory fees in addition to monthly rent. This program allegedly required tenants to pay monthly fees for a "resident benefits package" that does not actually benefit or provide any value to the residents. The Underlying Plaintiffs allege that Second Nature designed the program to provide "ancillary revenue opportunities" to landlords and property managers, enabling them to effectively push the costs of maintaining their properties to tenants.

No coverage is available under the Policy for the *Best* Action for two separate and independent reasons: (1) the complaint does not allege any negligent act, error, or omission by Second Nature, as is required to trigger the Policy's insuring agreement; and (2) coverage is barred by an exclusion for any claim based upon or arising out of any actual or alleged false, deceptive, or unfair trade practices or deceptive or misleading advertising. Consequently, Second Nature is not entitled to a defense or indemnity coverage under the Policy.

Summary judgment is appropriate at this time because the facts material to these issues are undisputed and readily established by the clear and unambiguous terms of the insurance policy

and the undeniable facts concerning the allegations in the complaint filed in the *Best* Action.[1]

## FACTUAL BACKGROUND

Accelerant issued the Policy to Second Nature Brands for the **policy period** of May 2, 2023 to July 1, 2024 (terms in bold are defined in the Policy). SOF ¶ 1. The Policy's Insuring Agreement provides that

> **We** will pay up to the **per claim limit** for **damages** and **claim expenses** in excess of the **retention** for covered **claims** against **you** alleging a negligent act, error, or omission in **your professional services** performed on or after the **retroactive date** provided the **claim** is first made against **you** during the **policy period** and is reported to **us** in accordance with Section V. **Your** obligations.

SOF ¶ 2. Section I provides that the following are the parties to the Policy:

> **A.** The Insurer identified on the Declarations as issuing this policy. When used in this policy, the terms **us**, **we** and **our** refers to the Insurer identified on the Declarations as issuing this policy, and
>
> **B.** An **Insured**. When used in this policy, the terms **you** and **your**, also refers to an **insured.**

SOF ¶ 3.

Section VI.B.1 of the Policy provides that

> **We** will have no obligation to pay any sums under this policy, including any damages or claim expenses, for any claim:
>
> **1. Antitrust and deceptive trade practices**
>
> Based upon or arising out of any actual or alleged:
>
> **a.** False, deceptive, or unfair trade practices,
>
> **b.** Unfair competition, impairment of competition, restraint of trade, or antitrust violations,

---

[1] As set forth in the stipulation filed by the parties with the Court on May 21, 2025, Accelerant and Second Nature both are of the view that this coverage dispute may be resolved by dispositive motions before discovery. Dkt. No. 14, at 2. Accordingly, the parties jointly requested a stay of all discovery pending resolution of cross-motions for summary judgment, and the Court entered an Order to that effect on July 3, 2025. *Id.* & Dkt. No. 18.

> **c.** Violation of the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman Act, all including as may be amended, or any similar federal, state, or local statutes, rules, or regulations in or outside the U.S., or
>
> **d.** deceptive or misleading advertising.

SOF ¶ 4.

The Policy defines **claim** to mean

> any written assertion of liability or any written demand for financial compensation or non-monetary relief.

SOF ¶ 5.

The Policy defines **Professional services** to mean

> the services scheduled in Item **9.** of the Declarations that are provided by **you** to a third party for a fee or other consideration, including such services that are performed electronically using the Internet or a network of two or more computers.
>
> **Professional services** also includes:
>
> 1. The provision of **technology services** performed in conjunction with any other **professional services**,
>
> 2. Services as a member of a formal accreditation, ethics, peer review, standards, or licensing board, if performed with the knowledge and consent of the **Named Insured.**

SOF ¶ 6.

Item 9 of the Policy's Declarations provides that the specified **Professional Services** here are "Residents' concierge services." SOF ¶ 7.

