**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Case No. 1:24-cv-03558-JMC**

**ACCELERANT SPECIALTY INSURANCE COMPANY,**

**Plaintiff/Counterclaim Defendant,**

**v.**

**SECOND NATURE BRANDS, INC. and SECOND NATURE INSURANCE SERVICES, LLC,**

**Defendants/Counterclaim Plaintiffs,**

**v.**

**CERTAIN SUBSCRIBING MEMBERS AT LLOYD'S LONDON TO POLICY SUABA3619-2302,**

**Counterclaim Defendants.**

**COMBINED STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS/COUNTERCLAIM PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND**
**-and-**
**IN OPPOSITION TO PLAINTIFF'S AND COUNTERCLAIM DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON DUTY TO INDEMNIFY**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

UNDISPUTED MATERIAL FACTS ..... 1

A. Governing Provisions of the Insurers' Policies. ..... 1

B. The *Best* Lawsuit and the Insurers' Denial of their Duty to Defend. ..... 3

ARGUMENT ..... 5

A. Second Nature Is Entitled to Summary Judgment on its Sole Claim for the Insurers' Breach of their Duty to Defend. ..... 5

1. The Governing Rules of Insurance Policy Construction. ..... 5

2. The Duty to Defend is Suitable for Resolution by Summary Judgment. ..... 8

3. The Comparison Test and Duty to Investigate. ..... 9

4. The Insurers' Duty to Defend Is Not Negated by the Fact that the *Best* Complaint Does Not Explicitly Allege Negligence. ..... 11

i. Second Nature could ultimately be found liable on either claim asserted in *Best* based on negligent conduct. ..... 12

ii. The Insurers' failure to define "negligent" further undermines their denial. ..... 14

5. The Insurers' Secondary Arguments do not Negate Their Duty to Defend. ..... 15

a. The Accelerant Policy's Antitrust Exclusion Does Not Relieve Accelerant of its Duty to Defend. ..... 16

b. The *Best* Complaint Alleges "Professional Services" as Defined in the Lloyd's Policy. ..... 16

B. The Court Should Deny the Insurers' Summary Judgment Motions Because Their Duty to Indemnify is Not Ripe. ..... 20

CONCLUSION ..... 22

CERTIFICATE OF SERVICE ..... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*120 Greenwich Dev. Associates, L.L.C. v. Admiral Indem. Co.*,
2013 WL 12331487 (S.D.N.Y. Sep. 25, 2013)........................................................ 7, 8

*Accelerant Specialty Ins. Co. v. Big Apple Designers, Inc.*,
2025 WL 2218159 (E.D.N.Y. Aug. 5, 2025)............................................................... 6

*Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*,
60 N.Y.2d 390, 457 N.E.2d 761 (1983)..................................................................... 7

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
57 F.4th 85 (2d Cir. 2023) ....................................................................................... 21

*Allstate Ins. Co. v. Zuk*,
78 N.Y.2d 41, 574 N.E.2d 1035 (1991)..................................................................... 8

*American Auto Ins. Co. v. Security Income Planners & Co., LLC*,
847 F.Supp.2d 454 (E.D.N.Y. 2012) ....................................................................... 21

*American Home Products Corp. v. Liberty Mut. Ins. Co.*,
565 F.Supp. 1485 (S.D.N.Y. 1983) ........................................................................... 6

*Ashbourne v. Hansberry*,
245 F.Supp.3d 99 (D.D.C. 2017)............................................................................... 4

*Atain Specialty Ins. Co. v. Luxury Auctions Mktg., Inc.*,
2017 WL 6503647 (W.D.N.C. Dec. 19, 2017)........................................................... 7

*Avante Contracting Corp. v. Northfield Ins. Co.*,
2025 WL 2781284 (S.D.N.Y. Sep. 30, 2025)........................................................... 20

*BarclaysAmerican/Leasing, Inc. v. North Carolina Ins. Guar. Assoc.*,
99 N.C.App. 290, 392 S.E.2d 772 (1990)................................................................. 16

*Beck v. Test Masters Educ. Servs., Inc.*,
994 F.Supp.2d 90 (D.D.C. 2013).............................................................................. 13

*Ceco Corp. v. Coleman*,
441 A.2d 940 (D.C. 1982) ....................................................................................... 15

*Certain Underwriters at Lloyd's, London v. Stock Building Supply, LLC*,
556 F.Supp.3d 559 (E.D.N.C. Aug. 24, 2021)...................................................... 7, 8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Clayton v. Branson*,
170 N.C.App. 438, 613 S.E.2d 259 (2005) ........ 15

*Clevinger v. Advocacy Holdings, Inc.*,
2024 WL 3359508 (D.D.C. July 10, 2024) ........ 14

*Crabtree v. Gen. Star Nat'l Ins. Co.*,
2002 WL 1794830 (W.D.N.C. July 26, 2002) ........ 6

*Craige v. Gov't Employees Ins. Co.*,
503 F.Supp.3d 365 (M.D.N.C. 2020) ........ 8, 21

*District of Columbia v. Facebook, Inc.*,
340 A.3d 1 (D.C. 2025) ........ 12

*Earth Island Instit. v. Coca-Cola Co.*,
321 A.3d 654 (D.C. 2024) ........ 12

*Eloise Holdings, LLC v. Mt. Hawley Ins. Co.*,
2025 WL 764374 (S.D.N.Y. Mar. 11, 2025) ........ 7

*Enck v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
685 F.Supp.3d 356 (W.D.N.C. 2023) ........ 6

*Essex Ins. Co. v. Café Dupont, LLC*,
674 F.Supp.2d 166 (D.D.C. Dec. 16, 2009) ........ 9

*Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*,
754 F.3d 136 (2d Cir. 2014) ........ 9, 19, 20

*Federal Ins. Co. v. Kozlowski*,
18 A.D.3d 33, 792 N.Y.S.2d 397 (1st Dept. 2005) ........ 8

*Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*,
16 N.Y.3d 257, 945 N.E.2d 1013 (2011) ........ 11

*Fitzpatrick v. American Honda Motor Co.*,
78 N.Y.2d 61, 575 N.E.2d 90 (1991) ........ 10, 11, 20

*Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*,
944 A.2d 1055 (D.C. 2008) ........ 13

*Frankeny v. District Hosp. Partners, LP*,
225 A.3d 999 (D.C. 2020) ........ 12, 13

*Hanks v. Voya Ret. Ins. and Annuity Co.*,
492 F.Supp.3d 232 (S.D.N.Y. 2020) ........ 7, 14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Hardnett v. Select Portfolio Servicing, Inc.*,
__ F.Supp.3d __, 2025 WL 2615019 (D.D.C. Sep. 10, 2025) ... 12

*Hendrick Automotive Grp. v. Hartford Fire Ins*. Co.,
2018 WL 1718259 (W.D.N.C. Apr. 9, 2018) ... 10

*High Point Design, LLC v. LM Ins. Corp.*,
911 F.3d 89 (2d Cir. 2018) ... 8, 10, 21

*Hugo Boss Fashions, Inc. v. Federal Ins. Co.*,
252 F.3d 608 (2d Cir. 2001) ... passim

*In re 22 Fiske Place, LLC*,
2022 WL 2819093 (S.D.N.Y. July 18, 2022) ... 15

*Lake Carriers' Ass'n v. MacMullan*,
406 U.S. 498 (1972) ... 21

*Lambe Realty Invest., Inc. v. Allstate Ins. Co.*,
137 N.C.App. 1, 527 S.E.2d 328 (2000) ... 16