**<u>The *Best* Action</u>**

The *Best* Action initially was filed in the Superior Court for the District of Columbia on April 29, 2024, and then was removed to the United States District Court for the District of Columbia on June 21, 2024. SOF ¶¶ 8-9. The *Best* Action names as defendants Second Nature Brands and SNIS, among others. SOF ¶ 12.

In the *Best* Action, the Underlying Plaintiffs allege that Second Nature set up a "fraudulent scheme," by creating a program for landlords and property managers that allows them to charge their tenants mandatory fees in addition to monthly rent. SOF ¶ 14. The Underlying Plaintiffs allege that Second Nature designed the program to provide "ancillary revenue opportunities" to landlords and property managers, enabling them to effectively push the costs of maintaining their properties to tenants. SOF ¶ 15. According to the Underlying Plaintiffs, the program involves a "resident benefits package," which requires tenants to pay mandatory fees to cover insurance, HVAC filters, and access to an online portal to pay rent. SOF ¶16. The Underlying Plaintiffs allege that the package does not actually benefit or provide any value to the residents, noting among other things that the insurance covered the landlords and property managers and that HVAC filters are the responsibility of the landlord under District of Columbia law (and, in any event, were never provided to the Underlying Plaintiffs). SOF ¶ 17.

The Underlying Plaintiffs allege that they leased the property located at 1934 1st Street NW, Washington, D.C., which burned down on August 28, 2023. SOF ¶ 18. The Underlying Plaintiffs allegedly had been enrolled in the resident benefits package offered by Second Nature, for which they had been charged $45.95 per month. SOF ¶ 19. The Underlying Plaintiffs allege that after the fire, they submitted an insurance claim and learned for the first time that the insurance provided through the benefits package "was not actually renter's insurance as had been represented to them," but rather a landlord/property management protection policy that included just $10,000 of total coverage for personal property of the renters. *Id.* The Underlying Plaintiffs contend that because Second Nature and the underlying co-defendants had represented to them that the resident benefits package included renter's insurance, they had not obtained a separate renter's insurance policy to cover their personal belongings. SOF ¶ 20.

The Underlying Plaintiffs assert a cause of action against all defendants for violation of D.C. Code § 42-350211a, which prohibits a housing provider from imposing unapproved mandatory service fees. SOF ¶ 21. As to Second Nature, Underlying Plaintiffs contend that Second Nature is directly liable under the statute and vicariously liable for enabling, aiding and abetting the landlords and property managers in violating the statute. SOF ¶ 22. The Underlying Plaintiffs also assert a cause of action against all defendants for unlawful trade practices under the District of Columbia Consumer Protection Procedures Act ("DCCPPA"). SOF ¶ 23. For relief, the Underlying Plaintiffs seek, on behalf of themselves and other similarly situated residential tenants, unspecified compensatory damages, statutory damages, trebled damages, punitive damages and fees and costs, as well as certain injunctive relief. SOF ¶ 24.

On September 13, 2024, the Underlying Plaintiffs filed a First Amended Complaint ("FAC"). SOF ¶ 10. The allegations in the FAC largely mirror those asserted in the Underlying Plaintiffs' original complaint.

**The Coverage Dispute**

Second Nature sought coverage from Accelerant under the Policy for the *Best* Action. SOF ¶ 25. In correspondence dated July 8, 2024, Accelerant advised that no coverage was available for the *Best* Action for several reasons. SOF ¶ 26. First, Accelerant advised that, in the absence of an allegation of negligent conduct, the Policy's insuring agreement is not triggered by the *Best* Action. SOF ¶ 27. Second, Accelerant advised that Exclusion B.1 barred coverage for the *Best* Action, as it precludes coverage for any claim "[b]ased upon or arising out of any actual or alleged . . . false, deceptive or unfair trade practices, . . . or . . . deceptive or misleading advertising." SOF ¶ 28.

Second Nature responded in a letter dated August 30, 2024, asking Accelerant to reconsider its position and arguing that Accelerant's duty to defend is triggered by the *Best* Action. SOF ¶ 29.