*Lear Corp. v. Johnson Elec. Holdings, Ltd.*,
353 F.3d 580 (7th Cir. 2003) ... 22

*Lee v. Canada Goose US, Inc.*,
2021 WL 2665955 (S.D.N.Y. June 29, 2021) ... 13

*Lee v. Verstraete*,
65 Misc.3d 531, 109 N.Y.S.3d 594, (2019) ... 15

*LM Ins. Corp. v. James River Ins. Co.*,
2025 WL 2732914 (S.D.N.Y. Sep. 25, 2025) ... 7, 9

*Lozada v. Phoenix Ins. Co.*,
237 F.Supp.2d 664 (M.D.N.C. 2003) ... 9

*Marcus & Cinelli, LLP v. Aspen Am. Ins. Co.*,
__ F.4th __, 2025 WL 2984241(2d Cir. Oct. 23, 2025) ... 7, 12, 19

*McMullen v. Synchrony Bank*,
2020 WL 1975425 (D.D.C. Apr. 24, 2020) ... 13

*Medmarc Cas. Ins. Co. v. Fellows Labriola LLP*,
2025 WL 2886733 (11th Cir. Oct. 10, 2025) ... 21

*Middlesex Ins. Co. v. Doyle Dickerson Terrazzo, Inc.*,
2021 WL 3667124 (W.D.N.C. Aug. 18, 2021) ... 10, 21

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC*,
451 Fed.Appx. 745 (10th Cir. 2011)........................................................................ 21

*Nat'l Cas. Ins. Co. v. Solomon*,
502 F.Supp.3d 401 (D.D.C. 2020)........................................................................... 8

*New York Cent. Mut. Fire Ins. Co. v. Ward*,
833 N.Y.S.2d 182, 38 A.D.3d 898 (2d Dep't 2007)................................................. 5

*New York Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 632 F.Supp.3d
303 (S.D.N.Y 2022)............................................................................................ 7, 8, 20

*North State Deli, LLC v. Cincinnati Ins. Co.*,
386 N.C. 733, 908 S.E.2d 802 (2024)................................................................... 6, 7

*Northwell Health, Inc. v. Lexington Ins. Co.*,
550 F.Supp.3d 108 (S.D.N.Y. 2021) ....................................................................... 6

*Owners Ins. Co. v. MM Shivah LLC*,
2022 WL 668382 (E.D.N.C. Mar. 4, 2022).............................................................. 6

*Parr v. Ebrahimian*,
774 F.Supp.2d 234 (D.D.C. 2011)...................................................................... 12, 14

*Pearson v. District of Columbia Rental Housing Comm'n*,
270 A.3d 907 (D.C. 2022) ...................................................................................... 13

*Pen-Am. Ins. Co. v. Tarango, Trucking, L.L.C.*,
30 F.4th 440 (5th Cir. 2022) ................................................................................... 21

*Rodriguez v. Laboratory Corp. of Am. Holdings*,
13 F.Supp.3d 121 (D.D.C. 2014)............................................................................ 14

*Roldan v. Lewis*,
735 F.Supp.3d 163 (E.D.N.Y. 2024) ................................................................ passim

*Rong Yao Zhou v. Jennifer Mall Rest., Inc.*,
534 A.2d 1268 (D.C. 1987) .................................................................................... 15

*Scottsdale Ins. Co. v. Acceptance Indem. Ins. Co.*,
2025 WL 2627906 (S.D.N.Y Sep. 12, 2025)..................................................... passim

*Security Title Guarantee Corp. of Baltimore v. 915 Decatur St. NW, LLC*,
427 F.Supp.3d 1 (D.D.C. 2019).............................................................................. 21

*Shaw v. Goodyear Tire & Rubber Co.*,
225 N.C.App. 90, 737 S.E.2d 168 (2013)............................................................... 15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Spandex House, Inc. v. Hartford Fire Ins. Co.*,
407 F.Supp.3d 242 (S.D.N.Y. 2019) .......... 10, 11

*State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*,
318 N.C. 534, 350 S.E.2d 66 (1986) .......... 7, 16

*Travelers Indem. Co. of Am. v. Southwest Marine & Gen. Ins. Co.*,
2025 WL 968551 (S.D.N.Y. Mar. 31, 2025) .......... 21

*Universal Underwriters Ins. Co. v. Lallier*,
334 F.Supp.3d 723 (E.D.N.C. 2018) .......... 7, 17

*Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*,
276 N.C. 348, 172 S.E.2d 518 (1970) .......... 7, 14, 16

*Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*,
315 N.C. 688, 340 S.E.2d 374 (1986) .......... 8, 9, 10, 14, 16

*WFG Nat'l Title Ins. Co. v. Northway Homes LLC*,
2025 WL 2417736 (W.D.N.C. June 30, 2025) .......... 5, 6

**Statutes**

28 U.S.C. § 2201 .......... 21

D.C. Code § 28-3901(c) .......... 12

D.C. Code § 28-3904 .......... 17

D.C. Code § 28-3904(e) .......... 13

D.C. Code § 28-3904(f) .......... 13

D.C. Code § 28-3904(v) .......... 20

D.C. Code § 42-3502.11 .......... 13, 17

D.C. Code § 42-3502.11a .......... 13, 17

D.C. Code § 42-3502.15 .......... 13, 17

D.C. Code § 42-3509.1 .......... 13

**Other Authorities**

3 *American Law of Torts* § 10.4 (2019 update) .......... 15

*Black's Law Dictionary*, negligence (9th ed. 2009) .......... 14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Defendants/Counterclaim Plaintiffs Second Nature Brands, Inc. ("Second Nature Brands") and Second Nature Insurance Services, LLC ("Second Nature Insurance") (together, "Second Nature"), in accordance with the Court's October 23, 2025 Order and Local Rule 7(h), respectfully submit this Combined Statement of Points and Authorities in Support of Second Nature's Motion for Summary Judgment on Duty to Defend, and in Opposition to the Motions for Summary Judgment of Plaintiff/Counterclaim Defendant Accelerant Specialty Insurance Company ("Accelerant") and Counterclaim Defendants Certain Subscribing Members at Lloyd's London to Policy SUABA3619-2302 ("Lloyd's"). (ECF 24, ECF 25.) (Accelerant and Lloyd's are referred to collectively as the "Insurers.")

For reasons detailed below, summary judgment should be entered in favor of Second Nature on its Counterclaim which states a single claim that the Insurers breached their contractual duty to defend Second Nature in a certain underlying lawsuit.[1]

Further, the Court should deny the Insurers' motions for summary judgment on their duty to indemnify Second Nature in the underlying lawsuit because the duty to indemnify is not ripe.