Accelerant responded in a letter dated September 25, 2024, advising that it had considered the points raised in Second Nature's letter, as well as the allegations asserted in the FAC, and that it had determined that its initial conclusion was correct and that the Policy does not afford coverage for the *Best* Action. SOF ¶ 30.

On December 20, 2024, Accelerant filed this action seeking a declaratory judgment as to its rights and obligations under the Policy for the *Best* Action. Dkt. No. 1. Specifically, Accelerant seeks a declaration that it has no obligation to defend or indemnify Second Nature because coverage is not triggered, and because coverage otherwise is barred by Exclusion B.1. On May 16, 2025, Second Nature filed its Answer, along with a Counterclaim that essentially is the mirror image of Accelerant's Complaint. Dkt. No. 13.

## LEGAL STANDARDS

**Summary Judgment Standard.** According to Rule 56 of the Federal Rules of Civil Procedure, a party may file a motion for summary judgment "at any time until 30 days after the close of all discovery," including prior to the beginning of discovery. Fed. R. Civ. P. 56(b). A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits, or declarations, stipulations. . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[O]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence is to be

viewed in the light most favorable to the nonmoving party, and the court must draw all reasonable inferences in favor of the nonmoving party. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

**North Carolina Law Applies to this Contract Dispute.** When deciding state law claims in federal court where jurisdiction is based on diversity, the Court "appl[ies] the choice-of-law rules of the jurisdiction in which" it sits. *Nnadili v. Chevron USA, Inc.,* 435 F. Supp. 2d 93, 97 (D.D.C. 2006) (quoting *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.,* 129 F.3d 143, 148 (D.C. Cir. 1997)). Under the choice of law rules in the District of Columbia, insurance contracts are governed by the substantive law of the state in which the policy is delivered. *Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d 639, 642 (D.C. Cir. 1996). Here, the policy was issued to Second Nature with a stated mailing address in North Carolina. Therefore, North Carolina substantive law applies to this case.[2] *Thorpe v. Banner Life Ins. Co.*, 632 F. Supp. 2d 8, 12 (D.D.C. 2009).

**North Carolina Law Governing the Interpretation of Insurance Policies.** "[T]he most fundamental rule [in interpreting insurance policies] is that the language of the policy controls," and "all parts of an insurance policy are to be construed harmoniously so as to give effect to each of the policy's provisions." *Nationwide Mut. Ins. Co. v. Mabe*, 444 S.E.2d 664, 667 (N.C. Ct. App. 1994). "Where an insurance policy's language is clear and unambiguous," courts "enforce the policy as written." *Plum Props., LLC v. N.C. Farm Bureau Mut. Ins. Co., Inc.*, 802 S.E.2d 173, 175 (N.C. Ct. App. 2017).

Terms that are defined in a policy should be given that definition. *Woods v. Nationwide Mut. Ins. Co.*, 246 S.E.2d 773, 777 (N.C. 1978). Undefined words are given their ordinary meaning, consistent with the context in which the term is used. *Accardi v. Hartford Underwriters*

---

[2] As evidenced by the parties' pre-suit correspondence, there is no dispute as to the applicability of North Carolina law. For example, Second Nature's August 30, 2024 letter refers to "governing North Carolina law." Thompson Decl., Ex. 4, at 1.

*Ins. Co.*, 838 S.E.2d 454, 457 (N.C. 2020). Terms should also be interpreted in harmony with other portions of the policy, if possible, and to give effect and purpose to each word or term. *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 172 S.E.2d 518, 522 (N.C. 1970).

The insured bears the burden to prove coverage. *See N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 711 S.E.2d 114, 116–17 (N.C. 2011). "If the insurer relies on a clause of the policy which excludes coverage, the burden is on the insurer to establish the exclusion." *Nationwide Mut. Ins. Co. v. McAbee*, 150 S.E.2d 496, 497 (N.C. 1966).

Where the relevant facts are not disputed, construing the policy is an issue of law. *See Parker v. State Cap. Life Ins. Co.*, 130 S.E.2d 36, 38 (N.C. 1963).