## UNDISPUTED MATERIAL FACTS

### A. Governing Provisions of the Insurers' Policies.

Second Nature Brands and Second Nature Insurance purchased professional liability insurance policies from Accelerant and Lloyd's, respectively, which policies were in effect at all relevant times. Second Nature Brands purchased its insurance coverage from Accelerant under

---

[1] The underlying lawsuit is *Best, et al. v. Second Nature Brands, Inc., et al.*, United States District Court, District of Columbia, Case No. 1:24-cv-01799-JMC ("*Best*"). The Honorable District Court Judge Jia M. Cobb presides over both *Best* and this coverage action. Second Nature's motion to dismiss in *Best* has been fully briefed and is ripe for the Court's ruling. If Second Nature's motion to dismiss is granted in full, indemnity coverage under the Insurers' Policies would be mooted herein, leaving only the issue of the Insurers' obligation to reimburse Second Nature's defense costs incurred in *Best*.

policy number S0004PL00191000 (the "Accelerant Policy"). (The Accelerant Policy is at ECF 1-1.) Second Nature Insurance purchased its insurance from Lloyd's under policy number SUABA3619-2302 (the "Lloyd's Policy"). (The Lloyd's Policy is at ECF 13-1.)[2] (The Accelerant Policy and Lloyd's Policy are sometimes referenced together as the "Insurers' Policies" or the "Policies.") Second Nature Insurance is a licensed insurance producer in the District of Columbia. (Declaration of Kimberly Godsey at ¶ 4.)[3] The Insurers' Policies are valid and binding contracts that govern the Parties' claims and defenses herein. (ECF 24 at 3; ECF 25-2 at 7.)

The Accelerant Policy and Lloyd's Policy provide the same broad coverage to Second Nature:

> **Accelerant Policy:** "**We** will pay . . . **damages** and **claim expenses** . . . for covered **claims** against **you** alleging a negligent act, error, or omission in **your professional services** . . ." (ECF 1-1 at 5, § II.)
>
> **Lloyd's Policy:** "To pay on behalf of the Insured, Damages and Claims Expenses . . . because of any Claim . . . arising out of any . . . negligent act, error or omission by an Insured in the rendering of or failure to render Professional Services . . ." (ECF 13-1 at 6, § 1.1.)
>
> The **Accelerant Policy** defines "claim" as:
>
> "any written assertion of liability or any written demand for financial compensation or non-monetary relief." (ECF 1-1 at 20, § X.E.)
>
> The **Lloyd's Policy** defines "claim" as:
>
> "a demand received by any Insured for money or services alleging

[2] The named insured on the Lloyd's Policy is Purple Tulip Insurance Services Company LLC, which was the previous name of Second Nature Insurance. Lloyd's acknowledges that Second Nature Insurance is an insured under the Lloyd's Policy. (ECF 25-2 at 6.)
[3] The Declaration of Kimberly Godsey ("Godsey Dec.") is being filed contemporaneously herewith.

> an act, error or omission in the provision of Professional Services, including the service of suit . . ." (ECF 13-1 at 10, § 5.1.)

Both Policies impose on the Insurers the "duty to defend" against any covered "claim" even if the claim is "groundless, false or fraudulent." (ECF 1-1 at 7, § IV.A.; ECF 13-1 at 7, § 1.3.1.) The duty to defend includes the assumption of the defense of Second Nature and payment of "claim expenses" which include all "fees, costs and expenses." (ECF 1-1 at 20, § X.F.; ECF 13-1 at 10, § 5.2.)

The **Accelerant Policy** contains a coverage exclusion for "Antitrust and deceptive trade practices." (ECF 1-1 at 9, § VI.B.1.) This exclusion pertains to violations of state and federal antitrust statutes and deceptive trade practices. (*Id*.)

The **Lloyd's Policy** broadly defines "Professional Services" as any:

> "services provided for others in the Insured's business as an insurance agent, insurance broker, insurance consultant, insurance instructor, insurance premium financer, insurance risk manager consultant or advisor, insurance benefits consultant, program administrator, general agent or board member of a non-profit insurance professional association or in the provision of premium finance, notary public, claims handling or loss control services, regardless if performed via an electronic method." (ECF 13-1 at 11, § 5.8.)[4]

**B. <u>The *Best* Lawsuit and the Insurers' Denial of their Duty to Defend.</u>**

*Best* was commenced against Second Nature and other defendants April 29, 2024. On September 13, 2024, the *Best* plaintiffs filed a First Amended Complaint, which was substantially the same as the original Complaint. The First Amended Complaint, the operative pleading in *Best*,

[4] Lloyd's denies coverage on the purported ground that *Best* is unrelated to Second Nature Insurance's provision of "Professional Services" as broadly defined in the Lloyd's Policy. (ECF 25-2 at 18-20.) Accelerant does not dispute the provisions of "professional services" as defined in the Accelerant Policy.

is at ECF 1-4. The First Amended Complaint is hereinafter referred to as the "*Best* Complaint."[5]

Count I in the *Best* Complaint alleges that Second Nature charged plaintiffs a fee for the "Resident Benefits Package," which included "Renter's Insurance," that allegedly violated § 42-3502.11a. of the D.C. Rental Housing Act because the fee was not pre-approved. (ECF 1-4 at ¶¶ 60-65.) The predicate acts underlying Second Nature's alleged violation of § 42-3502.11a include the failure to obtain pre-approval of the fee, and related publication of marketing materials and administration of the Renter's Insurance and other components of the Resident Benefits Package. (ECF 1-4 at ¶¶ 62, 63.) (To reiterate, Second Nature categorically denies all allegations of wrongdoing and has moved to dismiss *Best* entirely. *See* footnote 1 above.)

Count II in the *Best* Complaint alleges that Second Nature infringed the D.C. Consumer Protection Procedures Act ("CPPA"). (ECF 1-4 at ¶¶ 66-79.) This claim is based predominantly on fourteen alleged misrepresentations and four alleged failures to disclose material information concerning the Renter's Insurance and other components of the Resident Benefits Package. (ECF 1-4 at ¶ 68.)

Second Nature provided timely notice and tendered the defense of *Best* to Accelerant and Lloyd's. (ECF 13 at 11, ¶ 11.) By letters dated July 8, 2024 and July 25, 2024, respectively, Accelerant and Lloyd's declined the tender and denied their duty to defend Second Nature. (ECF 13 at 11, ¶¶ 12, 13; ECF 24 at 6; ECF 25-2 at 12.) Because the Insurers denied their duty to defend, Second Nature was required to engage and pay defense counsel. (ECF 13 at 11, ¶ 14.)

---

[5] Second Nature disputes the characterizations of the *Best* Complaint contained in the Insurers' Statements of Facts herein (ECF 24-1; ECF 25-1) because the contents of the *Best* Complaint speak for themselves. Second Nature categorically denies all allegations of wrongdoing in *Best*, both intentional and negligent, for the reasons stated in Second Nature's motion to dismiss and supporting brief filed in *Best* on October 4, 2024. *See* Case No. 1:24-cv-01799-JMC at ECF 27 and ECF 27-1. The Court may take judicial notice of the contents of public filings in *Best*. *E.g.*, *Ashbourne v. Hansberry*, 245 F.Supp.3d 99, 103 (D.D.C. 2017).

On August 30, 2024, Second Nature's undersigned counsel sent letters to the Insurers' counsel asking that the Insurers reconsider their denials of their duty to defend. (Letters at ECF 13-2 and ECF 13-3; ECF 13 at 11, ¶ 15; ECF 24 at 6-7.) The Insurers maintained their refusals to defend Second Nature, requiring Second Nature to continue defending *Best* at its own expense. (ECF 13 at 12, ¶ 17; ECF 24 at 7.) This action ensued.