## ARGUMENT

There is no coverage available here because the *Best* Action does not allege any negligent act, error or omission by Second Nature, and it therefore does not trigger the Policy's insuring agreement. Additionally, the *Best* Action alleges wrongdoing that falls within the Policy's exclusion for any claim based upon or arising out of any actual or alleged false, deceptive, or unfair trade practices or deceptive or misleading advertising. Each of these grounds provides a separate and independent basis on which to conclude that Accelerant is entitled to summary judgment in its favor on all claims and counterclaims asserted here.

### A. In the absence of any allegation of a "negligent act, error or omission," the *Best* Action does not trigger coverage.

Under the Policy's sole insuring agreement, coverage is limited to a **claim** against an **insured** "alleging a negligent act, error or omission" in the performance of **professional services**. *See* SOF ¶ 2. Here, the Best Action alleges only intentional wrongdoing by Second Nature. There are no allegations in the *Best* Action of any negligent conduct by Second Nature, thus the insuring agreement is not triggered.

In order to determine if the allegations of a complaint give rise to the duty to defend, North Carolina courts follow the "comparison test." *See St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235, 239 (4th Cir. 1990). Whether coverage is triggered is determined by:

> the facts as alleged in the pleading of the lawsuit against the insured; if the pleadings allege any facts which disclose a possibility that the insured's potential liability is covered under the policy, then the insurer has a duty to defend. If, however, the facts alleged in the pleadings are not even arguably covered by the policy, then no duty to defend exists.

*Wm. C. Vick Const. Co. v. Penn. Nat. Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 578 (E.D.N.C. 1999) (citations omitted); *Vigilant*, 919 F.2d at 239 (under North Carolina's "'comparison test' . . . the pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded"); *see also Am. Reliable Ins. Co. v. Five Bros. Mortg. Co. & Securing, Inc.*, 306 F. Supp. 3d 820, 824 (W.D.N.C. 2018) ("[i]n North Carolina, the pleadings control the duty to defend") (citing *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986) (the duty to defend requires that "pleadings state facts demonstrating that the alleged injury is covered by the policy")).

The United States Court of Appeals for the Fourth Circuit, applying North Carolina law, has confirmed that the phrase "negligent act, error or omission" is unambiguous and that "negligent" modifies every word in the series. *See Emp'rs Reinsurance Corp. v. Teague*, 972 F.2d 339 (4th Cir. 1992); *see also U.S. Fid. & Guar. Co. v. Fireman's Fund Ins. Co.*, 896 F.2d 200, 203 (6th Cir. 1990) (the only reasonable construction of "negligent act, error, or omission" is that the policy covers only negligent behavior); *Golf Course Superintendents Ass'n v. Underwriters at Lloyd's, London*, 761 F. Supp. 1485, 1490 (D. Kan. 1991) (in the phrase "negligent act, error, omission misstatement or misleading statement," "negligent" modifies every relevant item in the series).

Here, all of the wrongdoing alleged in the FAC is knowing and intentional misconduct. The word "negligent" (or any derivation of it) does not appear in the pleadings. *See* Thompson Decl., Ex. 2. Rather, the Underlying Plaintiffs' claims for relief in the *Best* Action rest entirely on allegations of a "fraudulent scheme . . . set up by . . . Second Nature" to enable "landlords and property managers to bilk residential tenants . . . out of money." *Id.* ¶ 4. Indeed, all of the factual allegations against Second Nature depict intentional conduct, such as:

> This fraudulent scheme began, as frauds typically do, with the prospect of easy money. The easy money here is pitched by Second Nature as "Ancillary Revenue." Indeed, Second Nature maps out the entire scheme on its website. . . Second Nature then provides guidance to property managers and landlords on how to obtain additional money from tenants apart from the monthly rent. . .