## ARGUMENT

### A. Second Nature Is Entitled to Summary Judgment on its Sole Claim for the Insurers' Breach of their Duty to Defend.

Second Nature asserts a single claim against the Insurers based on their breach of their contractual duty to defend Second Nature in *Best*. (ECF 13 at 10-13.) The principal basis of the Insurers' denial of their duty to defend (and their duty to indemnify) is that the *Best* Complaint does not explicitly allege that Second Nature was "negligent." (ECF 24 at 11; ECF 25-2 at 16.) Although true, this does not relieve the Insurers of their duty to defend under governing law of North Carolina and New York.[6] The secondary grounds on which the Insurers deny their duty to defend are equally unavailing.

#### 1. The Governing Rules of Insurance Policy Construction.

The Insurers' duty to defend Second Nature derives in part from the "special" insured-centric rules of insurance policy construction. *WFG Nat'l Title Ins. Co. v. Northway Homes LLC*, 2025 WL 2417736 at *3 (W.D.N.C. June 30, 2025); *New York Cent. Mut. Fire Ins. Co. v. Ward*, 833 N.Y.S.2d 182, 183, 38 A.D.3d 898, 899 (2d Dep't 2007) (citations omitted). Construction is subject to special pro-insured rules because insurance policies are essentially contracts of adhesion

[6] Accelerant and Lloyd's acknowledge that North Carolina law governs the Accelerant Policy, and New York law governs the Lloyd's Policy. (ECF 24 at 8; ECF 25-2 at 10.) The argument herein cites authorities from both states, although there is no material difference regarding the issues before the Court.

written by insurance companies. *E.g., Crabtree v. Gen. Star Nat'l Ins. Co.,* 2002 WL 1794830 at *3 (W.D.N.C. July 26, 2002); *American Home Products Corp. v. Liberty Mut. Ins. Co.,* 565 F.Supp. 1485, 1492 (S.D.N.Y. 1983). "When an insurance company, in drafting its policy of insurance, uses a 'slippery' word" to designate coverage, "it is not the function of the court to sprinkle sand upon the ice by strict construction of the term. . . If, in the application of this principle of construction, the limits of coverage slide across the slippery area" and "coverage expands beyond what the company says it contemplated, then the fault lies in its own selection of the words by which it chose to be bound." *Owners Ins. Co. v. MM Shivah LLC*, 2022 WL 668382 at *3 (E.D.N.C. Mar. 4, 2022) (citation omitted); *North State Deli, LLC v. Cincinnati Ins. Co.,* 386 N.C. 733, 741, 908 S.E.2d 802, 809 (2024) (citation omitted). *See also American Home Products,* 565 F.Supp. at 1492 (insurance policies receive "special and emphatic" application of the rule that uncertainties must be resolved against the drafter).

Special rules of insurance policy construction that confirm the Insurers' duty to defend here include the following:

- "[W]herever possible, the policy will be interpreted in a manner which gives, but never takes away coverage." *WFG Nat'l*, 2025 WL 2417736 at *3 (citation omitted).

- Insurance policy "provisions granting coverage must be read expansively, and provisions excluding coverage must be read narrowly." *North State Deli,* 386 N.C. at 741, 908 S.E.2d at 809 (citation omitted). *Accord, Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F.Supp.3d 108, 115-16 (S.D.N.Y. 2021).

- Any "uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder." *Enck v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 685 F.Supp.3d 356, 366 (W.D.N.C. 2023) (citation omitted). *Accord, Accelerant Specialty Ins. Co. v. Big Apple Designers, Inc.*, 2025 WL 2218159 at *3 (E.D.N.Y. Aug. 5, 2025) (citation omitted).

- The insurance policy "should be given that construction which a reasonable person

***in the position of the insured*** would have understood it to mean." *North State Deli*, 386 N.C. at 741, 908 S.E.2d at 809 (citation omitted) (emphasis added). *See also Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co*., 60 N.Y.2d 390, 398, 457 N.E.2d 761, 764 (1983).

- Where an insurance policy does not define a term that is susceptible to more than one reasonable construction, the term will be "given the meaning most favorable to the policyholder." *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). *See also Hanks v. Voya Ret. Ins. and Annuity Co*., 492 F.Supp.3d 232, 243 (S.D.N.Y. 2020).

- "Policy exclusions are given a strict and narrow construction" to "provide the greatest possible protection to the insured." *LM Ins. Corp. v. James River Ins. Co*., 2025 WL 2732914 at *4 (S.D.N.Y. Sep. 25, 2025) (citation omitted); *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.,* 318 N.C. 534, 542-43, 350 S.E.2d 66, 71 (1986).

- Where an insurer relies on a policy exclusion, the insurer bears the burden of proving application of the exclusion "by establishing that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Eloise Holdings, LLC v. Mt. Hawley Ins. Co*., 2025 WL 764374 at *5 (S.D.N.Y. Mar. 11, 2025) (citation and quotation marks omitted). *Accord Atain Specialty Ins. Co. v. Luxury Auctions Mktg., Inc.*, 2017 WL 6503647 at *4 (W.D.N.C. Dec. 19, 2017) (citation omitted).

- Where an insurer has a duty to defend any one claim asserted in a lawsuit against the insured, the insurer must defend all claims. *E.g., 120 Greenwich Dev. Associates, L.L.C. v. Admiral Indem. Co.*, 2013 WL 12331487 at *8-9 (S.D.N.Y. Sep. 25, 2013); *Universal Underwriters Ins. Co. v. Lallier*, 334 F.Supp.3d 723, 734 (E.D.N.C. 2018).

- "An insurer seeking to avoid its duty to defend bears a heavy burden." *Marcus & Cinelli, LLP v. Aspen Am. Ins. Co*., __ F.4th __, 2025 WL 2984241 at *4 (2d Cir. Oct. 23, 2025) (citation and quotation marks omitted).

- Where an insurance policy includes the duty to defend, "any doubt" regarding an insurer's duty to defend must be resolved in favor of the insured. *New York Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am*., 632 F.Supp.3d 303, 307 (S.D.N.Y 2022); *Certain Underwriters at Lloyd's, London v. Stock Building Supply*, *LLC*, 556 F.Supp.3d 559, 565 (E.D.N.C. Aug. 24, 2021) (citation omitted).

- An insurer's duty to defend is triggered unless the underlying complaint against the insured, "liberally construed" in the insured's favor, "establishes as a matter of law that there is ***no possible factual or legal basis*** upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Scottsdale Ins. Co. v. Acceptance Indem. Ins. Co.*, 2025 WL 2627906 at *9 (S.D.N.Y Sep. 12, 2025) (emphasis added), *quoting Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45, 574 N.E.2d 1035, 1037 (1991). *See also Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691 n.2, 340 S.E.2d 374, 377 n.2 (1986) (insurer's duty to defend triggered whenever there is a "mere possibility" that facts proven at trial against the insured could fall within the policy's coverage.)

- The duty to defend is triggered unless the insurer "eliminate[s] the possibility" of coverage and the court "determine[s] *with certainty*" that no claim against the insured can possibly fall within the policy's coverage. *Roldan v. Lewis*, 735 F.Supp.3d 163, 182 (E.D.N.Y. 2024) (citation omitted); *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original).