*Id.* ¶¶ 24-25. The FAC also details how Second Nature allegedly "conspire[ed]" with and "aid[ed] and abet[ed]" the other defendants to "charge a mandatory fee in violation of D.C. Code § 42-3502.11a" and otherwise engage in "consumer fraud." *Id.* ¶¶ 57, 63. These allegations of devising a scheme to wring additional money out of tenants and then helping landlords and property managers implement the program simply do not constitute a "negligent act, error or omission."

North Carolina law supports this reading of the allegations in the FAC. The Supreme Court of North Carolina has recognized that "actionable fraud by its very nature involves intentional wrongdoing." *See Newton v. Standard Fire Ins. Co.*, 229 S.E.2d 297, 302 (N.C. 1976) (citing *Davis v. Highway Commission*, 156 S.E.2d 685, 688 (N.C. 1967) ("[f]raud is malfeasance, a positive act resulting from a willful intent to deceive")). Moreover, "[p]hrases such as 'mislead and conceal,' 'scheme or device' and 'intentionally and willfully' are the paradigm of intentional conduct and the antithesis of negligent actions." *See Conn. Indem. Co. v. DER Travel Service, Inc.*, 328 F.3d 347, 351 (7th Cir. 2003); *see also Aaron v. Sec. & Exchange Comm'n*, 446 U.S. 680, 696 ("the terms 'device,' 'scheme,' and artifice all connote knowing or intentional practices").

The FAC alleges only intentional and knowing conduct by Second Nature and does not even hint at negligence. Thus, based on North Carolina law, coverage is not triggered, and no duty to defend exists.

**B. Exclusion B.1 precludes coverage for the entirety of the *Best* Action.**

Exclusion B.1 provides that there is no coverage available under the Policy for any **claim**:

> [b]ased upon or arising out of any actual or alleged . . . false, deceptive or unfair trade practices, . . . or deceptive or misleading advertising.

*See* SOF ¶ 4. The language of the exclusion is clear and unambiguous and therefore must be enforced as written. *See Fed. Ins. Co. v. So. Lithoplate, Inc.*, 7 F. Supp. 3d 579, 584 (E.D.N.C. 2014); *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield LLC*, 692 S.E.2d 605, 610 (N.C. 2010); *see also Westfield Ins. Co. v. Nautilus Ins. Co.*, 154 F. Supp. 3d 259, 265 (M.D.N.C. 2016) ("Although the duty to defend is broad, it is not limitless; rather, its scope is measured by the insurance contract between the parties.").

The FAC alleges a course of conduct by Second Nature that plainly constitutes "false, deceptive or unfair trade practices" and/or "deceptive or misleading advertising" and thus falls within the exclusion. The FAC alleges that Second Nature devised a "fraudulent scheme" to charge extra money to tenants, creating additional revenue for landlords and property managers while providing no actual benefits to the tenants. Thompson Decl., Ex. 2 ¶¶ 1-2. The FAC alleges that this scheme included misrepresenting the program as a "resident benefits package" despite the fact that it provided no value to residents. *Id.* ¶¶ 1-3. The alleged scheme also included misrepresenting the "resident benefits package" as including renter's insurance, where in reality it included a "property manager and landlord protection policy." *Id.* ¶¶ 7, 34. The FAC also includes a flyer that is alleged to be false or misleading advertising in that it misrepresented the nature of the "resident benefits program" by omitting discussion of the fee while portraying it as providing benefits to the

resident. *Id.* ¶¶ 38-39. The Underlying Plaintiffs allege that the flyer contained numerous misrepresentations about other aspects of the "resident benefits package." *Id.* ¶ 39. Based on these allegations of "false, deceptive or unfair trade practices" and/or "deceptive or misleading advertising," the *Best* Action falls squarely within the purview of Exclusion B.1.