**2. <u>The Duty to Defend is Suitable for Resolution by Summary Judgment</u>.**

An insurer's duty to defend is "exceedingly broad" and "far more expansive than the duty to indemnify its insured." *High Point Design, LLC v. LM Ins. Corp*., 911 F.3d 89, 94-95 (2d Cir. 2018) (citation omitted) (New York law). "The ultimate validity of the underlying complaint's allegations is irrelevant" because the duty to defend is triggered "regardless of how false or groundless those allegations might be." *High Point*, 911 F.3d at 95; *Federal Ins. Co. v. Kozlowski*, 18 A.D.3d 33, 40-41, 792 N.Y.S.2d 397, 402 (1st Dept. 2005) *Accord*, *Craige v. Gov't Employees Ins. Co*., 503 F.Supp.3d 365, 372 (M.D.N.C. 2020). As noted above, "any doubt" regarding the duty to defend must be resolved in favor of the insured, and where an insurer has a duty to defend any one claim asserted in a lawsuit against the insured, the insurer must defend all claims. *E.g.*, *120 Greenwich*, 2013 WL 12331487 at *8-9; *Universal Underwriters* 334 F.Supp.3d at 734; *New York Marine*, 632 F.Supp.3d at 307; *Stock Bldg. Supply*, 556 F.Supp.3d at 565. An insurer's duty to defend is suitable for resolution by summary judgment. *Nat'l Cas. Ins. Co. v. Solomon*, 502

F.Supp.3d 401, 410 (D.D.C. 2020); *Essex Ins. Co. v. Café Dupont, LLC,* 674 F.Supp.2d 166, 174-75 (D.D.C. Dec. 16, 2009).

### 3. **<u>The Comparison Test and Duty to Investigate</u>.**

The Insurers are correct that the "comparison test" is the first step in evaluating their "exceedingly broad" duty to defend. (ECF 24 at 10-11; ECF 25-2 at 14-16.) Under the test, an insurer's policy is compared with a complaint against the insured, the allegations of which must be "liberally construed" in favor of the insured. *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 141 (2d Cir. 2014) (New York law); *Lozada v. Phoenix Ins. Co.,* 237 F.Supp.2d 664, 670 (M.D.N.C. 2003) (citation omitted).

The duty to defend "may only be disclaimed if the insurer establishes as a matter of law that there is ***no possible factual or legal basis*** upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Scottsdale,* 2025 WL 2627906 at *9 (emphasis added, citation and quotation marks omitted). *See also*, *Waste Mgmt.*, 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2 (insurer's duty to defend triggered whenever there is a "mere possibility" that facts proven at trial against the insured could fall within the policy's coverage.)

In other words, under the comparison test, an insurer must defend its insured unless the insurer "eliminate[s] the possibility" of coverage and the court "determine[s] *with certainty*" that no claim against the insured can possibly fall within the policy's coverage. *Roldan*, 735 F.Supp.3d at 182 (citation omitted); *Hugo Boss*, 252 F.3d at 620 (emphasis in original). As the Southern District of New York put it very recently, "so long as the claims asserted against the insured may rationally be said to fall within policy coverage, *whatever may later prove to be the limits of the insurer's responsibility to pay,* there is no doubt that it is obligated to defend." *James River*, 2025 WL 2732914 at *8 (citation and quotation marks omitted) (emphasis in original).

Although, for the reasons discussed below, the comparison test establishes the Insurers' duty to defend, the test is merely the "starting point" of the evaluation. *Hendrick Automotive Grp. v. Hartford Fire Ins*. Co., 2018 WL 1718259 at *5 (W.D.N.C. Apr. 9, 2018) (citation omitted). An insurer must "look beyond the four corners of the complaint." *High Point*, 911 F3d at 95. "[T]he duty to defend is not dismissed because the facts alleged in [an underlying] complaint appear to be outside coverage", if the insurer "could reasonably ascertain facts that, if proven, would be covered by its policy." *Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377-78. After all, "the duty to defend derives, in the first instance, not from the complaint drafted by a third party, but rather from the insurer's own contract with the insured." *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 68, 575 N.E.2d 90, 93 (1991) (citation omitted). "[A]n insured's right to a defense should not depend solely on the allegations a third party chooses to put in the complaint" because such "wooden application" of the comparison test would "afford the insurer an undeserved windfall at the expense of its insured." *Fitzpatrick*, 78 N.Y.2d at 66, 68-69, 575 N.E.2d at 92, 94. Putting "form over substance" in this way "denies an insured party the benefit of the 'litigation insurance' for which it has paid." *Fitzpatrick*, 78 N.Y.2d at 70, 575 N.E.2d at 95.

Therefore, if an insurer believes the comparison test does not trigger its duty to defend, it must investigate beyond the underlying claimant's allegations. *Hendrick* at *5 (citation omitted). Particularly in light of modern notice pleading, insurers have a "duty to investigate and evaluate facts expressed or implied in the [underlying] complaint as well as facts learned from the insured and from other sources." *Middlesex Ins. Co. v. Doyle Dickerson Terrazzo, Inc.*, 2021 WL 3667124 at *2 (W.D.N.C. Aug. 18, 2021) *quoting Waste Mgmt.*, 315 N.C. 691-92, 340 S.E.2d at 374. This principle of insurance law "is referred to as the 'entire action' rule." *Spandex House, Inc. v.*

*Hartford Fire Ins. Co.*, 407 F.Supp.3d 242, 249 (S.D.N.Y. 2019), *quoting Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co*., 16 N.Y.3d 257, 264-65, 945 N.E.2d 1013, 1018 (2011).

### 4. **The Insurers' Duty to Defend Is Not Negated by the Fact that the *Best* Complaint Does Not Explicitly Allege Negligence.**

Principally, Insurers disavow their duty to defend because their Policies cover any "negligent act, error or omission" and the *Best* Complaint does not explicitly allege that Second Nature was "negligent." (ECF 1-1 at 5, § 2; ECF 13-1 at 6, § 1.1; ECF 24 at 11; ECF 25-2 at 16.) Instead, the Insurers point out, the *Best* Complaint alleges statutory violations, misrepresentations and intentional wrongdoing. (ECF 24 at 11; ECF 25-2 at 16.) Although true, this does not negate the Insurers' duty to defend. Not even close.

As is all too common, the *Best* Complaint is laden with hyperbolic allegations of intentional wrongdoing, presumably to justify demands for treble damages, punitive damages and attorneys' fees. (ECF 1-4.) However, Second Nature's right to a defense does not depend "on the allegations [the *Best* plaintiffs] cho[se] to put in the complaint" because such "wooden application" of the comparison test would "afford the [Insurers] an undeserved windfall" and deny Second Nature "the benefit of the 'litigation insurance' for which it has paid." *Fitzpatrick*, 78 N.Y.2d at 66, 68-70, 575 N.E.2d at 92, 94-95.

The question for the Court is whether either claim asserted in the *Best* Complaint, construed in favor of Second Nature, could possibly result in liability based on a finding of negligent/unintentional conduct. To avoid their duty to defend, the Insurers must establish "that there is no possible factual or legal basis" on which Second Nature "might eventually" be found liable in *Best* based on negligent conduct, thus allowing the Court to "determine with *certainty*" that such liability is impossible. *Roldan*, 735 F.Supp.3d at 182 (citation omitted); *Hugo Boss*, 252 F.3d at 620 (emphasis in original). The Insurers have not, and cannot, carry this "heavy burden."

*Marcus & Cinelli*, __ F.4th at __, 2025 WL 2984241 at *4.

**i. Second Nature could ultimately be found liable on either claim asserted in *Best* based on negligent conduct.**

Second Nature could be found liable on either claim asserted in the *Best* Complaint on the basis of negligent/unintentional conduct, particularly the CPPA claim on which the *Best* plaintiffs need to show merely a negligent misrepresentation.