One federal district court, applying Georgia law, has held that this same exclusionary language precluded coverage for a similar claim. *See Elite Integrated Med., LCC v. Hiscox, Inc.*, 553 F. Supp. 3d 1307, 1321 (N.D. Ga. 2021), *aff'd sub nom. Elite Integrated Med., LLC v. Hiscox, Inc.*, No. 21-13151, 2022 WL 1740098 (11th Cir. May 31, 2022). In *Elite Integrated Medicine,* the court considered a claim against an integrated medical regenerative medicine practice alleging that it made false and/or misleading representations regarding its therapies and products in advertising, social media, web sites and email. *Id.* The court held that the exclusion for "false, deceptive or unfair trade practices" or "deceptive or misleading advertising" "unambiguously" precluded coverage. *Id.* Exclusion B.1 likewise applies here, where Second Nature is alleged to have made false and misleading representations regarding the resident benefits package to residents.

Additionally, although the first cause of action is characterized by the Underlying Plaintiffs as a claim for a violation of D.C. Code § 42-3502.11a, which prohibits a housing provider from imposing certain mandatory fees on a tenant, it explicitly rests on allegations of conduct that constitute "false, deceptive or unfair trade practices" and "deceptive or misleading advertising." Thompson Decl., Ex. 2 ¶ 63 (referring in Count 1 to paragraphs 24-32 of the FAC); *id.* ¶¶ 24-32. As noted above, the Underlying Plaintiffs allege that Second Nature developed and implemented a fraudulent scheme that enabled landlords and property managers to bilk residential tenants out of money. *Id.* ¶¶ 24-25, 28. The FAC further alleges that this scheme was effectuated by, among

other things, falsely representing to the tenants the purported benefits of the "resident benefits package," and giving the tenants no choice but to accept the package. *Id.* ¶¶ 28-32. The Underlying Plaintiffs contend that defendants' actions in this regard, including those of Second Nature, while constituting fraud, also amount to the unlawful imposition of a mandatory fee. *Id.* ¶¶ 62-64.

Because Second Nature's purported violation of D.C. Code § 42-3502.11a – directly or as co-conspirator or aider and abettor – is based upon or arises out of conduct that constitutes false, deceptive or unfair trade practices or false or misleading advertising, Exclusion B.1 applies to bar coverage. The same is true as to the allegations supporting the Underlying Plaintiffs' cause of action for unfair trade practices under the DCCPPA. This exclusion therefore bars coverage for the entirety of the claim.

## CONCLUSION

Accelerant is entitled to summary judgment in its favor on both causes of action asserted in its Complaint and on Second Nature's Counterclaim against it because there is no genuine dispute of material fact that no coverage is available for two separate and independent reasons: (1) the *Best* Action does not allege a negligent act, error, or omission, and (2) because Exclusion B.1 precludes coverage. Accordingly, Accelerant owes no duty to defend or indemnify Second Nature in connection with the *Best* Action.

Respectfully submitted, this 15th day of September, 2025.

*/s/ Bonnie J. Thompson*
Marc E. Rindner (D.C. Bar No.461250)
Bonnie J. Thompson (D.C. Bar No. 1028788)
LAVIN RINDNER DUFFIELD LLC
1717 K Street NW
Washington, DC 20006
mrindner@lrd.law
bthompson@lrd.law
(912) 266-8300

*Counsel for Accelerant Specialty Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I have served the counsel listed below with a copy of the foregoing via CM/ECF:

Gregory L. Skidmore
R. Steven DeGeorge
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246

*Counsel for Second Nature Brands Inc. and Second Nature Insurance Services, LLC*

Bradley Strickland
KRAMON & GRAHAM, P.A.
750 E. Pratt Street
Suite 1100
Baltimore, MD 21202

*Counsel for Certain Subscribing Members at Lloyd's London to Policy SUABA3619-2302*

Respectfully submitted, this 15th day of September, 2025.

*/s/ Bonnie J. Thompson*
Marc E. Rindner (D.C. Bar No. 461250)
Bonnie J. Thompson (D.C. Bar No. 1028788)
LAVIN RINDNER DUFFIELD LLC
1717 K Street NW
Washington, DC 20006
mrindner@lrd.law
bthompson@lrd.law
(912) 266-8300

*Counsel for Accelerant Specialty Insurance Company*