The *Best* plaintiffs allege violations of the CPPA, a statute that establishes consumers' "right to truthful information about consumer goods and services." *Frankeny v. District Hosp. Partners, LP*, 225 A.3d 999, 1004 (D.C. 2020), *quoting* D.C. Code § 28-3901(c). The *Best* Complaint alleges that Second Nature violated the CPPA in several ways, including fourteen alleged "misrepresentations" and four alleged "failures to disclose" under D.C. Code §§ 28-3904(e) and 28-3904(f). (ECF 1-4 at ¶ 68.)

The CPPA is "construed and applied liberally" to effect its remedial purpose. *Frankeny*, 225 A.3d at 1004. The D.C. Court of Appeals confirmed very recently, "in light of the plain language and legislative intent of the CPPA, a consumer need not allege an intentional misrepresentation" to prevail on a CPPA claim. *District of Columbia v. Facebook, Inc.*, 340 A.3d 1, 9 (D.C. 2025). This Court noted even more recently that the D.C. Court of Appeals "has rejected prior attempts to require more burdensome showings under the text of the CPPA." *Hardnett v. Select Portfolio Servicing, Inc.*, __ F.Supp.3d __, 2025 WL 2615019 at *6 (D.D.C. Sep. 10, 2025) (citation omitted). *See also Earth Island Instit. v. Coca-Cola Co.*, 321 A.3d 654, 664 (D.C. 2024) (CPPA's "prohibition extends beyond literal falsehoods and includes any omissions, 'innuendo[s],' or 'ambiguity[ies]' that have a tendency to mislead reasonable consumers.") (citation omitted). Critically here, a CPPA claim may rest on a "negligent misrepresentation." *Parr v. Ebrahimian*, 774 F.Supp.2d 234, 241-42 (D.D.C. 2011) (plaintiff, like the *Best* plaintiffs,

alleged violations of D.C. Code §§ 28-3904(e) and 28-3904 (f).)

Therefore, to ultimately prevail on the CPPA claim, the *Best* plaintiffs need merely show that "a misrepresentation was made" or there was a "failure to disclose a material fact" regardless of whether Second Nature acted intentionally or negligently. *Lee v. Canada Goose US, Inc*., 2021 WL 2665955 at *5 (S.D.N.Y. June 29, 2021), *quoting Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp*., 944 A.2d 1055, 1073 (D.C. 2008); *Beck v. Test Masters Educ. Servs., Inc*., 994 F.Supp.2d 90, 96 (D.D.C. 2013). *See also McMullen v. Synchrony Bank*, 2020 WL 1975425 at *2 (D.D.C. Apr. 24, 2020) ("plaintiff need not prove *scienter* or intent to show a violation of the CPPA" but merely that the defendant "violated the statutory elements.") (citation omitted); *Frankeny*, 225 A.3d at 1004 (same).

The same is true for the *Best* plaintiffs' other claim against Second Nature for alleged violation of D.C. Code § 42-3502.11a. That section of the Rental Housing Act, states that a "housing provider shall not impose on a tenant a mandatory fee for any service or facility that has not been approved pursuant to § 42-3502.11 or § 42-3502.15." (ECF 1-1 at 27-29, ¶¶ 60-65.) Like the CPPA, § 42-3502.11a on its face does not require intentional conduct. Nor have District of Columbia courts inferred such a requirement. *See, e.g., Pearson v. District of Columbia Rental Housing Comm'n*, 270 A.3d 907, 912-13 (D.C. 2022). The court in *Pearson* affirmed the landlord's liability despite her lack of awareness that her conduct violated the statute. *Id*. The court ruled that intent is required only for the imposition of treble damages under D.C. Code § 42-3509.01, but not for the violation itself. *Id*.

In sum, despite the *Best* Complaint's melodramatic allegations of intentional wrongdoing, Second Nature's ultimate liability could rest on unintentional/negligent conduct, specifically including a "negligent misrepresentation," falling squarely within the coverage of the Insurers'

Policies. This "possibility" repudiates the Insurers' refusal to defend Second Nature. *Scottsdale*, 2025 WL 2627906 at *9; *Waste Mgmt.*, 315 N.C. at 691, n.2, 340 S.E.2d at 377 n.2; *Roldan*, 735 F.Supp.3d at 182; *Hugo Boss*, 252 F.3d at 620. The Court's analysis should end here.

**ii. The Insurers' failure to define "negligent" further undermines their denial.**

Although the preceding discussion establishes the "possibility" that Second Nature could eventually be found liable in *Best* based on negligent conduct, thus verifying the Insurers' duty to defend, there is an additional reason to reach the same conclusion.

The Insurers' Policies define 35 terms. (ECF 1-1 at 16-17; ECF 13-1 at 10-11.) "Negligent" is not among them. Despite that the Insurers chose "negligent" to delineate their coverage obligation. (ECF 1-1 at 5, § II; 13-1 at 6, § 1.1.) Consequently, "negligent" must be "given the meaning most favorable" to Second Nature. *Wachovia Bank & Trust*, 276 N.C. at 354, 172 S.E.2d at 522. *See also Hanks*, 492 F.Supp.3d at 243.

"Negligence" occupies a broad swath of conduct. *Black's Law Dictionary* defines "negligence" as "any conduct" that falls below the applicable legal standard to protect others from harm, except conduct that is "intentionally, wantonly, or willfully" wrong. *Black's Law Dictionary*, negligence (9th ed. 2009).

"Negligent misrepresentation" is a category of negligence. *E.g., Clevinger v. Advocacy Holdings, Inc.*, 2024 WL 3359508 at *15-16 (D.D.C. July 10, 2024). Negligent misrepresentation occurs where the defendant "made a false statement or omitted a [material] fact that he had a duty to disclose." *Parr*, 774 F.Supp.2d at 240 (citation omitted). Unlike fraud, intent is not an element of negligent misrepresentation. *E.g., Rodriguez v. Laboratory Corp. of Am. Holdings*, 13 F.Supp.3d 121, 130 (D.D.C. 2014) (citation omitted). As discussed in the preceding section, the *Best* plaintiffs can prevail on the CPPA claim based on a "negligent misrepresentation." *Parr*, 774

F.Supp.2d at 240.

Under the doctrine of "negligence *per se*," a defendant's violation of a statutory standard that governs behavior to protect persons in the plaintiff's position "renders the defendant negligent as a matter of law." *Ceco Corp. v. Coleman*, 441 A.2d 940, 945 (D.C. 1982) (citation omitted). Even where the statute does not have public safety purpose, the statutory violation is "evidence of negligence, although it does not constitute negligence *per se*." *Rong Yao Zhou v. Jennifer Mall Rest., Inc*., 534 A.2d 1268, 1274-75 (D.C. 1987).

"Gross negligence" is a category of negligence characterized by "indicia of conduct that is willful, wanton, or done with reckless indifference" or conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Clayton v. Branson*, 170 N.C.App. 438, 445, 613 S.E.2d 259, 265 (2005) (citation omitted); *In re 22 Fiske Place, LLC*, 2022 WL 2819093 at *11 (S.D.N.Y. July 18, 2022) (citation omitted).

"Willful negligence" is a "deliberate breach of a legal duty owed to another." *Shaw v. Goodyear Tire & Rubber Co*., 225 N.C.App. 90, 95, 737 S.E.2d 168, 173 (2013) (citation omitted). "[T]o constitute willful negligence, the act done or omitted to be done must be intended or must involve 'such reckless disregard of security and right as to imply bad faith." *Lee v. Verstraete*, 65 Misc.3d 531, 109 N.Y.S.3d 594, (2019) *quoting* 3 *American Law of Torts* § 10.4 (2019 update).

Because of the Insurers' use of the undefined term "negligent" to delineate their coverage obligation, the term includes all forms of negligence. Allegations in the *Best* Complaint, which must be construed liberally in Second Nature's favor, implicate most or all types of negligence. This is an independent basis for the Insurers' duty to defend.

**5. The Insurers' Secondary Arguments do not Negate Their Duty to Defend.**

Accelerant and Lloyd's each offers a secondary argument at the end of its brief. Accelerant invokes its Policy's antitrust exclusion. (ECF 24 at 12-14; ECF 1-1 at 9, § VI.B.1.) Lloyd's argues

that the *Best* Complaint does not allege any "professional services" as defined in its Policy. (ECF 25-2 at 23-25; ECF 13-1 at 11.) Both arguments fail.

**a. The Accelerant Policy's Antitrust Exclusion Does Not Relieve Accelerant of its Duty to Defend.**

Accelerant's secondary argument is that its duty to defend is eliminated by the antitrust exclusion in its Policy. (ECF 24 at 12-14; ECF 1-1 at 9, § VI.B.1.) This argument parallels Accelerant's deficient argument that the *Best* Complaint does not explicitly allege negligence. Accelerant's exclusion-based argument, however, is more deeply flawed.

If the Court reaches Accelerant's antitrust exclusion, it will have necessarily determined that Accelerant's duty to defend was triggered. Accelerant will then bear the burden of establishing that the exclusion eliminates even a "mere possibility" of coverage of any claim in *Best*. *Waste Mgmt.*, 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2.

In determining whether Accelerant has carried this heavy burden, the Court applies the particularly rigorous rules of construction governing policy exclusions. First, exclusions are "disfavored." *Lambe Realty Invest., Inc. v. Allstate Ins. Co.*, 137 N.C.App. 1, 11, 527 S.E.2d 328, 335 (2000) (citation omitted). Consequently, Accelerant's antitrust exclusion must be "strictly" and "narrowly" construed "to effect coverage" and "provide the greatest possible protection to [Second Nature Brands.]" *State Capital*, 318 N.C. at 542-43, 350 at 71; *Wachovia Bank & Trust*, 276 N.C. at 355, 172 S.E.2d at 522-23; *BarclaysAmerican/Leasing, Inc. v. North Carolina Ins. Guar. Assoc.*, 99 N.C.App. 290, 294, 392 S.E.2d 772, 774 (1990). Moreover, Accelerant must defend any claim alleging a "hybrid" of conduct, some of which is excluded, if there is a "mere possibility" that evidence at trial could show that some alleged conduct falls outside the antitrust exclusion. *Waste Mgmt.*, 315 N.C. at 691 and n.2, 340 S.E.2d at 377-78 and n.2. Accelerant has not, and cannot, carry its burden.

The Accelerant Policy's antitrust exclusion applies to certain "Antitrust and deceptive trade practices" claims. (ECF 1-1 at 9, § VI.B.) The *Best* Complaint (ECF 1-4) does not assert a claim under the Sherman Antitrust Act or the D.C. Antitrust Act and does not contain the word "antitrust." Therefore, the exclusion for "antitrust" claims is irrelevant.

Count II in the *Best* Complaint alleges violations of the CPPA. (ECF 1-4 at ¶¶ 66-80.) The CPPA provides a remedy for certain "unfair or deceptive trade practices." D.C. Code § 28-3904. Second Nature Brands acknowledges that Count II of the *Best* Complaint includes alleged violations by Second Nature Brands of D.C. Code § 28-3904. (ECF 1-4 at ¶ 68.) If the *Best* Complaint consisted of Count II only, Accelerant would have a credible argument that the antitrust exclusion overcomes its duty to defend. However, the *Best* Complaint contains other sweeping allegations, including Count I which claims that Second Nature Brands violated D.C. Code § 42-3502.11a. (ECF 1-4 at ¶¶ 60-65.) Section 42-3502.11a prohibits a housing provider from "impos[ing] on a tenant a mandatory fee for any service or facility that has not been approved pursuant to § 42-3502.11 or § 42-3502.15." Section 42-3502.11a is entirely independent from the CPPA and does not require any "deceptive trade practice" that could trigger the Accelerant Policy's antitrust exclusion. Because the duty to defend extends to all claims in a lawsuit where any one claim triggers the duty, Accelerant must defend Second Nature Brands irrespective of whether the antitrust exclusion applies to Count II in the *Best* Complaint. *Lallier*, 334 F.Supp.3d at 734.

### b. The *Best* Complaint Alleges "Professional Services" as Defined in the Lloyd's Policy.

Lloyd's secondary argument is that the *Best* Complaint does not allege any "professional services" by Second Nature Insurance. (ECF 25-2 at 24-26.) The Lloyd's Policy defines "professional services" expansively as:

> services provided for others in the Insured's business as an insurance agent, insurance broker, insurance consultant, insurance instructor, insurance premium financer, insurance risk manager consultant or advisor, insurance benefits consultant, program administrator, general agent or board member of a non-profit insurance professional association or in the provision of premium finance, notary public, claims handling or loss control services, regardless if performed via an electronic method. (ECF 13-1 at 11, § 5.8.)

Lloyd's argues that the *Best* Complaint alleges Second Nature Insurance was engaged in an unlawful conspiracy and does not complain about "professional services." This argument entirely misses the mark. Second Nature Insurance is a licensed insurance "producer", *i.e.*, agent or broker, in the District of Columbia and its sole role in connection with the insurance at issue in *Best* was to act as agent or broker in placing the insurance with QBE. (Godsey Dec. at ¶¶ 4, 9.) To the extent Second Nature Insurance is lumped (without specific attribution) into the *Best* plaintiffs' allegations regarding misrepresentations of the insurance policy, plaintiffs' allegations would necessarily relate to Second Nature Insurance acting in the sole capacity that it in fact acted in connection with the *Best* facts – as the agent or broker placing the insurance. (*Id*.) Accordingly, if Second Nature Insurance were found liable for its actions, that liability would arise from its "professional services" as defined in the Lloyd's Policy.

Presumably without access to the specifics of the role of Second Nature Insurance, the *Best* plaintiffs refer collectively to both Second Nature Brands and Second Nature Insurance as "Second Nature" throughout the Complaint and make no specific allegations of conduct attributable to each entity. (*E.g.*, ECF 1-4 at ¶ 2.) There is nothing in the allegations that conflicts with reading the *Best* Complaint consistent with Second Nature Insurance's role as producer (*i.e.*, agent or broker),

especially reading the *Best* Complaint "liberally" in favor of Second Nature Insurance and its right to a defense. *Euchner-USA*, 754 F.3d at 141. Because Lloyd's duty to defend was triggered if the *Best* Complaint even "arguably" alleges "professional services" within its broad definition, *Marcus & Cinelli*, __ F.4th at __, 2025 WL 2984241 at *6, there is no reasonable argument that the duty to defend was not triggered.

Insurance-related allegations in the *Best* Complaint against Second Nature Insurance, referred to as such or as part of "Second Nature" or "Defendants," include the following:

18. "Second Nature sold the Resident Benefits Package, as well as ***insurance***, to property managers and landlords . . ." (ECF 1-4 at ¶ 18, emphasis added.)

21. "Second Nature's 'Resident Benefits Package,' which was marketed as ***providing 'Renter's Insurance'*** through the QBE Defendants." (ECF 1-4 at ¶ 21, emphasis added.)

23. "Second Nature" was "selected . . . to ***provide insurance . . . [and] insurance services*** for the Property." (ECF 1-4 at ¶ 23, emphasis added.)

28. "Second Nature identifies a series of items it purportedly provides to the benefit of the tenant, . . . [including] ***f. Renters Insurance*** – Although the ***'renter's insurance' was pitched as a benefit for the tenant***, it was actually a policy written to protect the property manager and landlord. . . . In advertising the ***insurance program***, Second Nature stated, 'We've got you covered – ***Our renter's insurance program*** ensures 100% compliance and liability coverage protecting you, your property investors, and your residents.'" (ECF 1-4 at ¶ 28, emphasis added.)

47. "On August 29, 2023, Plaintiffs attempted to open an ***insurance claim*** with Columbia Property Management for the '***Renter's Insurance***,' included as part of the Resident Benefits Package. . . . This was the first time they learned of ***Second Nature's involvement with respect to the so-called 'Renter's Insurance***.'" (ECF 1-4 at ¶ 47, emphasis supplied.)

56. "Defendants [including Second Nature Insurance] violated the CPPA . . . by misrepresenting . . . ***the insurance*** provided as part of the Resident Benefits Package." (ECF 1-4 at ¶ 56, emphasis supplied.)

63. "Overt acts by Second Nature include all the marketing materials published on its website, including" Second Nature's "***advertising the insurance program***." (ECF 1-4 at ¶ 63, with reference to ¶ 28, emphasis added.)

68. "Defendants [including Second Nature Insurance] committed an unlawful trade practice . . . [by] misrepresenting that the 'Resident Benefits Package' included '***Renter's Insurance***' . . . Misrepresenting, 'We've got you covered **– *Our renter's insurance program*** ensures 100% compliance and liability coverage protecting you, your property investors, and your residents' . . . [and] Misrepresenting that each individual tenant received '***Renter's Insurance***' . . . " (ECF 1-4 at ¶ 68, emphasis added.)

69. "Second Nature and Columbia Property Management [as alleged agents of QBE], misrepresent[ed] the 'Property Manager and Landlord Protection Policy' as a ***renter's insurance policy***, when it was not." (ECF 1-4 at ¶ 69, emphasis added.)

76. "Defendants [including Second Nature Insurance] violated D.C. Code § 28-3904(v) by misrepresenting that Defendants Second Nature, Columbia Property Management, and Bloom had the ***authority to sell insurance*** when they did not." (ECF 1-4 at ¶ 76, emphasis added.)

Only a cramped construction of the *Best* Complaint could permit a finding that these allegations against Second Nature Insurance are unrelated to any "professional services," broadly defined in the Lloyd's Policy as encompassing any and all insurance-related services in every conceivable capacity. (ECF 13-1 at 11, § 5.8.) Lloyd's urging of such construction is antithetical to the Court's task. Under controlling New York law, the allegations of the *Best* Complaint must be "liberally construed" in favor of Second Nature Insurance. *Euchner*, 754 F.3d at 141; *Avante Contracting Corp. v. Northfield Ins. Co.*, 2025 WL 2781284 at *7 (S.D.N.Y. Sep. 30, 2025) (citation omitted). "[A]ny doubt" whether the *Best* Complaint implicates "professional services" "must be resolved in favor of [Second Nature Insurance] and against [Lloyd's]." *Fitzpatrick*, 78 N.Y.2d at 66. *Accord*, *New York Marine*, 632 F.Supp.3d at 307. These governing rules refute Lloyd's argument that the *Best* Complaint does not allege any "professional services" by Second Nature Insurance.

**B. <u>The Court Should Deny the Insurers' Summary Judgment Motions Because Their Duty to Indemnify is Not Ripe</u>.**

The Insurers' duty to defend Second Nature and their possible duty to indemnify are distinct. As discussed above, the Insurers' duty to defend is "exceedingly broad" and "far more

expansive than the duty to indemnify." *High Point Design*, 911 F.3d at 94-95; *Craige*, 503 F.Supp.3d at 372. The straightforward proposition for the Insurers' duty to defend is whether the *Best* Complaint "establishes as a matter of law that there is ***no possible factual or legal basis*** on which the [Insurers] may eventually be held obligated to indemnify [Second Nature] under any policy provision." *Scottsdale*, 2025 WL 2627906 at *9 (emphasis added) (citation omitted).

In contrast, the Insurers' possible duty to indemnify Second Nature depends "on facts which will necessarily be decided in [the] underlying [*Best*] action." *American Auto Ins. Co. v. Security Income Planners & Co., LLC*, 847 F.Supp.2d 454, 465 (E.D.N.Y. 2012) (citation and quotation marks omitted). *Accord*, *Middlesex*, 2021 WL 3667124 at *3.

If the Court agrees that the Insurers breached their duty to defend, their request for a declaratory judgment on their duty to indemnify is "premature." *Security Title Guarantee Corp. of Baltimore v. 915 Decatur St. NW, LLC*, 427 F.Supp.3d 1, 20 (D.D.C. 2019). This Court adheres to the general rule that "courts refrain from adjudicating whether an insurer has a duty to indemnify the insured until after the insured is found liable for damages in the underlying action." *Id.* at 19 (citation and quotation marks omitted). This is "especially true" where parties "seek a declaratory judgment, as the [Insurers] do here, as that raises distinct ripeness concerns." *Id.* at 20, *citing* 28 U.S.C. § 2201; *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972).

This rule is universal. *E.g.*, *Travelers Indem. Co. of Am. v. Southwest Marine & Gen. Ins. Co.*, 2025 WL 968551 at *8 (S.D.N.Y. Mar. 31, 2025); *Medmarc Cas. Ins. Co. v. Fellows Labriola LLP*, 2025 WL 2886733 at *4 (11th Cir. Oct. 10, 2025); *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 93 (2d Cir. 2023); *Pen-Am. Ins. Co. v. Tarango, Trucking, L.L.C.*, 30 F.4th 440, 448 (5th Cir. 2022); *Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC*, 451

Fed.Appx. 745, 749 (10th Cir. 2011) (unpublished); *Lear Corp. v. Johnson Elec. Holdings, Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003).

## CONCLUSION

Based on the foregoing undisputed facts and argument, Second Nature respectfully asks that the Court: (i) enter summary judgment in favor of Second Nature on its Counterclaim which states a single claim that the Insurers breached their contractual duty to defend Second Nature in *Best*; and (ii) deny as premature the Insurers' motions for summary judgment on their duty to indemnify Second Nature in *Best*.

This 10th day of November, 2025

/s/ R. Steven DeGeorge
Gregory L. Skidmore
D.C. Bar No. 974024
R. Steven DeGeorge (admitted *pro hac vice*)
N.C. Bar No. 20723
sdegeorge@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON
600 S. Tryon Street, Ste 2300
Charlotte, NC 28202
Telephone: 704.377.8380

*Attorneys for Defendants/Counterclaim Plaintiffs Second Nature Brands, Inc. and Second Nature Insurance Services, LLC.*

## CERTIFICATE OF SERVICE

The foregoing has been served on the parties' counsel of record using the Court's ECF System.

This 10th day of November, 2025

/s/ *R. Steven DeGeorge*
R. Steven DeGeorge

18490796